## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| LISHAY LAVI, NOACH NEWMAN, ADIN GESS, MAYA PARIZER, NATALIE SANANDAJI, YONI DILLER, HAGAR ALMOG, DAVID BROMBERG, LIOR BAR OR, AND ARIEL EIN-GAL, | ) ) ) ) ) ) | **JURY TRIAL DEMANDED** <br><br> Civil Case No. 24-cv-00312 (RGA) |
| *Plaintiffs*, | ) ) ) |  |
| v. | ) ) |  |
| UNRWA USA NATIONAL COMMITTEE, INC., | ) ) ) |  |
| *Defendant*. | ) ) ) |  |

## PLAINTIFFS' OPPOSITION TO UNRWA USA'S MOTION TO DISMISS

HALLORAN FARKAS + KITTILA LLP

Theodore A. Kittila (DE Bar ID #3963)
5722 Kennett Pike
Wilmington, DE 19807
(302) 257-2025
tk@hfk.law

*Counsel for Plaintiffs Lishay Lavi, Noach Newman, Adin Gess, Maya Parizer, Natalie Sanandaji, Yoni Diller, Hagar Almog, David Bromberg, Lior Bar Or, And Ariel Ein-Gal*

Dated:  July 11, 2024

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................. i

TABLE OF AUTHORITIES ....................................................... iii

INTRODUCTION ...................................................................... 1

NATURE AND STATE OF THE PROCEEDINGS ................................... 1

STANDARD OF REVIEW ............................................................. 1

ARGUMENT .............................................................................. 2

I.   Defendant's Statement that this Court Can Take Judicial Notice Is Procedurally Deficient and Legally Misplaced. ..................................... 2

   A.   UNRWA USA's Assertion that this Court Take Judicial Notice of Certain Documents Is Procedurally Deficient. ............................................. 3

   B.   UNRWA USA's Judicial Notice Assertion Is Legally Deficient. ............... 4

      i.   Documents Plaintiffs Relied upon in Their Complaint. ..................... 5

      ii.   Public Documents. ..................................................... 6

II.   Plaintiffs State a Claim that UNRWA USA Aided and Abetted UNRWA and Hamas. ................................................................................. 8

   A.   The ATA Provides for Broad Relief. ........................................... 8

   B.   Plaintiffs' Allegations Satisfy the Knowing and Substantial Element. ....... 10

      i.   The Complaint Sufficiently Pleads that UNRWA USA Aided Hamas. ... 10

         a.   Plaintiffs Are Not Required to Plead that UNRWA USA's Contributions to UNRWA Were then Transferred to Hamas. .................... 12

      ii.   The Complaint Sufficiently Pleads that UNRWA USA Was Generally Aware of Its Role in Illegal and Tortious Activity. ......................... 12

      iii.   The Complaint Sufficiently Pleads that UNRWA USA Knowingly Provided Substantial Assistance to Hamas. ................................... 20

         a.   Nature of the Act Assisted. ..................................... 21

         b.   Amount and Kind of Assistance. ............................... 21

         c.   UNRWA's Relationship with Hamas. ........................... 22

      d.   UNRWA USA's State of Mind. ............................................................23

      e.   The Duration of UNRWA USA's Assistance. ....................................23

III.    Plaintiffs State a Claim that UNRWA USA Conspired with UNRWA and Hamas to Materially Support Hamas. ..................................................................24

IV.    Plaintiffs State a Claim that UNRWA USA Violated the Laws of Nations Which Injured Plaintiffs. ...............................................................................27

  A.   The Elements of an ATS Claim. ..................................................................27

  B.   Israeli Plaintiffs Sufficiently Pleaded Aiding and Abetting Liability. .......28

  C.   Israeli Plaintiffs Assert Injuries Caused by UNRWA USA's Violations of International Law, Not State Tort Law. ............................................................30

  D.   Hamas Violated International Law Because Its Attacks Targeted and Killed Innocent Civilians. ..................................................................................30

  V.   Plaintiffs Have Plausibly Alleged a Claim for Negligent Infliction of Emotional Distress. ..................................................................................34

CONCLUSION ......................................................................................35

CERTIFICATE OF SERVICE .................................................................37

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                            **Page(s)**

*Almog v. Arab Bank, Pub. Ltd. Co.*,
   471 F. Supp. 2d 257 (E.D.N.Y. 2007) .................................................... 28, 31, 32

*Anspach v. City of Phila.*,
   503 F.3d 256 (3d Cir. 2007) ........................................................................*passim*

*Argueta v. U.S. Immigration & Customs Enf't* ,
   643 F.3d 60 (3d Cir. 2011) ................................................................................ 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 1

*Atchley v. Astrazeneca UK Ltd.*,
   22 F.4th 204 (D.C. Cir. 2022) .................................................................. *passim*

*Aziz v. Alcolac, Inc.*,
   658 F.3d 388 (4th Cir. 2011) ............................................................................ 28

*Bernhardt v. Islamic Republic of Iran*,
   47 F.4th 856 (D.C. Cir. 2022) ........................................................... 10, 12, 16

*Boim v. Holy Land Found. for Relief & Dev.* ,
   549 F.3d 685 (7th Cir. 2008) ........................................................................... 10

*Cent. Bank, N.A. v. First Interstate Bank, N.A.*,
   511 U.S. 164 (1994) ........................................................................................... 8

*Chiquita Brands Int'l, Inc.*,
   792 F. Supp. 2d 1301 (S.D. Fla. 2011) ........................................................... 32

*CITGO Petro. Corp. v. Starstone Ins. SE*,
   No. 1:21-cv-389-GHW, 2023 U.S. Dist. LEXIS 202463 (S.D.N.Y. Nov. 10,
   2023) ................................................................................................................... 2

*Collins & Aikman Corp. v. Stockman* ,
   No. 07-265-SLR-LPS, 2009 U.S. Dist. LEXIS 43472 (D. Del. May 20, 2009)
   ................................................................................................................*passim*

*Collins v. City of N.Y.*,
    923 F. Supp. 2d 462 (E.D.N.Y. 2013) ................................................................ 19

*Doe v. Cisco Sys.*,
    73 F.4th 700 (9th Cir. 2023) ................................................................ 27, 28, 30

*Donald J. Trump for President, Inc. v. Sec'y Pa.*,
    830 F. App'x 377 (3d Cir. 2020) ................................................................ 1

*Fanean v. Rite Aid Corp. of Del., Inc.*,
    984 A.2d 812 (Del. Super. Ct. 2009) ................................................................ 34

*Fleisher v. Std. Ins. Co.*,
    679 F.3d 116 (3d Cir. 2012) ................................................................ 1, 5, 25

*Flores v. S. Peru Copper Corp.*,
    414 F.3d 233 (2d Cir. 2003) ................................................................ 26, 33

*Freeman ex rel. Est. Freeman v. HSBC Holdings Pub. Ltd. Co.*,
    57 F.4th 66 (2d Cir. 2023) ................................................................ 25

*Freeman v. HSBC Holdings Pub. Ltd. Co. (Freeman I)*,
    No. 14 CV 6601, 2018 WL 3616845 (E.D.N.Y. July 27, 2018) ...................... 24

*Freeman v. HSBC Holdings Pub. Ltd. Co.*,
    413 F. Supp. 3d 67 (E.D.N.Y. 2019) ................................................................ 24

*Friedberg v. Barefoot Architect, Inc.*,
    723 F. App'x 100 (3d Cir. 2018) ................................................................ 1

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) ................................................................ *passim*

*Holy Land Found. for Relief & Dev. v. Ashcroft* ,
    219 F. Supp. 2d 57 (D.D.C. 2002) ................................................................ 19

*Honickman v. BLOM Bank SAL*,
    6 F.4th 487 (2d Cir. 2021) ................................................................ *passim*

*In re Arab Bank, Pub. Ltd. Co. Alien Tort Statute Litig.*,
    808 F.3d 144 (2d Cir. 2015) ................................................................ 30

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ................................................................ 2

*In re NAHC, Inc. Sec. Litig.*,
   306 F.3d 1314 (3d Cir. 2002) ............................................................................... 2

*In re Viropharma, Inc., Sec. Litig.*,
   CIVIL ACTION MASTER FILE NO. 02-1627, 2003 U.S. Dist. LEXIS 5623
   (E.D. Pa. Apr. 3, 2003) ................................................................................ 3, 5

*J.S. v. Edgemoor Cmty. Ctr., Inc.*,
   No. N23C-06-110 CLS, 2024 Del. Super. LEXIS 38 (Del. Super. Ct. Jan. 11,
   2024) ...................................................................................................... 34

*Jesner v. Arab Bank, Pub. Ltd. Co.*,
   584 U.S. 241 (2018) ............................................................................... 30, 33

*Kadic v. Karadzic*,
   70 F.3d 232 (2d Cir. 1995) ...................................................................... 32, 33

*Kaplan v. Lebanese Canadian Bank, SAL*,
   999 F.3d 842 (2d Cir. 2021) ............................................................... *passim*

*Kemper v. Deutsche Bank AG*,
   911 F.3d 383 (7th Cir. 2018) ......................................................................... 25

*Kramer v. Time Warner, Inc.*,
   937 F.2d 767 (2d Cir. 1991) ................................................................... 5, 6, 7

*Leisrael v. Educ. for A Just Peace in the Middle E.*,
   66 F.4th 1007 (D.C. Cir. 2023) ..................................................................... 15

*Licci v. Lebanese Canadian Bank, SAL*,
   834 F.3d 201 (2d Cir. 2016) ..................................................................... 19, 33

*Linde v. Arab Bank, Pub. Ltd. Co.*,
   882 F.3d 314 (2d Cir. 2018) ............................................................... 8, 12, 16

*Lungu v. Antares Pharm. Inc.*,
   No. 21-1624, 2022 U.S. App. LEXIS 2117 (3d Cir. Jan. 25, 2022) .................... 4

*Mastafa v. Chevron Corp.*,
   770 F.3d 170 (2d Cir. 2014) ......................................................................... 30

*Mayer v. Belichick*,
   605 F.3d 223 (3d Cir. 2010) ........................................................................... 1

*McTernan v. City of York*,

577 F.3d 521 (3d Cir. 2009) ..................................................... *passim*

*Miller v. Arab Bank, Pub. Ltd. Co.*,
   372 F. Supp. 3d 33 (E.D.N.Y. 2019) ............................................. 9-10

*Moore v. Durand*,
   No. 22-2915, 2023 U.S. App. LEXIS 19743 (3d Cir. Aug. 1, 2023) .............. 0-1

*Nahl v. Jaoude*,
   354 F. Supp. 3d 489 (S.D.N.Y. 2018) ............................................. 32

*Ofisi v. BNP Paribas, S.A.*,
   77 F.4th 667 (D.C. Cir. 2023) .............................................. 10, 19

*Oran v. Stafford*,
   226 F.3d 275 (3d Cir. 2000) ................................................... 2, 7

*Shaffer v. Deutsche Bank AG*,
   No. 16-CR-497-MJR-SCW, 2017 U.S. Dist. LEXIS 220198 (S.D. Ill. Dec. 7,
   2017) ......................................................................... 25

*Siegel v. HSBC N. Am. Holdings, Inc.*,
   933 F.3d 217 (2d Cir. 2019) ................................................... 10

*Sosa v. Alvarez-Machain*,
   542 U.S. 692 (2004) ....................................................... 26, 31

*Twitter, Inc. v. Taamneh*,
   598 U.S. 471 (2023) ........................................................... 15

*United States v. Yousef*,
   327 F.3d 56 (2d Cir. 2003) .................................................... 31

*Victaulic Co. v. Tieman*,
   499 F.3d 227 (3d Cir. 2007) ............................................. 2, 6-7, 7

*Watson v. Ciconte, Wasserman, Scerba & Kerrick, L.L.C.*,
   No. 13-1585-LPS, 2016 U.S. Dist. LEXIS 132270 (D. Del. Sept. 26, 2016) . 2-3

*Weiss v. Nat'l Westminster Bank Pub. Ltd. Co.*,
   381 F. Supp. 3d 223 (E.D.N.Y. 2019) ........................................... 15

*Wildman v. Deutsche Bank AG.*,
   No. 21-CV-04400 (HG) (RML), 2022 U.S. Dist. LEXIS 233172 (E.D.N.Y. Dec.
   29, 2022) .................................................................. 21-22

Statutes

18 U.S.C. § 2333(d) ................................................................. 23

18 U.S.C. § 2333(d)(2) .............................................................. 8

22 U.S.C. § 2(a)(5) ................................................................. 8

22 U.S.C. § 2221(c) ................................................................. 6

22 U.S.C. § 2333 ................................................................... 11

22 U.S.C. § 2333(d) ......................................................... 7, 10, 23

22 U.S.C. §§ 7048(d)(1)-(7), 136 .................................................. 6

28 U.S.C. § 1350 .................................................................. 26

Rules

Fed. R. Civ. P. 8(a)(2) .............................................................. 0

Fed. R. Civ. P. 201 ................................................................. 1

Fed. R. Evid. 12(b)(6) .............................................................. 18

Fed. R. Evid. 201 ................................................................. 2, 3

Fed. R. Evid. 201(b)(2) ........................................................ 2, 18

Other

Del. Sup. Ct. 2009 ................................................................. 34

Del. Sup. Ct. 2024 ................................................................. 34

## INTRODUCTION

Plaintiffs pleaded that they suffered horrific tragedies on October 7, 2023, at the hands of Hamas—tragedies that UNRWA USA does not deny. *See generally* ECF No. 1 (henceforth, "Compl."). Plaintiffs alleged UNRWA and Hamas are inextricably linked and that Hamas members are woven into the fabric of UNRWA. Plaintiffs also alleged that Defendant UNRWA USA knew this and gave UNRWA millions of dollars anyway.

Rather than limit its challenge to the legal sufficiency of the allegations, Defendant's motion instead seeks to try this case prematurely. Attempting to bypass discovery, Defendant hopes that this Court will dispense with the traditional truth-finding mechanisms and simply conduct a trial by documents now. This Court should decline Defendant's invitation.

## NATURE AND STATE OF THE PROCEEDINGS

Plaintiffs agree with Defendant UNRWA USA's Nature and Stage of Proceedings. On June 4, 2024, this Court granted a Stipulation to Extend Time to Respond to Motion to Dismiss, which gave Plaintiff until July 11, 2024, to file this brief and Defendant until August 2, 2024, to file its reply. *See* ECF No. 24, at PageID #297.

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a complaint simply needs to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Courts accept a complaint's well-pleaded factual allegations as true, and allegations are construed in the light most favorable to the Plaintiff. *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009). Accordingly, to survive a motion to dismiss, "a complaint, accepted as true, must state a claim that is plausible on its face by including facts which permit the court to infer more than the mere possibility of misconduct." *Moore v. Durand*, 2023 U.S. App. LEXIS 19743, at *2

(3d Cir. Aug. 1, 2023) (citing and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Donald J. Trump for President, Inc. v. Sec'y Pennsylvania*, 830 Fed. Appx. 377, 386 (3d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Friedberg v. Barefoot Architect, Inc*., 723 Fed. Appx. 100, 103 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

Ultimately, no single allegation of a complaint is read in isolation; rather, the complaint is read and analyzed as a whole. *Fleisher v. Std. Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012). Thus, this Court determines "whether [Plaintiffs] may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

## ARGUMENT

As a threshold matter, Defendant's assertion that this Court may take judicial notice of fifteen documents is procedurally deficient and inappropriate at this stage. Regardless, American Plaintiffs have properly alleged a claim that UNRWA USA aided and abetted UNRWA and Hamas—as well as conspired with UNRWA and Hamas to provide material support to Hamas— in violation of the Justice Against Sponsors of Terrorism Act. Similarly, Israeli Plaintiffs have properly alleged that UNRWA USA violated the laws of nations which injured plaintiffs, thereby stating a proper claim under the Alien Tort Statute. Finally, Plaintiffs have sufficiently plead a claim of negligent infliction of emotional distress against UNRWA USA for its support of Hamas.

### I.     Defendant's Statement that this Court Can Take Judicial Notice Is Procedurally Deficient and Legally Misplaced.

Rule 201 of the Federal Rules of Evidence permits a court to take judicial notice of adjudicative facts. At the pleading stage, courts should judicially notice documents "sparingly"

and only in "the clearest of cases." *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007). Additionally, prior to admission of documents via judicial notice, the documents must be authenticated. *See id.* Furthermore, the judicial notice rule is narrow and limited only to those facts that are "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). This means that judicial notice is reserved only for those facts that meet a "high degree of indisputability." FED. R. EVID. 201 adv. comm. n.

When assessing a motion to dismiss, a court generally must confine itself to the four corners of the complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). There are only three exceptions: *First,* this Court may consider those documents that are integral to the Complaint; *second*, this Court may consider those documents that are explicitly relied upon in the Complaint; and *third*, public records. *Id.*; *Oran v. Stafford*, 226 F.3d 275, 289 (3rd Cir. 2000); *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002). This Court should deny Defendant UNRWA USA's request on both procedural and legal grounds.

### A. UNRWA USA's Assertion that this Court Take Judicial Notice of Certain Documents Is Procedurally Deficient.

Through an affidavit, submitted after the expiration of the motion to dismiss deadline,[1] UNRWA USA asks that this Court take judicial notice of fifteen documents. *See* ECF 23, at PageID #118-22. But UNRWA USA has not moved this Court to admit into evidence these documents pursuant to FED. R. EVID. 201. Because UNRWA USA is presumably moving this Court to take judicial notice, it "bears the burden of persuading the trial judge that the fact is a proper matter for judicial notice." *CITGO Petro. Corp. v. Starstone Ins. SE,* 2023 U.S. Dist. LEXIS 202463, *2–3 (S.D.N.Y. Nov. 10, 2023); *see also Watson v. Ciconte, Wasserman, Scerba & Kerrick, LLC*, 2016

---

[1] *See* Decl. of Michael C. Heyden, Jr. (D.I. 23) (*filed* May 29, 2024). The Parties agreed that Defendant's deadline to file its Motion to Dismiss was May 28, 2024. (D.I. 6)

U.S. Dist. LEXIS 132270, *10 (D. Del. Sept. 26, 2016) (noting that plaintiff filed a motion for the court to judicially notice a consent order). UNRWA USA has not advanced any argument to prove that the documents cited are so "highly indisputable" as to render them capable of admission under FED. R. EVID. 201. Additionally, filing a separate motion permits Plaintiffs to assess each document and lodge an appropriate objection to each document. Accordingly, this Court should not take judicial notice of any document that UNRWA USA submitted because its request is procedurally deficient and UNRWA USA has not met its burden of showing the documents cited are so "highly indisputable."

**B. UNRWA USA's Judicial Notice Assertion Is Legally Deficient.**

Rather than accept that the Complaint's allegations are true at the pleading stage, *McTernan*, 577 F.3d at 526, UNRWA USA requests in its Motion to Dismiss that this Court determine what is true now. ECF No. 22, PageID #at 84–94 (henceforth, "MTD").[2] Worse, UNRWA USA asks this Court to determine what is true not through sworn witness testimony or affidavits, but through documents. *Id.* Granting UNRWA USA's request would stretch the judicial notice rule beyond its breaking point. *In re Viropharma, Inc., Sec. Litig.*, 2003 U.S. Dist. LEXIS 5623, at *5 (E.D. Pa. April 3, 2003) (stating that at the motion to dismiss stage, if a court were to use judicial notice to accept a document for the truth of the matter asserted "it would be authorizing a trial by public documents, and thus imprudently expanding the scope of 12(b)(6) motions.").

Thus, and especially at the motion to dismiss stage of the proceeding, even when courts take judicial notice of documents, they do not do so for the truth of the matter asserted. *Collins & Aikman Corp. v. Stockman*, 2009 U.S. Dist. LEXIS 43472, at *69–70 (D. Del. May 20, 2009)

---

[2] This Reply will rely on the MTD's pagination featured at the bottom of each page of the document.

(holding that, at the motion to dismiss stage, judicial notice of SEC filings showing that defendant was not an officer at the company and therefore could not be liable was improper because it required court to determine truth of the matter asserted). Instead, courts can take judicial notice of documents when a plaintiff relies on the document in the complaint and the document contradicts an allegation in the complaint. *Lungu v. Antares Pharma Inc.*, 2022 U.S. App. LEXIS 2117 *10-11 (3d Cir. Jan. 25, 2022) (holding that a document controls and a complaint's allegations are not taken as true where the statement in the document contradicts the allegation). Additionally, courts can take judicial notice of a government document from an agency with oversight over a defendant, not for the truth of the matter asserted but merely that it was said and the defendant relied on the agency's statement. *Anspach v. City of Philadelphia*, 503 F.3d 256, 273 n.11 (3d Cir. 2007) (holding that the Court was not accepting statements from the FDA as true but merely as a record of what the agency said, and accordingly, clinic personnel were entitled to rely on the statement). Defendants ask this Court to take its documents, and their inferences from those documents, not as a record of what was said, but as the truth. This Court should decline the invitation.

### i.   Documents Plaintiffs Relied upon in Their Complaint.

Plaintiffs relied upon UNRWA USA's January 29, 2024, press release to show UNRWA USA's acknowledgement that Hamas had extensively spread through UNRWA and that UNRWA USA was at best apathetic towards this reality because it resumed funding of UNRWA less than six weeks after the attacks. Compl. ¶ 115. This should be read in conjunction with other paragraphs showing apathy towards Hamas's infiltration into UNRWA. Compl. ¶¶ 47–53. In response, UNRWA USA points to elsewhere in its January 2024 press release where it stated it was "horrified" that UNRWA staff members were involved in the October 7 attacks and that those involved must be held accountable. MTD at 6. Later, Defendant says that UNRWA's dealings with

Hamas were more a practical response to political realities after Hamas won elections. *Id.* at 7.[3] These statements do not contradict the allegations of the Complaint. UNRWA USA is alleged to have turned a blind eye to Hamas's professed goal of killing all Jewish people and operated that way for decades with "no intention of changing its operations." Compl. ¶ 119. Whether or not UNRWA USA was horrified by Hamas's attacks has no bearing on the allegations that Hamas and UNRWA are intertwined. Instead, Defendant wants this Court to draw Defendant's preferred inference that UNRWA USA was opposed to Hamas. But at this stage of the proceedings, all reasonable inferences are read in the light most favorable to the Plaintiffs. *McTernan*, 577 F.3d at 526; *Fleisher*, 679 F.3d at 120 (3d Cir. 2012).

Furthermore, UNRWA USA relies upon UNRWA's Frequently Asked Questions ("FAQ") page on UNRWA's website for the assertion that UNRWA enrolls 500,000 students per year. According to UNRWA USA that only 118 students are now confirmed members of Hamas is evidence of success. MTD at 10, 10 n. 12. But this mistakes judicial notice for judicial authorization of trial by documents. *Viropharma,* 2003 U.S. Dist. LEXIS 5623, at *5. UNRWA USA wants this Court to accept UNRWA's FAQ page for the truth of the matter asserted and then grant the inference from that asserted fact in favor of Defendant. But this Court presumes Plaintiffs' allegations are true and grants all reasonable inferences in their favor, not the other way around. *McTernan*, 577 F.3d at 526; *Fleisher*, 679 F.3d at 120.

   **ii.   Public Documents.**

At the motion to dismiss stage, the information conveyed in government documents, such as GAO certifications, cannot be taken as true. *Collins & Aikman Corp.*, 2009 U.S. Dist. LEXIS 43472, at *69–70 (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)); *but see*

---

[3] Plaintiffs provided the full context of Ms. AbuZayd's comments. Compl. ¶ 119.

MTD at 12. UNRWA USA does not provide an affidavit asserting that UNRWA USA monitored the GAO's certifications and relied upon those certifications. Nor does UNRWA USA cite a single case entitling it to reliance on a GAO certification to Congress about congressional appropriations. Nor could UNRWA USA provide such certification. The GAO's certification certifies that contributions strictly from *Congress* to UNRWA will not be used for terrorist activity. 22 U.S.C. § 2221(c). This certification is narrow and inapplicable to UNRWA USA's contributions, rendering Defendant's reliance interest unsupported. *c.f. Anspach*, 503 F.3d at 272, 273, n.11 (defendants entitled to rely on broad certification from FDA regarding proper contraception dosage in suit brought by minor-plaintiff).

Similarly, reliance on the U.S.-UNRWA Framework is misplaced. The U.S-UNRWA Framework agreement was negotiated and signed by the United States Government and UNRWA. UNRWA USA is not a party to this agreement. UNRWA USA cannot therefore rely on this agreement in assuming its contributions are protected.

Furthermore, though the State Department must certify that UNRWA is ensuring the neutrality of its staff and has procedures in place to protect the neutrality of its facilities and of its educational materials to ensure they do not "induce incitement," *see, e.g.*, Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, Sec. 7048(d)(1)-(7), 136 Stat 663 (Mar. 15, 2022), Plaintiffs are entitled to challenge the quality of those certifications. Compl. ¶¶ 45–92 (alleging that Hamas controls UNRWA's Gaza employee Union; that UNRWA employs Hamas members, affiliates, and supporters and allows Hamas to use its facilities; and that U.S. government officials condemn UNRWA's close ties to Hamas). It would be inappropriate to credit such government documents at the very outset of the litigation. *Collins & Aikman Corp.*, 2009 U.S. Dist. LEXIS

43472, at *69–70 (citing *Kramer*, 937 F.2d at 774); *see Victaulic Co.*, 499 F.3d at 236 (courts grant

judicial notice at the motion to dismiss stage "sparingly" and only in "the clearest of cases").

Moreover, reliance on a Congressional Research Service ("CRS") reports for the truth that

UNRWA employees are drawn from local refugee population and that UNRWA complies with its

obligations under the U.S.-UNRWA framework, are improper. MTD at 8 n.7. Equally improper is

reliance on U.N. investigation reports for the truth that the U.N. was in fact conducting surprise

visits and daily inspections. *Id*. at 11 n.15–16. At the motion to dismiss stage, this Court cannot

accept into evidence CRS and U.N. reports for the truth of the matter asserted. *Collins & Aikman*

*Corp*., 2009 U.S. Dist. LEXIS 43472, at *69 (citing *Kramer*, 937 F.2d at 774).

Accordingly, even if this Court were to take judicial notice of these documents, it can only

take judicial notice of the document's contents, not for the truth of what is asserted in the

document. *See Oran*, 226 F.3d at 289; *Anspach*, 503 F.3d at 273 n.11. By contrast, it is Plaintiffs'

well-pleaded factual allegations that are presumed true and construed in the light most favorable

to Plaintiffs. *McTernan*, 577 F.3d at 526.

## II.    Plaintiffs State a Claim that UNRWA USA Aided and Abetted UNRWA and Hamas.

Plaintiffs properly pleaded an aiding-and-abetting claim under Section 2333(d) by alleging

that Defendant aided the party that committed a wrongful act, that Defendant was generally aware

of its role in illegal and tortious activity, and that Defendant knowingly assisted said party.

### A.    The ATA Provides for Broad Relief.

In 2016, the Justice Against Sponsors of Terrorism Act (JASTA) amended the Anti-

Terrorism Act (ATA) to establish aiding-and-abetting liability for victims of terror attacks. JASTA

was designed to afford litigants "the broadest possible basis" of relief against entities that have

"provided material support, *directly or indirectly*, to foreign organizations or persons that engage

in terrorist activities against the United States." Pub. L. No. 114-222, 130 Stat. 852, 853 (Sept. 28, 2016) (emphasis added). Under JASTA's secondary liability provision, plaintiffs who suffer an "injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization" have a private right of action against "any person who aids and abets, by knowingly providing substantial assistance." 18 U.S.C. § 2333(d)(2). Aiding-and-abetting liability is designed to "reach[] persons who do not engage in the proscribed activities at all, but who give *a degree of aid* to those who do." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 176 (1994) (emphasis added). Unlike primary liability, secondary liability requires no showing of "proximate causation" between the conduct of Defendant and the injuries suffered by Plaintiffs. *See Linde v. Arab Bank, PLC*, 882 F.3d 314, 331 (2d Cir. 2018).

To have a plausible aiding-and-abetting claim, the plaintiff must allege facts demonstrating that: (1) he possesses an injury caused by an act of international terrorism; (2) the act was carried out by a Foreign Terrorist Organization (FTO), as designated by the U.S. State Department; and (3) the defendant aided and abetted the FTO "by knowingly providing substantial assistance." *See* 18 U.S.C. § 2333(d)(2).

When assessing what constitutes "knowingly providing substantial assistance," Congress explicitly incorporated the "legal framework" of the D.C. Circuit case *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983). JASTA, § 2(a)(5). Under *Halberstam*: (1) "the party [] the defendant aids must perform a wrongful act that causes an injury"; (2) the defendant "must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance"; and (3) the defendant must "knowingly and substantially assist the principal violation." *Halberstam*, 705 F.2d at 477. Factors to be considered when assessing whether

*Halberstam*'s third prong has been satisfied include such elements as "the nature of the act assisted," the "amount of assistance" provided, whether the defendant was "present at the time" of the principal tort, the defendant's "relation to the tortious actor," the "defendant's state of mind," and the "duration of the assistance" given. *Halberstam*, 705 F.2d at 488.

While Defendant does not dispute that Plaintiffs were injured by an act of international terrorism carried out by an FTO, Defendant disputes that it knowingly provided substantial assistance to the FTO. As demonstrated below, Plaintiffs more than sufficiently allege all three elements of the *Halberstam* test in their Complaint, and Defendant's Motion to Dismiss therefore should be denied.

### B.  Plaintiffs' Allegations Satisfy the Knowing and Substantial Element.

### i.    The Complaint Sufficiently Pleads that UNRWA USA Aided Hamas.

The Complaint sufficiently pleads that UNRWA USA aided UNRWA and UNRWA performed wrongful acts—providing material support to Hamas. *Halberstam*, 705 F.2d at 477. Defendant argues that the Complaint "must allege that *UNRWA* performed a wrongful act that caused the October 7 attacks." MTD at 26. The Complaint does so.

UNRWA USA knew that UNRWA employed Hamas members, affiliates, and sympathizers; allowed Hamas to control UNRWA's employee union; and permitted Hamas to use UNRWA facilities, thereby promoting Hamas's infiltration. Despite this knowledge, UNRWA USA contributed to UNRWA anyway. Compl. ¶¶ 49, 54–80. Accordingly, UNRWA USA has committed wrongful acts. That is enough under the ATA's aiding and abetting liability provision, where it is sufficient to plead that the "defendant's acts aided and abetted the principal even where his relevant substantial assistance was given to an *intermediary*." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 856 (2d Cir. 2021) (emphasis added); *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 45 (E.D.N.Y. 2019) ("'[G]iving money to Hamas, like giving a loaded gun to a child (which also

is not a violent act), is an act dangerous to human life' under the ATA." (quoting *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 694 (7th Cir. 2008))). Therefore, under the intermediary theory of liability, Plaintiffs do not need to allege that UNRWA committed the October 7 terror attacks—even though UNRWA members did so. Plaintiffs need to allege only that the intermediary assisted the FTO.

Defendant insists that its situation is analogous to various banks that have been found not to be liable for providing material support under Section 2333(d). MTD at 17-18. However, Plaintiffs' allegations are readily distinguishable from those cases, namely because, in each instance, the defendant bank had limited awareness, if any at all, of the intermediary's ties to an FTO. *See, e.g.*, *Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667, 675 (D.C. Cir. 2023) ("[T]he complaint does not contain any detailed factual allegations that BNPP knew about [Al-Shamal's] [the intermediary's] supposed connections to al Qaeda . . . [I]t appears that the relationship between Al Shamal and [b]in Laden was not widely reported until *after* the 1998 embassy bombings.") (citation omitted); *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 868 (D.C. Cir. 2022) ("Bernhardt alleges neither that HSBC was of aware of [the intermediary banks'] connections to al-Qaeda nor that these banks were so closely intertwined with al-Qaeda to infer HSBC's general awareness."). In other instances, the defendant bank even halted business with the intermediary bank well prior to the terror attack at issue. *See Siegel v. HSBC N. Am. Holdings, Inc.,* 933 F.3d 217, 224 (2d Cir. 2019) ("HSBC's decision not to provide banking services to [the intermediary bank] for the ten months preceding the November 9 Attacks makes it implausible under the circumstances that HSBC had knowingly assumed a role in the Attacks.").

In contrast, Plaintiffs have provided ample support for UNRWA USA's awareness of UNRWA's ties to Hamas. For example, Plaintiffs even alleged staff overlap between the Defendant

and the intermediary, further indicating that UNRWA USA and UNRWA—as their names would suggest—are almost indistinguishable. Compl. ¶ 42.  Such closeness between a defendant and an intermediary is highly unusual and presents a sharp contrast to the arm's length distance defendant banks generally keep from terrorist-affiliated intermediaries.

> a.  Plaintiffs Are Not Required to Plead that UNRWA USA's Contributions to UNRWA Were then Transferred to Hamas.

To that end, Plaintiffs are not required to show that the FTO received Defendant's funds directly to state a claim. *But see* MTD at 17-18. Instead, all that is needed are "factual allegations that permit a reasonable inference that the defendant recognized the money it transferred to its customers would be received by the FTO would suffice." *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 500 (2d Cir. 2021). Therefore, "if a plaintiff plausibly alleges the general awareness element, she does not need to also allege the FTO actually received the funds." *Id.* And under the general awareness prong, Plaintiffs need only to "plausibly allege . . . [that UNRWA was] so closely intertwined with [Hamas's] violent terrorist activities that one can reasonably infer that [UNRWA USA] was generally aware while it was providing [funds to UNRWA] . . . that it was playing a role in unlawful activities from which [Hamas's] attacks were foreseeable." *Id.* at 499. Given the degree of intertwinement between Hamas and UNRWA, Defendant was generally aware that the funds it provided to UNRWA would flow to Hamas.[44] Therefore, Plaintiffs need not plead at this stage that Hamas received such funds directly.

> **ii.    The Complaint Sufficiently Pleads that UNRWA USA Was Generally Aware of Its Role in Illegal and Tortious Activity.**

---

[44] UNRWA USA asks this Court to be the first to graft the doctrine of *respondeat superior* onto the ATA. MTD at 27-28. Indeed, none of the cases UNRWA USA cites involve ATA claims. In fact, none of the Circuit Courts of Appeals have held that the doctrine of *respondeat superior* applies to ATA claims. *See, e.g.*, *Atchley v. Astrazeneca UK Ltd.*, 22 F.4th 204 (D.C. Cir. 2022) (holding plaintiffs stated a Section 2333 claim against various corporations without mention of corporate officers' general awareness).

Plaintiffs properly alleged that UNRWA USA was "generally aware" of its role in illegal and tortious activity when it funneled money to the intermediary UNRWA. Under *Halberstam*'s second prong, "the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance." *Halberstam*, 705 F.2d at 477. Pleading awareness in the JASTA context does not—and simply cannot—require a high degree of specificity. Rather, "[b]ecause there is rarely direct evidence of a defendant's mental state, the fact finder often must draw inferences from circumstantial evidence." *Bernhardt*, 47 F.4th at 867. In other words, a complaint need only contain "general allegations as to a defendant's knowledge," because "a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." *Kaplan,* 999 F.3d at 864 (internal quotation marks and citations omitted). The pleading standard for alleging awareness is further softened by the adverb "generally," which "imparts to the concept 'generally aware' a connotation of something less than full, or fully focused, recognition." *Id.* at 863. This degree of awareness does not require the intent typically demanded in the criminal context, nor does it even require that UNRWA USA knew of the October 7 terror attacks when it funneled money to UNRWA. *See Linde*, 882 F.3d at 329. As explained in *Halberstam*, foreseeability lies at the center of any awareness analysis. *Halberstam*, 705 F.2d at 488.

Finally, the "generally aware" prong is satisfied if "(1) the defendant was aware of the intermediary's connection to the terrorist organization, and (2) the intermediary is 'so closely intertwined' with the terrorist organization's illegal activities as to give rise to an inference that the defendant was generally aware of its role in the organization's terrorist activities." *Bernhardt*, 47 F.4th at 867–68 (quoting *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 501 (2d Cir. 2021)). UNRWA USA was both aware of UNRWA's close connection to Hamas and was closely intertwined with UNRWA and Hamas.

Here, there is little daylight, if any, between UNRWA and UNRWA USA. UNRWA USA raises funds for a single entity—UNRWA—and remains UNRWA's top institutional donor. Compl. ¶¶ 39–41. Furthermore, there is overlapping leadership and staff between the two organizations. For instance, Defendant's Board Member Karen AbuZayd previously served as UNRWA Commissioner-General. Compl. ¶¶ 117–20. Defendant's "X" account has described UNRWA employee Motaz Azaiza as "our [UNRWA USA's] freelance content producer," while referring to UNRWA employees as "colleagues" of UNRWA USA and declaring that Defendant works "hand in hand" with UNRWA. Compl. ¶¶ 42–43. In short, the two entities are so intertwined that it is simply not credible to allege that UNRWA USA did not know of UNRWA's ties to Hamas. In fact, UNRWA USA likely had access to *more* information than the public did regarding UNRWA's various affiliations with the FTO.

Still, the many public connections—spanning nearly two decades—are more than sufficient for demonstrating that UNRWA had general awareness. Indeed, in 2004, then-UNRWA Commissioner General Peter Hansen stated, "I am sure that there are Hamas members on the UNRWA payroll, and I don't see that as a crime." Compl. ¶ 47. At that time, there had been "numerous cases of Palestinian terrorists employed by the UNRWA or UNRWA facilities, equipment, and vehicles to carry out terror attacks." *Id*. at ¶ 48. Hamas has controlled the UNRWA Gaza staff union since 2009. *Id.* at ¶¶ 49, 51–52. At numerous points, UNRWA has employed Hamas members in its schools, which frequently feature curricula that glorify and teach terrorism to young, impressionable Palestinian children. *Id.* at ¶¶ 57-61. Around 10% of UNRWA's staff have ties to a terrorist organization. *Id.* at ¶ 96. Meanwhile, Hamas routinely uses UNRWA infrastructure to store weapons, conduct operations, and hide its tunnels. *Id.* at ¶¶ 73–79. Hamas's involvement in UNRWA culminated in at least a dozen UNRWA employees partaking in the

14

October 7 terror attacks, *Id.* at ¶¶ 95-98, with Hamas once again utilizing UNRWA infrastructure throughout Gaza following October 7. Indeed, since the filing of the Complaint, over a dozen UNRWA facilities have been discovered to be *Hamas* strongholds, including UNRWA's Gaza City headquarters.[5]

---

[5] For instance, on May 5, 2024, a Hamas command center in central Gaza from which the group had staged multiple attacks was found beneath an UNRWA complex. *Israel Strikes Hamas Command Center Under UNRWA Complex*, FOUND. FOR DEF. OF DEMOCRACIES (May 6, 2024), https://www.fdd.org/analysis/2024/05/06/israel-strikes-hamas-command-center-under-unrwa-complex/. The following week, Hamas terrorists were recorded on video operating inside an UNRWA logistics compound in Rafah in plain sight. *Gaza Terrorists Exploit Two More UNRWA Facilities*, FOUND. FOR DEF. OF DEMOCRACIES (May 14, 2024), https://www.fdd.org/analysis/2024/05/14/gaza-terrorists-exploit-two-more-unrwa-facilities/. Three days later, a Hamas war room and weapons depot was found inside an UNRWA school in Nuseirat, where many of the terrorists killed inside the school were members of Hamas's elite Nukhba Force. *Id.* On May 20, the IDF located additional Hamas weaponry in an UNRWA facility in Jabalya. Darcie Grunbluti, *WATCH: IDF discovers weapons in UNRWA facility, kills Hamas terrorists*, JERUSALEM POST (May 20, 2024), https://www.jpost.com/breaking-news/article-801835#google_vignette. Two days later, another UNRWA school in Nuseirat was discovered to be housing Hamas members, as well as Hamas weapons. Emanuel Fabian, *IDF: Airstrike targeted Hamas members, weapons store at UNRWA school in central Gaza*, Times of Israel (May 22, 2024), https://www.timesofisrael.com/liveblog_entry/idf-airstrike-targeted-hamas-members-weapons-store-at-unrwa-school-in-central-gaza/. On May 30, the IDF discovered more weapons inside an UNRWA school in Rafah. Staff, *WATCH: IDF uncovers weapons stored in UNRWA school*, TIMES OF ISRAEL (May 30, 2024), https://www.jpost.com/breaking-news/article-804383. A week later, members of the Nukhba unit, as well as of PIJ, were found to be using classrooms in another UNRWA school in Nuseirat. *Israel Targets Hamas and Islamic Jihad Terrorists Hiding in UNRWA School*, FOUND. FOR DEF. OF DEMOCRACIES (June 6, 2024), https://www.fdd.org/analysis/2024/06/06/israel-targets-hamas-and-islamic-jihad-terrorists-hiding-in-unrwa-school/. The next day, Hamas members were found to be operating in UNRWA's Asmaa school in Gaza City. Emanuel Fabian, *IDF: Hamas members killed in command room in a container at UN school in Gaza City's Shati camp*, TIMES OF ISRAEL (June 7, 2024), https://www.timesofisrael.com/liveblog_entry/idf-hamas-cell-killed-in-strike-on-container-at-un-school-in-gaza-citys-shati-camp/. On June 28, dozens of Hamas members were found hiding in multiple UNRWA schools in Shejaia. Staff, *IDF kills dozens of terrorists hiding in UNRWA schools, increase attacks in Shejaia*, JERUSALEM POST (June 28, 2024), https://www.jpost.com/israel-hamas-war/article-808147. Finally, this week, Hamas was found to be operating out of UNRWA's Gaza City headquarters. Yael Halfon, *IDF engages Hamas, PIJ terrorists operating in Gaza City UNRWA HQ*, JERUSALEM POST (July 10, 2024), https://www.jpost.com/israel-hamas-war/article-809705. These instances are all consistent with the facts directly pleaded in the Complaint. *See* Compl. ¶¶ 49, 54-80.

Defendant cites *Weiss v. Nat'l Westminster Bank PLC* for the proposition that "[e]vidence that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement." *Weiss v. Nat'l Westminster Bank PLC*, 993 F.3d 144, 158 (2d Cir. 2021). But that proposition is inapplicable here. In *Weiss*, the Second Circuit concluded that National Westminster Bank ("NatWest") was not liable because NatWest had no reason to believe that the charities to which it provided monetary transfers were engaging in terrorism and "plaintiffs proffered no evidence that the charities funded terrorist attacks or recruited persons to carry out such attacks." Plaintiffs have entirely the opposite situation here— Plaintiffs have alleged UNRWA's facilitation of Hamas's terrorism and UNRWA's support of abhorrent violence against Jews, culminating in UNRWA's participation in the October 7 terror attacks that harmed them and their loved ones. UNRWA USA is not a bank that happens to incidentally service UNRWA nor is it a social media platform that provides services to billions of users, including UNRWA—it is a fundraising arm that services *only* UNRWA and exists exclusively to do so. *C.f. Twitter, Inc. v. Taamneh*, 598 U.S. 471, 500 (2023) ("[T]here are no allegations that [Twitter] treated ISIS any differently from anyone else. Rather, [Twitter's] relationship with ISIS and its supporters appears to have been the same as [its] relationship with [its] billion-plus other users: arm's length, passive, and largely indifferent."); *Leisrael v. Educ. for A Just Peace in the Middle E.,* 66 F.4th 1007, 1016 (D.C. Cir. 2023) (affirming the multitude of recipient organizations within a coalition made it impossible for defendant to be generally aware of supporting FTOs). By alleging that UNRWA USA operates effectively as an extension of UNRWA, combined with UNRWA's historical support for Hamas, Plaintiffs have more than established a plausible inference that UNRWA USA possessed "actual awareness" of UNRWA's employment of Hamas members. *See Bernhardt*, 47 F.4th at 867 n.11. Plaintiffs need not

demonstrate more than awareness, for "[t]here is no requirement of specific intent, and a defendant does not have to 'wish[] to bring about' an act of terrorism or 'kn[ow] of the specific attacks at issue.'" *Id.* at 868 n.12 (quoting *Linde*, 882 F. 3d at 329).

In a variety of ways, UNRWA USA disputes it was "generally aware" of UNRWA's employment of and support of Hamas.

*First*, Defendant argues that allegations regarding UNRWA's participation in the October 7 terror attacks are not valid for establishing general awareness because the facts were released after October 7. *See* MTD at 23. Again, if this were a bank at arms' length, perhaps such an argument would be more salient. However, these allegations demonstrate that the degree of intertwinement between UNRWA and Hamas was so severe, it would have been impossible for UNRWA's fundraising arm, with whom it shares staff, to not know. Plaintiffs had alleged that between 12 and 30 UNRWA teachers participated in the October 7 terror attacks, while some 10% of UNRWA's employees have links to Hamas and 50% of UNRWA's employees have close relatives in these groups. Compl. ¶¶ 46, 95-98. Participation by UNRWA employees in the October 7 terror attacks was entirely foreseeable to Defendant, given UNRWA's long and storied history of enabling Hamas's various activities, of which "violence and killing is a foreseeable risk in any of these enterprises." *See Halberstam*, 705 F.2d at 488.

*Second*, even accepting the numbers as true, which they must at the Motion to Dismiss stage, Defendant quibbles. MTD at 23-24 (discussing both UNRWA employees' involvement on October 7 and UNRWA educators and educational staff and describing such role as minor and miniscule). But what is alleged are merely the *publicly* known scandals. UNRWA USA's blithe attitude towards Plaintiffs' statistics again is misplaced. *Id.* At this stage of the proceedings, this Court reads all reasonable inferences in the light most favorable to the Plaintiffs, not UNRWA

USA. Therefore, the reasonable inference is that more instances occurred behind closed doors, instances to which UNRWA USA would be far privier than the general public, given it operated as UNRWA's fundraising arm in the United States. By contrast, Defendant's preferred inference of insignificant participation cannot receive deference. Indeed, UNRWA USA's Executive Director has confirmed that she is aware of the UN Watch report "UNRWA'S TERRORGRAM," as well as prior reports by UN Watch, which detail UNRWA's enabling of Hamas. Compl. ¶ 113. Defendant also issued a statement acknowledging the reports of UNRWA employees partaking in the October 7 terror attacks, yet it has continued to fund UNRWA. *Id.* at ¶ 115. The reasonable inference here is that discovery will illuminate additional instances of scandals.

Plaintiffs' allegations of antisemitism among UNRWA employees are also relevant to the intertwinement inquiry, even if the Complaint does not allege these employees were members of Hamas. MTD at 24. Widespread allegations of UNRWA employees promoting, teaching, and celebrating indiscriminate violence and death against Jews are relevant because they reveal the degree to which the employees of the intermediary organization share Hamas's sentiments towards the Jewish people. Compl. ¶¶ 54–72. They also allows for the reasonable inference that UNRWA employees are members of Hamas. UNRWA USA wants this Court to draw the inference that the problem is miniscule and irrelevant, but Plaintiffs' reasonable inference is that the problem is far more pervasive, given the information of Hamas-supporting employees was gleaned only from limited employees who had public social media profiles. The oneness of spirit between UNRWA employees and Hamas (notably, in certain cases, *these are the same individuals*) only furthers the likelihood that UNRWA USA was aware of UNRWA's role as an intermediary to Hamas.

*Third*, Hamas has controlled UNRWA's Gaza employee union since at least 2009 when it won the UNRWA staff union elections. Compl. ¶ 49. Ten years ago, Elliott Abrams observed that

UNRWA's union is under Hamas's control and UNRWA's staff is riddled with Hamas activists. Compl. *Id*. Still, UNRWA USA wants this Court to draw the inference that Hamas is the Palestinian equivalent to the Teamsters. *See* MTD at 24. But this Court should grant the reasonable inference that Hamas exerted control over UNRWA's hiring and firing decisions.  Compl. ¶¶ 50–53.

*Fourth*, UNRWA does not suspend, fire, or pressure employees to resign due to their Hamas affiliation. Instead, UNRWA prohibits employees from holding political office. Compl. ¶ 55; *but see* MTD at 24. Furthermore, Plaintiffs have alleged sufficient facts that even UNRWA USA admits "potentially" alleges Hamas is "exerting influence over a personnel decision," and this Court should credit the allegation. *See id*.

*Fifth*, Defendant attempts to dismiss and discredit accusations of UNRWA's employment and support of Hamas as a function of "partisan critics" and "tendentious NGO reports" that run afoul of the "official position of the US Government." MTD at 26. As a threshold matter, the U.S. Government no longer funds UNRWA due to substantiated allegations of UNRWA's involvement in the October 7 terror attacks. Defendant further asserts that "[t]he presumption of truth accorded to well-pleaded factual allegations on a Rule 12(b)(6) motion does not extend to the content of third-party accusations that are pled to show that the defendant had legally required notice." *Id*. That is incorrect. In ATA cases, public sources are a necessary and frequent resource for pleading general awareness because "a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." *Kaplan,* 999 F.3d at 864. Courts routinely evaluate the content and timing of public sources when determining whether the defendant possessed the requisite general awareness. *See, e.g.*, *Honickman*, 6 F.4th at 501-02 (finding the "public sources" either lacked proper dating or were published after the attacks in question); *Kaplan,* 999 F.3d at 864 (relying on "press conferences and news media interviews," Hezbollah's "official television station," and

Hezbollah's "official radio station" to establish the bank had general awareness of the five intermediary customers' ties to Hezbollah); *Ofsi*, 77 F.4th at 675 (denying BNPP had general awareness of an intermediary's ties to Al-Qaeda because "the relationship between [the intermediary] Al Shamal and [b]in Laden was not widely reported until after the 1998 embassy bombings"). Indeed, all of UN Watch's reporting is based upon publicly available, verifiable information. *C.f. Collins v. City of New York*, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) (finding references to "other police-misconduct cases" insufficient to establish Monell liability because some cases constituted "unproven allegations").[6]

Aside from suggesting that Plaintiffs' sources are "flawed in one way or another," Defendant does not actually identify a way in which such sources are flawed. *See* MTD at 25 n.29 (quoting *Argueta v. U.S. Immigr. & Customs Enf't*, 643 F.3d 60, 74 (3rd Cir. 2011)).

### iii.   The Complaint Sufficiently Pleads that UNRWA USA Knowingly Provided Substantial Assistance to Hamas.

Under *Halberstam*'s third prong, plaintiffs must provide sufficient allegations to render it plausible that "the defendant . . . knowingly and substantially assist[ed] the principal violation." *Halberstam,* 705 F.2d at 477. "If the defendant knowingly—and not innocently or inadvertently— gave assistance, directly or indirectly," then the knowledge element is satisfied. *Atchley v. Astrazeneca UK Ltd.*, 22 F.4th 204, 222 (D.C. Cir. 2022). Defendant does not argue that the provision of cash to UNRWA was accidental or incidental. Nor was the provision of cash innocent,

---

[6] Defendant implicitly suggests that Israeli intelligence is unreliable. However, it is common for U.S. courts to turn to Israeli intelligence when substantiating allegations in anti-terrorism litigation. *See, e.g.*, *Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201, 219 (2d Cir. 2016) (finding declaration from Israeli intelligence official "provides context to Plaintiffs' allegations that [defendant bank] aided and abetted Hezbollah's alleged violations of the law of nations"); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 71 (D.D.C. 2002) (finding it "reasonable" for administrative agencies, such as OFAC, to rely on Israeli intelligence reports).

for "it defies credulity that [UNRWA USA] did not know that something illegal was afoot," *Halberstom* at 486, given the plethora of information regarding the deep connection between UNRWA and Hamas.

When evaluating whether "substantial assistance" was provided, the Court weighs six factors put forth in *Halberstam*: (i) the nature of the act assisted; (ii) the amount and kind of assistance; (iii) the defendants' presence at the time of the tort; (iv) the defendants' relationship to the tortious actor; (v) the defendants' state of mind; and (vi) the duration of assistance. *See Halberstam*, 705 F.2d at 483–84. No single factor is considered dispositive when determining whether substantial assistance was provided. *Astrazeneca*, 22 F.4th at 221.

　　a.　Nature of the Act Assisted.

Defendant argues that this factor does not weigh in Plaintiffs' favor because they "do not allege that any of UNRWA USA's aid actually reached Hamas." *See* MTD at 20. However, prior to the commencement of discovery, Plaintiffs do "not need to allege the funds 'actually went to Hamas'" as "[f]actual allegations that permit a reasonable inference that the defendant recognized the money it transferred to its customers would be received by the FTO would suffice." *Honickman*, 6 F.4th at 500. Therefore, "if a plaintiff plausibly alleges the general awareness element, she does not need to also allege the FTO actually received the funds." *Id.* Because Plaintiffs properly allege that UNRWA USA had a general awareness of Hamas's infiltration of UNRWA, this factor weighs in Plaintiffs' favor. *See Kaplan*, 999 F.3d at 865.

　　b.　Amount and Kind of Assistance.

Defendant rejects the contention that UNRWA USA provided assistance to Hamas, but this denial lacks merit given that UNRWA USA funneled millions to UNRWA, which is riddled with Hamas members, affiliates, and sympathizers. Concerning the amount and kind of support

provided by UNRWA USA, "[f]inancial support is 'indisputably important' to the operation of a terrorist organization, and any money provided to the organization may aid its unlawful goals." *Astrazeneca*, 22 F.4th at 222 (internal citations removed). Assessing whether a particular amount of support is substantial is a context-specific inquiry. "[A] court might also apply a proportionality test to particularly bad or opprobrious acts, *i.e.*, a defendant's responsibility for the same amount of assistance increases with the blameworthiness of the tortious act or the seriousness of the foreseeable consequences." *Halberstam*, 705 F.2d at 484 n.13. October 7, the deadliest day for the Jewish people since the Holocaust, was particularly monstrous. Therefore, "in relation to . . . vicious acts," such as those on October 7, "even 'relatively trivial' aid could count as substantial." *Astrazeneca*, 22 F.4th at 222. Regardless, in no realm is UNRWA USA's financial support trivial. UNRWA USA is the largest private donor to UNRWA—having transferred nearly $12 million to UNRWA from 2020 to 2022 alone—and has fundraised for UNRWA for years. Compl. ¶ 121, 130. Because UNRWA employs Hamas members, affiliates, and sympathizers; allows Hamas to utilize its infrastructure; and hides Hamas tunnels and operation centers beneath its infrastructure—even sharing its electricity with Hamas in at least one case—it is reasonable to allege that UNRWA USA funds have been used to support Hamas. Compl. ¶¶ 45-80, 93-98, 110. This factor weighs in Plaintiffs' favor. *Halberstam*, 705 F.2d at 484.

      c.   UNRWA's Relationship with Hamas.

Concerning Defendant's relation to the principal, courts are to conduct "an evaluation of how attenuated the relationship is between the defendant and the FTO." *Wildman v. Deutsche Bank Aktiengesellschaft*, 2022 U.S. Dist. LEXIS 233172, at *31 (E.D.N.Y. Dec. 29, 2022). Defendant rejects the notion that there is any relationship between UNRWA USA and Hamas. However, the relationship is straightforward: UNRWA USA operates as UNRWA's fundraising arm, and

UNRWA employs Hamas members, affiliates, and sympathizers; hides Hamas infrastructure beneath its own; and permits it facilities to be used for Hamas operations. This factor weighs in Plaintiffs' favor. *C.f. Astrazeneca*, 22 F.4th at 223.

      d.  UNRWA USA's State of Mind.

Concerning UNRWA USA's state of mind, Defendant is incorrect that the Complaint must allege that "UNRWA USA furnished aid to UNRWA with the intent of facilitating Hamas' terrorist operations." MTD at 21. Rather, "[k]nowledge of one's own actions and general awareness of their foreseeable results, *not* specific intent, are all that is required" for satisfying the *Halberstam* test. *Astrazeneca*, 22 F.4th at 223 (emphasis added). *See also Honickman*, 6 F.4th at 496 ("The defendant need not be generally aware of its role in the specific act that caused the plaintiff's injury; instead, it must be generally aware of its role in an overall illegal activity from which the act that caused the plaintiff's injury was foreseeable."). To that point, "Congress did not limit secondary liability to those who are 'one in spirit' with terrorists, or who substantially assist terrorism with a specific desire to advance terroristic outcomes." *Astrazeneca*, 22 F.4th at 223-24; *Halberstam,* 705 F.2d at 488 (aider and abettor held liable despite having no knowledge of the murder—knowledge of the property crimes was sufficient to establish general awareness because violence was a foreseeable risk). Here, UNRWA USA is and has been generally aware of the intertwinement between the Hamas enterprise and UNRWA and could reasonably foresee that its donations ultimately would provide assistance to Hamas terrorism. This factor weighs in Plaintiffs' favor. *Astrazeneca*, 22 F.4th at 221.

      e.  The Duration of UNRWA USA's Assistance.

Lastly, Defendant argues that the duration of the assistance given is "irrelevant to the analysis because Plaintiffs have not alleged any assistance to Hamas or any of its operations."

MTD at 21. This too is incorrect. As outlined in *Honickman*, "if a plaintiff plausibly alleges the general awareness element, she does not need to also allege the FTO actually received the funds." *Honickman*, 6 F.4th at 500. In that vein, UNRWA USA has continued to provide financial support to UNRWA as its primary fundraising arm for nearly two decades. Under *Halberstam*, "[t]he length of time an alleged aider-abettor has been involved with a tortfeasor almost certainly affects the quality and extent of their relationship and probably influences the amount of aid provided as well; additionally, it may afford evidence of the defendant's state of mind." 705 F.2d at 484. Despite the avalanche of incidents, Defendant had not paused funding once until October 7. Only after international pressure descended upon UNRWA did Defendant halt funding, and that only lasted for 30 days. This factor weighs in Plaintiffs' favor. *See Astrazeneca*, 22 F.4th at 224 ("Even on defendants' reading, four years is a significant duration.").

Accordingly, Plaintiffs pleaded sufficient facts to state an ATA claim.

### III.   Plaintiffs State a Claim that UNRWA USA Conspired with UNRWA and Hamas to Materially Support Hamas.

Under Section 2333(d), anyone "who conspires with the person who committed such an act of international terrorism" may be held liable. 18 U.S.C. § 2333(d)(2). When stating a conspiracy claim, the plaintiff must allege: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam*, 705 F.2d at 477. Plaintiffs properly allege each element in the Complaint.

First, and most pivotally, the Complaint plausibly alleges an agreement to commit an unlawful act. Compl. ¶ 141. Within the JASTA context, "[p]roof of a tacit, as opposed to explicit, understanding is sufficient to show agreement." *Halberstam*, 705 F.2d at 477; *see also Freeman v.*

24

*HSBC Holdings PLC,* 2018 U.S. Dist. LEXIS 127289, at \*62  (E.D.N.Y. July 27, 2018), *report and recommendation rejected on other grounds*, 413 F. Supp. 3d 67 (E.D.N.Y. 2019), *aff'd on other grounds*, 57 F.4th 66 (2d Cir. 2023). In instances lacking an admission of an agreement, "an agreement between conspirators must generally be inferred from circumstantial evidence revealing a common intent." *Halberstam*, 705 F.2d at 480. Defendant claims that the Complaint must fail because it "does not allege that UNRWA USA had any contact whatsoever with Hamas." MTD at 31. UNRWA USA demands more than what the case law requires. A tacit understanding, a shared objective, and at least some knowledge of the conspiracy is sufficient. *Freeman v. HSBC Holdings*, 413 F. Supp. 3d 67, 86-87 (E.D.N.Y. 2019).

Meanwhile, when inferring the existence of an agreement, the Court may look to "the relationships between the actors and between the actions (e.g., the proximity in time and place of the acts, and the duration of the actors' joint activity)." 705 F.2d at 481. Here, Plaintiffs properly allege an agreement between UNRWA, UNRWA USA, and Hamas to provide material support to Hamas. Compl. ¶ 141. The existence of such an agreement is further buttressed by the close relationship between all three actors: Hamas has relied on UNRWA's support for decades, while UNRWA USA has operated as a charitable extension of UNRWA for years, sharing both staff and leadership.

Inherent to the definition of an agreement is the notion that all three parties shared the same objective. Defendant claims that "[i]n the ATA context, the object of the conspiracy is to commit an act of international terrorism." MTD at 29. This is incorrect. Courts, some within the same circuit, disagree on whether the object of the conspiracy must be committing an act of international terrorism or whether it must be to provide material support to an FTO. *See Kemper v. Deutsche Bank AG*, 911 F.3d 383, 395 (7th Cir. 2018) (the plaintiff "has not alleged facts that give rise to a

plausible inference that [the defendant] agreed to provide material support for terrorism"); *Shaffer v. Deutsche Bank AG*, No. 16-CR-497-MJR-SCW, 2017 U.S. Dist. LEXIS 220198, at *14 (S.D. Ill. Dec. 7, 2017) ("For a claim to be viable under the ATA, the object of the participants' conspiracy must be to provide material support for terrorism."); *Freeman*, 2018 U.S. Dist. LEXIS 127289, at *75 (finding agreement to provide material support to be the object of the conspiracy). Since the provision of material support is the civil violation in question, it makes far more sense for the provision of material support to be the object of the conspiracy.

To that end, Plaintiffs properly allege that the common objectives between Hamas, UNRWA, and UNRWA USA consisted of "paying Hamas members, employing Hamas members, building schools that stored Hamas weapons, and developing profoundly antisemitic curricula that calls for the murder of the Jewish people." Compl. ¶ 141. The October 7 terror attacks, though not necessarily the objective of the conspiracy alleged by Plaintiffs, were more than a "natural and foreseeable consequence of the conspiracy." *Freeman ex. re. Est. Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 82 (2d Cir. 2023).  Hamas's charter calls for the extermination of the Jewish people. Hamas terrorism, which includes the indiscriminate slaughter of Jewish people, is an inevitable, rather than foreseeable, consequence of funding Hamas's agenda. Compl. ¶¶ 34, 147. Therefore, Plaintiffs have not "stretched the concept of civil conspiracy too far beyond its origin," as Defendant has suggested. *See Freeman*, 57 F.4th at 82. Defendant claims that the UNRWA and Hamas have a "well-documented, adversarial relationship." MTD at 30. The relationship may be well-documented but, as discussed prior, it is patently not adversarial and, on this Motion to Dismiss, all reasonable inferences are taken in the light most favorable to the Plaintiffs. *Fleisher*, 679 F.3d at 120. UNRWA repeatedly has enabled Hamas, allowing Hamas to control its employee union and ousting Hamas *leaders* only when subject to outside pressure, and continues to do so.

IV.     **Plaintiffs State a Claim that UNRWA USA Violated the Laws of Nations Which Injured Plaintiffs.**

Hamas killed, raped, butchered, and immolated innocent civilians on October 7, 2023, and Israeli Plaintiffs Lavi, Almog, and Ein-Gal are all victims of Hamas's brutality. These heinous actions violated the law of nations. In consistently providing substantial funds to UNRWA, UNRWA USA aided and abetted these activities. UNRWA USA knew that UNRWA was intertwined with Hamas and knew that the stated goal of Hamas is to kill Jewish people and other innocent civilians. Compl. at 1, ¶¶ 6–15, 31, 97, 103–04, 128–29, 131, 136. Accordingly, Plaintiffs have stated a clam under the Alien Tort Statute (the "ATS").

A.      **The Elements of an ATS Claim.**

The ATS states that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. "On its face, the statute specifies that, to state a claim, plaintiffs must (i) be 'aliens,' (ii) claiming damages for a 'tort only,' (iii) resulting from a violation 'of the law of nations' or of 'a treaty of the United States.'" *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 242 (2d Cir. 2003) (citations omitted). The ATS is "strictly jurisdictional" and does not state what qualifies as a violation of international law. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 713–14 (2004).

Israeli Plaintiffs Lavi, Almog, and Ein-Gal have satisfied these elements: (1) Plaintiffs are Israeli citizens; thus they are "aliens," see Compl. ¶¶ 142, 146; (2) Plaintiffs have a variety of injuries they obtained through several different torts that occurred due to UNRWA USA's violations of international law, see Compl. ¶¶ 148–156; and (3) these injuries resulted from UNRWA USA's violation of the International Convention for the Suppression of the Financing of Terrorism ("Financing Convention"), Compl. ¶¶ 150–51.

UNRWA USA raises three objections. *First*, UNRWA USA disputes that Israeli Plaintiffs sufficiently pleaded aiding and abetting liability. *Second*, UNRWA USA also disputes that Israeli Plaintiffs' injuries are covered under the ATS. *Third*, UNRWA USA makes the breathtaking assertion that Hamas's brutal October 7 attack on innocent civilians did not violate international law. *See* MTD at 31-34. All three objections are meritless.

### B.  Israeli Plaintiffs Sufficiently Pleaded Aiding and Abetting Liability.

The Financing Convention allows for aiding and abetting liability if a person contributes to the commission of an offense where the contribution is made with the knowledge of the intention of the group to commit an offense. International Convention for the Suppression of the Financing of Terrorism, art. 2.5(c)(ii), Dec. 9, 1999. The Ninth, Eleventh, and D.C. Circuits have recognized "knowing assistance" as the appropriate *mens rea* standard in international law, distinguishing the Rome Statute as an outlier. *See Doe v. Cisco Sys.,* 73 F.4th 700, 729, 734 (9th Cir. 2023) ("We accordingly conclude that customary international law imposes aiding and abetting liability for knowing assistance.").

Plaintiffs have plausibly pleaded that UNWRA USA provided "knowing assistance" to Hamas. UNRWA USA knew UNRWA employed, financed, and supported Hamas. *See* Compl. ¶¶ 45–92, 128–29, 136. UNRWA USA was "fully aware" that Hamas controlled UNRWA's employee union. Compl. ¶¶ 128–29, 136. Hamas is a U.S. designated foreign terrorist organization bent on killing Jewish people. *See* Compl. ¶¶ 30–33. And UNRWA USA knew that UNRWA and Hamas work hand-in-hand, something that UNRWA USA admits. *See* MTD at 7 (stating that UNRWA could not be effective if it stopped communicating with Hamas). UNWRA USA therefore knew that by contributing millions of dollars to UNRWA it was providing funding to Hamas. The millions of dollars UNWRA USA donated was "knowing assistance" provided to Hamas, which

had a substantial impact on the terrorist organization's ability to carry out its attacks on October 7, 2023. Compl. ¶¶ 93–98, 148.

Plaintiffs have pleaded sufficient facts that UNRWA USA, either directly or indirectly, unlawfully and willfully provided funds to UNRWA with the knowledge that at least some of the funds would be used to carry out acts intended to cause death or serious bodily harm to innocent civilians to intimidate the Israeli population. Compl. at 1, ¶¶ 6–15, 31, 97, 103–04, 128–29, 131, 136, 150; *see also* International Convention for the Suppression of the Financing of Terrorism, art. 2.1, Dec. 9, 1999. Additionally, Plaintiffs pleaded sufficient facts that UNRWA USA aided and abetted Hamas's attacks by contributing to UNRWA knowing that UNRWA and Hamas were so intertwined. And UNRWA USA knew of Hamas's intention to kill innocent civilians. Compl. at 1, ¶¶ 6–15, 31, 97, 103–04, 128–29, 131, 136, 151. Accordingly, this Court should reject UNRWA USA's argument to the contrary. *See* MTD at 31-32 n.35; *see also Almog v. Arab Bank, PLC*, 471 F. Supp.2d 257, 278 (E.D.N.Y. 2007).

UNRWA USA urges this Court to adopt the Fourth Circuit's test, which requires Plaintiffs to plead that the defendant assisted the principal with the purpose of facilitating the commission of a crime. MTD at 31 (citing *Aziz v. Alcolac, Inc*., 658 F.3d 388, 398 (4th Cir. 2011)). But in arriving at this standard, the *Aziz* court afforded the Rome Statute too much deference. *Doe*, 73 F.4th at 731. The Rome Statute was not intended to codify customary international law and its provisions expressly say so. *Id.* at 731. The Rome Statute expressly states that "[n]othing in this Part shall be interpreted as limiting or prejudicing in any way existing or developing rule of international law for purposes other than this Statute." *Id.* at 731 (quoting Article 10 of the Rome Statute). Accordingly, the knowing standard has achieved the requisite universality to be applied in ATS cases. Plaintiffs have pleaded sufficient facts to state a claim.

**C.      Israeli Plaintiffs Assert Injuries Caused by UNRWA USA's Violations of International Law, Not State Tort Law.**

Israeli Plaintiffs assert a claim that UNRWA USA harmed them by violating the Financing Convention. In violating the Financing Convention, Plaintiffs assert that Hamas intended to cause them severe bodily harm and in fact caused them severe emotional and mental trauma. Compl. ¶¶ 6–15. Ms. Lavi was home when the Hamas terrorists broke into her residence and took her husband hostage. Compl. ¶ 6. Ms. Almog watched Hamas slaughter her friends as her friends pled for their lives. Compl. ¶ 12. Hamas terrorists abruptly awoke Mr. Ein-Gal on Zikim Beach. He watched the Hamas terrorists storm the coast by boats and fled the beach under heavy gunfire. Later, he tried to flee by car only to have Hamas terrorist shoot dozens of rounds into his car.  Compl. ¶ 15. Israeli Plaintiffs were shot at; forced to run and hide, to witness the massacre of friends and loved ones, and to watch Hamas take their loved ones as hostages. *See* Compl. ¶¶ 23–29.

All these allegations show that Hamas intended to cause Plaintiffs death or serious bodily harm in violation of the Financing Convention. UNRWA USA funded UNRWA despite knowing that Hamas was intertwined with UNRWA and therefore knew that funds were to be used—at least in part—in a manner intended to cause death or serious bodily injury. Compl. ¶¶ 31, 128–129, 136, 148–152. Israeli Plaintiffs have properly stated a claim that they were harmed by UNRWA USA's violations of the Financing Convention.

**D.      Hamas Violated International Law Because Its Attacks Targeted and Killed Innocent Civilians.**

The Financing Convention states that a person is guilty of violating the convention if that person by any means, directly or indirectly, with the intention that "they should be used or in the knowledge that they are to be used, in full or in part, to carry out . . . any other act intended to

cause death or serious bodily injury to a civilian." Compl. ¶ 150.[7] This same Convention recognizes

aiding and abetting liability for contributing to a group with the knowledge of the group's intention

to violate international law. Compl. ¶ 151 (citing Financing Convention art. 2.5(c)(ii)). Multiple

Circuits have found cognizable aiding and abetting claims under the ATS, and no Circuit has held

otherwise. *Doe,* 73 F.4th at 718 ("[T]he Second, Fourth, and Eleventh Circuits have all held that

aiding and abetting liability claims may proceed under the ATS.")

Importantly, the Convention also recognizes "the three-century old principle of distinction,

which requires parties to a conflict to at all times distinguish between civilians and combatants and

forbids the deliberate attacking of civilians." *Almog*, 471 F. Supp.2d at278.[8] *See* Compl. ¶ 150.

Hamas, including Hamas members who are known UNRWA employees, made no distinction

between civilians and combatants when it brutally murdered innocent civilians on October 7, 2023.

Compl. at 1, ¶¶ 6–15, 31, 97, 103–04. Article 7 of Hamas's charter calls for the murder of Jewish

people. Compl. ¶ 31. Hamas's attacks violated international law. UNRWA USA's funding of

---

[7] UNRWA USA wrongly relies on Supreme Court precedent for the proposition that the Financing Convention does not authorize courts to adjudicate claims under the ATS. MTD at 34 n.38 (citing *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 261–62 (2018)). *Jesner* answered a separate question, namely, whether "common-law liability under the ATS extends to a *foreign corporate defendant*[]." an important question given the presumption against extraterritoriality and the foreign policy concerns attendant with permitting suits by foreign national plaintiffs against foreign national corporations for wrongs done outside the United States. *Id.* at 255–57 (emphasis added). Here, UNRWA USA is a domestic corporation incorporated in Delaware. Compl. ¶ 16. And UNWRA USA's "relevant" conduct of aiding and abetting Hamas sufficiently "touches and concerns" the United States, therefore the presumption against extraterritoriality is displaced. *See Mastafa v. Chevron Corp.*, 770 F.3d 170, 186 (2d Cir. 2014).

[8] *Almog* remains good law. The Second Circuit dismissed *Almog* because the law of the Second Circuit does not allow ATS claims against corporations, not because the Financing Convention was not customary international law or because the *Almog* plaintiffs merely complained of terrorism. *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 151 (2d Cir. 2015); *see* MTD at 34 n.37. Importantly, the Fourth, Seventh, Ninth, Eleventh, and D.C. Circuits all recognize that the ATS applies to claims against corporate defendants. *Arab Bank,* 808 F.3d at 156.

UNRWA knowing that Hamas was intertwined with UNRWA, and knowing that Hamas intended to violate international law by killing civilians also violates the Financing Convention.

But UNRWA USA takes the shocking position that Hamas's terrorist acts, and UNRWA USA's funding of them, are not violations of international law because there is no customary international law prohibiting terrorism. MTD at 33-34. UNRWA USA is wrong.

*First*, although the Financing Convention includes the word "terrorism," that alone is not dispositive on the question of whether customary international law recognizes a violation of the Financing Convention. Instead, the inquiry is whether the acts Plaintiffs allege to have occurred and caused their injuries violate customary international law. *See Sosa,* 542 U.S. at 736–38; *United States v. Yousef*, 327 F.3d 56, 97–98 (2d Cir. 2003) ("[W]e hold that Yousef's conduct charged in Count Nineteen—regardless of whether it is termed "terrorist"—constitutes the core conduct proscribed by the Montreal Convention [suppressing unlawful acts against civilian aircraft] and its implementing legislation."). Thus, the question is whether UNRWA USA's funding of UNRWA—knowing that UNRWA and Hamas are intertwined—violated international law norms when on October 7, 2023, Hamas targeted, raped, murdered, butchered, and immolated civilians. *Almog*, 471 F. Supp. 2d at 281. And Plaintiffs have sufficiently pleaded these facts. Compl. at 1, ¶¶ 6–15, 31, 97, 103–04, 128–29, 131, 136. The prohibition against targeting innocent civilians is not new. *Almog*, 471 F. Supp.2d at 278. This principle has been ratified by the Geneva Conventions of 1949, recognized by the Nuremberg Tribunals, *Nurenberg Council Law* No. 10 art. II, 1(b)-(d), Dec. 20, 1945, and recognized in U.N. Security Council Resolutions. *Almog*, 471 F. Supp. 2d at 278–79.

Accordingly, the Financing Convention adopts universally recognized international norms that attacks on civilians and the financing of those attacks violates international law.[9]

*Second*, UNRWA USA asserts that there are extensive disagreements and reservations about the definition of terrorism. *Id.* at 34 n.39. But UNRWA USA fails to provide any evidence that "it is lawful in any State to engage in organized, systematic murderous attacks on civilians for the purpose of coercing or intimidating the civilian population." *Almog*, 471 F. Supp.2d at 283. And none of the reservations in the Financing Convention contend that it is lawful to engage in attacks on civilians to further a right to self-determination. *See id.* Plaintiffs assert that Hamas committed an organized, systematic, and murderous attacks on civilians. These attacks were financed in part by UNRWA and UNRWA USA. Compl. ¶¶ 45–92, 128–29, 136.

*Third*, that the Financing Convention does not create a private right of action is not dispositive. MTD at 33. As the Second Circuit recognized, jurisdiction under international law is "usually exercised by application of criminal law" while states are permitted to enact civil

---

[9] UNRWA USA cites *In re Chiquita Brands Int.l* for the proposition that the Financing Convention does not establish universal customary international law. 792 F. Supp.2d 1301, 1318 (S.D. Fla. 2011). MTD at 34 (D.I. 22). But the Financing Convention was not customary law in 2002 when the acts at issue in *Chiquita Brands* occurred. 792 F. Supp.2d at 1319 (noting that in 2002, only 26 countries (14%) had ratified the Financing Convention). By 2007, however, 130 countries (67%), had ratified it. *Almog*, 471 F. Supp.2d at 276; Compl. ¶ 150; and in 2018, a court found that an overwhelming majority of nations (80%) had ratified the Financing Convention. *Nahl v. Jaoude*, 354 F. Supp. 3d 489, 500 (S.D.N.Y. 2018) *overruled on other grounds* 968 F.3d 173 (2d Cir. 2020). It has now been ratified by 188 countries, or approximately 95% of the countries. *See* United Nations Treaty Collection *International Convention for the Suppression of the Financing of Terrorism*, available at https://treaties.un.org/pages/ViewDetails.aspx?src=TREATY&mtdsg_no=XVIII-11&chapter=18&clang=_en (last visited June 24, 2024) (listing all countries in alphabetical order and providing dates of ratification). These numbers constitute an overwhelming majority of nations necessary to establish a widely accepted norm of international law. *Almog*, 471 F. Supp. 2d at 284. By comparison, by 1995, 120 countries had ratified the convention against genocide. *See Kadic v. Karadzic*, 70 F.3d 232, 241 (2d Cir. 1995).

remedies, "such as tort actions authorized by the [ATS]." *Kadic v. Karadzic*, 70 F.3d 232, 240 (2d Cir. 1995). Indeed, the Convention on the Prevention and Punishment of the Crime of Genocide calls for perpetrators of genocide to be *punished*, refers to genocide as a crime, and calls on states to enact laws to punish those guilty of violating the convention. Importantly, it does not call for states to enact civil remedies. *See id.* at 241–42; *See* Art. I, IV-VI of the Genocide Convention.[10] Congress, in fact, chose not to create any substantive rights in the Genocide Convention Implementation Act, but this does not mean that a private remedy did not already exist under the ATS. *Id.* at 242. Thus, courts have held that plaintiffs have cognizable ATS claims under the Genocide Convention. *See id.* at 241–42; *see also Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201, 213 (2d Cir. 2016) ("Plaintiffs have alleged systematic rocket attacks against the Jewish civilian population in Israel, committed with the intent to exterminate or expel them from the territory. These allegations adequately plead acts of genocide and crimes against humanity."). Instead, what is dispositive is whether the Financing Convention creates a "specific, universal, and obligatory" norm under international law. *Jesner v. Arab Bank, PLC,* 584 U.S. 241, 258 (2018). The Financing Convention has been adopted by an overwhelming majority of nations. It also provides very clear and specific rules containing "articulable [and] discernable standards and regulations." *Flores v. S. Peru Copper Corp.,* 414 F.3d 233, 249 (2d Cir. 2003). UNRWA USA does not contest this.

## V.   Plaintiffs Have Plausibly Alleged a Claim for Negligent Infliction of Emotional Distress.

Plaintiffs have satisfied the elements to plead Negligent Infliction of Emotional Distress ("NIED"). "The elements required for a claim of negligent infliction of emotional distress are: (1)

---

[10]     *Available      at*      www.un.org/en/genocideprevention/documents/atrocity-crimes/Doc.1_Convention%20on%20the%20Prevention%20and%20Punishment%20of%20the%20Crime%20of%20Genocide.pdf (last visited June 24, 2024).

negligence causing fright to someone; (2) that was in the 'zone of danger;' which, (3) produces physical consequences to that person because of the contemporaneous shock." *J.S. v. Edgemoor Cmty. Ctr., Inc.*, 2024 Del. Super. Lexis 38, at *3 (Del. Sup. Ct. 2024). The zone of danger refers to "that area where the negligent conduct causes the victim to fear for his or her own safety." *Id.* at *3–4 (citation omitted). Physical injury is defined broadly, including such things as depression and anxiety. *See Fanean v. Rite Aid Corp. of Delaware*, 984 A.2d 812, 820 (Del. Sup. Ct. 2009).

Plaintiffs have alleged that UNWRA USA engaged in negligent actions by providing aid and support to Hamas. *See* Compl. ¶ 159. This certainly caused fright and Plaintiffs certainly feared for their own safety as they were forced to suffer through the terrorist attacks, losing family and loved ones. *See* Compl. ¶¶ 23–29. Plaintiffs have alleged numerous injuries suffered as a result. *See* ECF No. 1 at ¶ 148. Therefore, Plaintiffs have plausibly pleaded a claim for NIED.

Defendant argues that UNWRA USA did not owe a "duty of care" to Israeli citizens, or that it breached this duty by funding UNWRA. *See* MTD at 35. "Duty of care" is prevalent throughout the complaint: UNWRA USA has a duty to Israeli citizens—and all others—not to back terrorists, yet UNWRA USA has continued to breach that duty for decades by funding UNWRA, knowing the organization works hand-in-hand with Hamas.

Additionally, Defendant argues that Delaware recognizes the "but for" test for proximate cause, and that Plaintiffs allege no nexus between UNWRA USA's donations and the Hamas attacks. *See* MTD at 35. Hamas is able to carry out terrorist attacks only if it has the proper funding and organizational infrastructure to execute their plans. If not for the millions of dollars UNWRA USA funnels to Hamas through UNWRA, Hamas would be at least burdened in their efforts.

## **CONCLUSION**

For the foregoing reasons, this Court should deny UNRWA USA's Motion to Dismiss.

HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC

Jason Torchinsky**
John Cycon**
Erielle Davidson**
Zack Henson*
jtorchinsky@holtzmanvogel.com
jcycon@holtzmanvogel.com
edavidson@holtzmanvogel.com
zhenson@holtzmanvogel.com
2300 N Street NW
Suite 643
Washington, D.C. 20037
P: (202) 737-8808
F: (540) 341-8808


NATIONAL JEWISH ADVOCACY CENTER,
INC

Mark Goldfeder*
1718 General George Patton Drive
Brentwood, TN 37027
Phone: (800) 269-9895
mark@jewishadvocacycenter.org

GOLDFEDER AND TERRY, LLC

Ben Schlager*
666 Harless Place
West Hempstead, NY  11552
Phone: (917) 495-5790
ben@goldfederterry.com

*/s/ Theodore A. Kittila*
HALLORAN FARKAS + KITTILA LLP
Theodore A. Kittila (No. 3963)
5722 Kennett Pike
Wilmington, Delaware  19807
Phone:  (302) 257-2025
Email:  tk@hfk.law


DAVID I. SCHOEN, ATTORNEY AT
LAW

David I. Schoen (Lead Counsel)**
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106
Phone: (334) 395-6611
schoenlawfirm@gmail.com

*Pro hac vice application forthcoming
**Admitted Pro Hac Vice*

*Counsel for Plaintiffs*