# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------------- X

LISHAY LAVI, NOACH NEWMAN, ADIN GESS, MAYA PARIZER, NATALIE SANANDAJI, YONI DILLER, HAGAR ALMOG, DAVID BROMBERG, LIOR BAR OR, and ARIEL EIN-GAL,

                              Plaintiffs,

        -against-

UNRWA USA NATIONAL COMMITTEE, INC.,

                              Defendant.

Civil Case No.
24-cv-00312 (RGA)

---------------------------------------------------------------------- X

**DEFENDANT UNRWA USA NATIONAL COMMITTEE, INC.'s REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) and FED R. CIV. P 12(b)(1)**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

    I.    Plaintiffs' ATA Aiding and Abetting Claims Fail ........................................................ 1

        A.  Plaintiffs Do not Plead "Knowing and Substantial Assistance" ........................... 1

        B.  Plaintiffs Do Not Plead General Awareness ......................................................... 4

        C.  Plaintiffs Do Not Allege That UNRWA Assisted the October 7 Attack ............. 6

    II.   Plaintiffs' ATA Conspiracy Claims Fail ..................................................................... 6

    III.  Plaintiffs' Alien Tort Statute Claims Fail .................................................................... 7

    IV.  Plaintiffs' NIED Claims Fail ..................................................................................... 10

    V.   Judicial Notice Is Appropriate ................................................................................... 11

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Abu Nahl v. Abou Jaoude*, 968 F.3d 173 (2d Cir. 2020) .................................................................. 11

*Almog v. Arab Bank, PLC*, 471 F. Supp. 2d 257 (E.D.N.Y. 2007) dismissed *sub nom. In re Arab Bank PLC Alien Tort Litigation*, 808 F.3d. 144 (2d Cir. 2015) .................................................. 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................. 6, 16

*Atchley v. AstraZeneca UK Ltd.*, 2024 U.S. LEXIS 2785 (June 24, 2024) ................................... 2

*Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204 (D.C. Cir. 2022) ..................................................... 2

*Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856 (D.C. Cir. 2022) ...................................... 5, 6

*Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173 (3d Cir. 1988) ............ 6

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) ................................................. 14

*Dimanche v. Brown*, 783 F.3d 1204 (11th Cir. 2015) ..................................................................... 15

*Doe v. Cisco Sys., Inc.*, 73 F.4th 700 (9th Cir. 2023) ..................................................................... 12

*Doe v. Holy See*, 557 F.3d 1066 (9th Cir. 2009) ............................................................................. 15

*Freeman ex rel. Est. Freeman v. HSBC Holdings PLC,* 57 F.4th 66 (2d Cir. 2023) ..................... 9

*Freeman v. HSBC Holdings*, 2018 U.S. Dist. LEXIS 127289 (E.D.N.Y. July 27, 2018) .............. 8

*FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147 (3d Cir. 2019) ....................................................... 14

*Garb v. Republic of Poland*, 440 F.3d 579 (2d Cir. 2006) ............................................................ 15

*Gross v. German Found. Indus. Initiative*, 549 F.3d 605 (3d Cir. 2008) ..................................... 15

*Halberstam v. Welch*, 705 F. 2d 472 (D.C. Cir. 1983) ............................................................. 4, 5, 7

*Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021) ..................................................... 3, 5

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ................................... 18

*Ivezaj v. INS*, 84 F.3d 215 (6th Cir. 1996) ....................................................................................... 15

*Jesner v. Arab Bank, PLC*, 584 U.S. 241 (2018) ...................................................................... 10, 12

*Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995) ............................................................................... 10

*Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525 (S.D.N.Y. 2019), *vacated in part on other grounds*, 999 F.3d 842 (2d Cir. 2021) ........................................................................ 8

*Kemper v. Deutsche Bank AG*, 911 F.3d 383 (7th Cir. 2018) ................................................... 8, 9

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) ........................................................ 13

*Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201 (2d Cir. 2016) ........................................ 10

*Nahl v. Jaoude*, 354 F. Supp. 3d 489 (S.D.N.Y. 2018), rev'd and remanded, 968 F.3d 173 (2d Cir. 2020) .......................................................................................................................... 12

*Nation v. DOI*, 876 F.3d 1144 (9th Cir. 2017) .............................................................................. 15

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) .......................................................... 6

*Reprod. Health Servs. v. Strange*, 3 F.4th 1240 (11th Cir. 2021) ................................................ 15

*Shaffer v. Deutsche Bank AG*, 2017 U.S. Dist. LEXIS 220198 (S.D. Ill. Dec. 7, 2017) ................ 8

*Shahar v. Bowers*, 120 F.3d 211 (11th Cir. 1997) ....................................................................... 15

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) ............................................................................. 9

*Sturgeon v. PharMerica Corp.*, 438 F. Supp. 3d 246 (E.D. Pa. 2020) ........................................ 16

*Twitter v. Taamneh*, 598 U.S. 471 (2023) ........................................................................... 1, 2, 3, 4

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104 (2d Cir. 2008) .... 11

*Williams v. Lew*, 819 F.3d 466 (D.C. Cir. 2016) ......................................................................... 15

*Youkhana v. Gonzales*, 460 F.3d 927 (7th Cir. 2006) .................................................................. 15

**Rules**

Fed. R. Evid. 201(b) ...................................................................................................................... 11

Fed. R. Evid. 201(c) ...................................................................................................................... 11

Fed. R. Evid. 902(5) ...................................................................................................................... 13

**INTRODUCTION**

Plaintiffs' opposition only underscores the infirmity of their claims. Rather than explain how they satisfy *Twitter v. Taamneh*—which requires UNRWA USA to have "consciously, voluntarily, and culpably participat[ed]" in the October 7 attacks for Anti-Terrorism Act ("ATA") aiding and abetting liability to attach, 598 U.S. 471, 493, 495 (2023)—Plaintiffs ignore that case entirely, and rely on case law that was vacated in light of *Twitter* a full month prior to Plaintiffs filing their opposition. Plaintiffs' attempt to rewrite the Complaint in opposition cannot save them from this fatal legal defect. There is, quite simply, nothing in the Complaint that satisfies any part of the test to hold UNRWA USA liable under an aiding and abetting or conspiracy theory. Plaintiffs' Alien Tort Statute ("ATS") claim is equally meritless. Not only do they fail to plead that UNRWA USA provided "purposeful" or "knowing" assistance to the October 7 attack, Plaintiffs fail to identify a "specific, universal and obligatory" norm that UNRWA USA violated by distributing aid to UNRWA. As such, this Court lacks jurisdiction over the ATS claim.

Unable to contend with the judicially noticeable record showing just how meritless Plaintiffs' claims are, given that UNRWA's operations were audited and validated by the US Government, Plaintiffs invite the Court to disregard that record, contrary to the Federal Rules of Evidence. With or without that record, the Complaint should be dismissed in its entirety.

**ARGUMENT**

**I.    Plaintiffs' ATA Aiding and Abetting Claims Fail**

**A.  Plaintiffs Do not Plead "Knowing and Substantial Assistance"**

Plaintiffs ignore *Twitter*'s requirement that ATA aiding and abetting liability requires that UNRWA USA "consciously and culpably participated in [the October 7 attack]." 598 U.S. at 497. Instead, they rely on *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204 (D.C. Cir. 2022)—a decision

1

vacated in light of *Twitter, see* 2024 U.S. LEXIS 2785 (June 24, 2024)—for the proposition that ATA aiding and abetting liability does not require specific intent, Opp. 20, 23, overlooking *Twitter*'s requirement that a defendant must have "wished to bring about [the terrorist attack], or sought by their action to made it succeed." *Twitter*, 598 U.S. at 490. They assert that the ATA provides "broad relief," Opp. 8, but ignore *Twitter*'s admonition that aiding-and-abetting liability be "cabin[ed] . . . to cases of truly culpable conduct." 598 U.S. at 489.

Plaintiffs wrongly assert that they need only establish UNRWA USA's "general awareness" that its aid was being used to benefit Hamas, Opp. 12, ignoring that "knowing and substantial assistance" is a separate element of aiding and abetting that *Twitter* held requires an additional scienter showing—namely, that the defendant provided aid "with the intent of facilitating" the attack that injured plaintiffs. *Id.* at 490, 503-04; *see also, id.* at 506 (plaintiffs must "allege that defendants intentionally provided substantial aid to the [] attack or otherwise consciously participated" in it). The Complaint does not—and could not—allege facts to support the inference that UNRWA USA intended to facilitate the October 7 attack. The theory of culpability advanced by Plaintiffs—that UNRWA USA aided UNRWA despite knowing that Hamas derived a benefit from UNRWA's humanitarian operations—is just a feebler version of the one rejected in *Twitter*. In *Twitter*, the Court held that even though defendants Google and Twitter knew that ISIS was benefiting from their platforms, "ISIS' ability to benefit from these platforms was merely incidental to defendants' services and general business models," and "not attributable to any culpable conduct of defendants directed toward ISIS." *Id.* at 504-505. Here, Plaintiffs' theory of culpability is even more tenuous, as the Complaint does not even allege that Hamas derived a benefit from UNRWA USA's specific contributions.[1]

---

[1] Plaintiffs' attempt to establish culpability based on the supposed foreseeability of Hamas benefiting from aid delivered to UNRWA is equally misplaced. Opp. 12. Foreseeability is not a

2

In fact, Plaintiffs do not allege that any aid from UNRWA USA actually flowed to Hamas, directly or otherwise. Rather than articulate a "concrete nexus" between UNRWA USA's assistance and the October 7 attack as required by *Twitter, id.* at 501, Plaintiffs argue that none is required—that "'if a plaintiff plausibly alleges the general awareness element, she does not need to also allege the [Foreign Terrorist Organization ("FTO")] actually received the funds.'" Opp. 12 (quoting *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 500 (2d Cir. 2021)). Not only is this argument untenable after *Twitter*,[2] it is contrary to the rule that a plaintiff who brings an aiding-and-abetting claim based on the provision of aid to an intermediary with "legitimate operations" must plausibly allege actual receipt by the FTO. *See* MTD 17-18. *Honickman*, whose plaintiffs alleged that the defendant bank directly aided entities whose sole purpose was handling funds for Hamas and Hezbollah, *see* 6 F.4th at 491-93, did not implicate this rule.

Plaintiffs' argument that UNRWA USA and UNRWA "are almost indistinguishable" (Opp. 11-12) is unsupported by the facts, and legally irrelevant. UNRWA is an international humanitarian agency operating under the auspices of the UN General Assembly; UNRWA USA is a private charity whose gifts accounted for less than a third of 1% of UNRWA's operating budget.[3] Apart from a "freelance" videographer that UNRWA USA enlisted to make some

---

substitute for pleading knowing and substantial assistance. *Twitter* confirmed *Halberstam*'s holding that "people who aid and abet a tort can be held liable for *other* torts that were a foreseeable risk of the *intended* tort." *Id.* at 496 (cleaned up, emphasis added); *id.* at 495-96 (explaining that *Halberstam* was held liable for her partner's killing of a burglary victim because that killing was a foreseeable consequence of the burglary that she aided and abetted). Here, Plaintiffs have failed to make the threshold showing that UNRWA USA aided and abetted any "intended tort."

[2] In addition to holding that "knowing and substantial assistance" requires a different showing from general awareness, 598 U.S. at 490, 503-04, *Twitter* clarified that secondary liability will only attach to a defendant who actually "aided and abetted . . . *in the commission of* [an act of international terrorism]." *Id.* at 495 (emphasis added). UNRWA USA cannot have aided and abetted Hamas in the commission of the October 7 attack if its aid never reached Hamas.

[3] The Complaint alleges that UNRWA USA contributed between three and five million dollars per year from 2020 to 2022. Compl. ¶ 121. By comparison, in 2023 alone, UNRWA received just shy

3

fundraising videos and a single UNRWA USA Board Member who worked for UNRWA nearly two decades ago, Compl. ¶¶ 42, 118-20, there is no allegation of staff overlap. Regardless, no degree of association between UNRWA USA and UNRWA can save Plaintiffs' claim because neither UNRWA USA nor UNRWA is alleged to have "consciously, voluntarily, and culpably participate[d] in or support[ed]" the October 7 attack. *Twitter*, 598 U.S. at 505. Plaintiffs' failure to plead that UNRWA USA provided knowing and substantial assistance to the October 7 attack (*Halberstam*'s third element) requires dismissal of their aiding and abetting claims. *Halberstam v. Welch*, 705 F. 2d 472 (D.C. Cir. 1983).

### B. Plaintiffs Do Not Plead General Awareness

Although the Court need not reach *Halberstam*'s second element, Plaintiffs have also failed to plead general awareness. To plead this element Plaintiffs must show both (1) that UNRWA was so intertwined with Hamas's violent activities that one could reasonably infer that UNRWA USA was "generally aware of its role in unlawful activities from which the attacks were foreseeable," and (2) that UNRWA USA was actually aware of this connection at the time it provided the assistance. *Honickman*, 6 F.4th at 501; *see also Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 867-68 (D.C. Cir. 2022). Plaintiffs fail on both counts.[4]

Plaintiffs have not only failed to factually plead intertwinement, but have pled facts undermining their theory, including that UNRWA terminated staff members who participated in the October 7 attack or attained leadership positions in Hamas, and that militant use of UNRWA

---

of $1.5 billion in donor contributions. UNRWA, 2023 Confirmed Pledges towards UNRWA's Programmes (D.I. 23-5).

[4] Plaintiffs' discussion of the level of entanglement between UNRWA USA and UNRWA is both factually unsupported, *see supra* Section I.A., and legally irrelevant to step one of the "general awareness" inquiry, which is solely concerned with the level of entanglement between the intermediary (UNRWA) and the FTO (Hamas). Their attempt to distinguish the bank-intermediary cases, Opp. 11-12—*i.e.,* by arguing that they do not apply due to the "closeness between" UNRWA USA and UNRWA, *id.*—fails for the same reason.

4

installations was "unauthorized." Compl. ¶ 80.[5] Plaintiffs attempt to rewrite the Complaint by claiming in opposition that UNRWA "allowed" Hamas to control its employee union, "permitted Hamas to use" its facilities, and "enable[d] Hamas's various activities." Opp. 10, 17. But "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).[6]

Having failed to allege facts showing intertwinement, Plaintiffs posit the existence of unknown "scandals" that might emerge through discovery. Opp. 17-18. But Plaintiffs are not entitled to discovery to plead their claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). To survive a motion to dismiss, Plaintiffs must plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements," *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (internal quotation marks omitted)—in other words, evidence that UNRWA and Hamas are "so closely intertwined . . . that they were effectively the same entity." *Bernhardt*, 47 F.4th at 870. Plaintiffs offer nothing, beyond empty speculation, to establish such an expectation.

In any event, because the general awareness inquiry is limited to what the defendant knew "at the time" it provided the services that aided the attack, MTD 23, and because the Complaint only charged UNRWA USA with knowledge of publicly available information, *see, e.g.*, Compl.

---

[5] Furthermore, Plaintiffs' Complaint relies on sources showing that UNRWA's own inspectors exposed militants' misuse of its facilities and Hamas's tunneling under its properties, and highlights the relative rarity of UNRWA staff members alleged to have breached their neutrality obligations and the infrequency of UNRWA graduates joining Hamas. MTD 22-25.

[6] Plaintiffs' opposition also mischaracterizes the Complaint by claiming that the US halted its UNRWA funding due to "substantiated allegations of UNRWA's involvement in the October 7 attacks." Opp. 19. Neither the Complaint nor the documents cited therein ever assert that these allegations were substantiated.

¶¶ 112-13, Plaintiffs cannot rely on information that emerged post-October 7 to satisfy their burden—including the news articles cited in Plaintiffs' opposition. *See* Opp. 15, n.5.[7]

### C. Plaintiffs Do Not Allege That UNRWA Assisted the October 7 Attack

Although the Court need not reach the first *Halberstam* factor, Plaintiffs have also failed to plead that the party UNRWA USA aided, here UNRWA, performed a "*wrongful act* that cause[d] [Plaintiffs'] injury." *Halberstam*, 705 F.2d at 477 (emphasis added). Plaintiffs did not allege that UNRWA gave moral or material support for the October 7 attack, that UNRWA had advance warning of the attack, or that it had knowledge that any staff member planned on participating in a militant operation. Plaintiffs acknowledge that the few UNRWA employees accused of participating in the attack were immediately terminated. They do not allege facts in the Complaint that would render UNRWA blameworthy for the October 7 attack under *any* legal theory that would support their claims. MTD 26-28. Plaintiffs have failed to plead any element required to show aiding and abetting liability.

### II. Plaintiffs' ATA Conspiracy Claims Fail

Plaintiffs' ATA conspiracy claims also fail. Having conceded the absence of a common goal to facilitate a terrorist attack, as the ATA requires, Opp 25-26; MTD 29-30, Plaintiffs ask this Court to adopt case law holding that a conspiracy claim can be founded on a common objective to "provide material support to an FTO." Opp 25-26. That case law, however, does not exist: even the cases cited in Plaintiffs' opposition require a shared goal to provide "material support *for*

---

[7] Plaintiffs' only answer to this temporal barrier is to speculate that, due to UNRWA and UNRWA USA's affiliation, the latter "likely had access to more information than the public did regarding UNRWA's various affiliations with [Hamas]." Opp. 14. This is weak grounds for a fishing expedition: the notion that UNRWA USA—a small charity with no presence in Gaza and an independent staff—knew more about UNRWA than the US Government (which audited UNRWA), the Israel government (which was privy to UNRWA's staff lists and is not alleged to have lodged objections prior to October 7), and the 72 governments that repeatedly re-authorized UNRWA contributions defies credulity.

*terrorism*"—not merely general assistance to an FTO. *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 395 (7th Cir. 2018) (emphasis in original); *Shaffer v. Deutsche Bank AG*, 2017 U.S. Dist. LEXIS 220198, at *14 (S.D. Ill. Dec. 7, 2017) (same).[8]

Even if Plaintiffs' characterization of the law were correct, its conspiracy claim would still fail because they only allege that the provision of material support was a foreseeable consequence of UNRWA USA's aid, not a common objective. MTD 30. But not only do Plaintiffs fail to draw any ties between UNRWA USA's support and the October 7 attack, or plead any facts showing that UNRWA USA's objective was anything other than providing humanitarian aid to Palestinian refugees, they fail to reckon with the case law holding that foreseeability is no substitute for pleading an agreed-upon, unlawful objective. *Freeman ex rel. Est. Freeman v. HSBC Holdings PLC,* 57 F.4th 66, 82 (2d Cir. 2023); *Kemper*, 911 F.3d at 395 (bank's indifference to the possibility that its Iranian customers would use funds to further "terroristic" ends is insufficient because "one cannot join a conspiracy through apathy"). Plaintiffs simply fail to allege that UNRWA USA agreed with anyone to participate in an illegal act.

### III.     Plaintiffs' Alien Tort Statute Claims Fail

Plaintiffs' ATS claims first fail because the Complaint fails to state a claim that triggers ATS jurisdiction. Plaintiffs assert that "UNRWA USA's funding of UNRWA—knowing that UNRWA and Hamas are intertwined—violated international law norms." Opp. 32. But Plaintiffs cannot demonstrate that such conduct either violates a treaty that confers a private right of action

---

[8] While *Freeman v. HSBC Holdings*, 2018 U.S. Dist. LEXIS 127289, at *75 (E.D.N.Y. July 27, 2018), contains language that the common objective need not be the commission of a terrorist attack, that case is an outlier, *see Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525, 534 (S.D.N.Y. 2019) (JASTA conspiracy requires "agreement to commit an act of international terrorism"), *vacated in part on other grounds*, 999 F.3d 842 (2d Cir. 2021); MTD 29, n.33, and the Second Circuit expressly declined to adopt the district court's analysis of the conspiracy claim. *Freeman*, 57 F.4th at 72.

or constitutes a violation of customary international law sufficiently "specific, universal, and obligatory" to support a claim under the ATS. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004); MTD 32.

The norm proposed by Plaintiffs—that funding an entity that is intertwined with an FTO is prohibited by international law, Opp. 32—lacks any support, including in the International Convention for the Suppression of the Financing of Terrorism ("Financing Convention") upon which Plaintiffs rely. The Financing Convention defines the offense as "unlawfully and wilfully" providing "funds with the intention that they should be used or in the knowledge that they are to be used, in full or in part, in order to carry out" the terrorist act. Financing Convention, art. 2. Just as funding an entity intertwined with an FTO does not constitute an aiding and abetting violation under the ATA as a matter of law, *see supra* Sections I.A., I.B., it also does not assert a violation under the Financing Convention, which requires at least knowledge that provided funds will be used to carry out a terrorist act. The Financing Convention therefore provides no support for Plaintiffs' proposal that funding an entity intertwined with an FTO violates an international law norm.

Even if Plaintiffs had asserted an international law norm supported by the Financing Convention, it is not one that is cognizable under the ATS. The Financing Convention does not confer rights that are enforceable under the ATS—it is not a self-executing treaty, it does not create a private right of action, and it does not create customary international law.[9] *See* MTD 32-34. Neither *Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995), nor *Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201 (2d Cir. 2016), suggests otherwise. Opp. 33-34. In those cases, the Second Circuit

---

[9] Plaintiffs' assertion that UNRWA USA "violat[ed] the Financing Convention," Opp. 27, 30, betrays their misunderstanding of international law; the "Convention imposes its obligations only on nation-states." *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 261 (2018).

relied on the *customary international law norm* prohibiting genocide—not the Convention on the Prevention and Punishment of the Crime of Genocide—in allowing the plaintiffs' ATS claims to proceed. 70 F.3d at 241-43; 834 F.3d at 212-13. Plaintiffs here have failed to establish a customary international norm prohibiting the financing of terrorism. Instead, they postulate that the Financing Convention became customary international law some time around 2018 when 80% of the nations ratified it. Opp. 33, n.9. But Plaintiffs ignore the multitude of reservations that were attached to the ratifications. MTD 34, n.39; *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 118 (2d Cir. 2008) (reservations foreclosed finding that the "1925 Geneva Protocol had acquired the status of binding customary international law during the Vietnam War").[10]

Plaintiffs' rejoinder—that there is no State in which terrorism is allowed, Opp. 33—confuses domestic and customary international law. "The near-universal domestic criminalization of certain conduct is insufficient" to establish that the conduct violates a cognizable norm under the ATS; instead, the key determinant is whether there is "universal jurisdiction over the commission of that crime." *Abu Nahl v. Abou Jaoude*, 968 F.3d 173, 186 (2d Cir. 2020) (Walker, J., concurring). But there is no "State practice or evidence of *opinio juris* suggesting that terrorist financing is an international crime or otherwise subject to universal jurisdiction." *Id.* at 187;[11] *see generally id.* at 184-90 (surveying State practice and determining that it is "not open for debate" that "a prohibition on terrorist financing has [not] passed into international law"). Plaintiffs strenuously object that Hamas's acts of terrorism *must* violate international law. Opp. 32. But the

---

[10] Plaintiffs misrepresent the nature of those reservations, several of which provide that the State does "not consider acts of national resistance in all its forms, including armed resistance against foreign occupation and aggression with a view to liberation and self-determination, as terrorist acts within the meaning of article 2, paragraph 1, subparagraph (b), of the Convention." MTD 34, n.39.
[11] *Opinio juris* refers to "States' beliefs about their legal obligations." *Id.*

9

question is not whether Hamas's actions were illegal, but whether financing terrorism is actionable under the ATS. Courts have consistently answered that question in the negative.[12]

Even if there were a "specific, universal, and obligatory" norm against financing terrorism, courts must then determine "whether allowing this case to proceed under the ATS is a proper exercise of judicial discretion." *Jesner*, 584 U.S. at 258. It is not. *See id*. at 262 (Kennedy, J., concurring, joined by Roberts, C.J. and Thomas, J.) (detailed Congressional regulatory regimes like the ATA weigh against finding a common-law cause of action for financing terrorism under the ATS); *Nahl*, 968 F.3d at 181 (refusing to recognize an ATS cause of action for financing terrorism based on prudential concerns).

Finally, Plaintiffs' ATS claims fail to state an aiding and abetting claim, as argued above. *See supra* Section I.A. Plaintiffs fail to allege that any aid from UNRWA USA reached Hamas, much less that it had "a substantial effect on [the October 7 attack]," as is required to satisfy the *actus reus* requirement. *Doe v. Cisco Sys., Inc*., 73 F.4th 700, 724 (9th Cir. 2023). As for whether the assistance must be "purposeful" or merely "knowing," Plaintiffs have failed to plead either, for all the reasons explained above.

### IV. Plaintiffs' NIED Claims Fail

Plaintiffs' arguments in defense of the NIED claims scarcely warrant a response. They do not cite any authority for the proposition that a donor to a humanitarian organization (much less one subject to UNRWA's intense international scrutiny) has a duty to ensure that its funds are not diverted by militant groups. And while they half-heartedly assert that Hamas would have been

---

[12] Plaintiffs misplace reliance on *Nahl v. Jaoude*, 354 F. Supp. 3d 489, 498 (S.D.N.Y. 2018), rev'd and remanded, 968 F.3d 173 (2d Cir. 2020) and *Almog v. Arab Bank, PLC*, 471 F. Supp. 2d 257, 278 (E.D.N.Y. 2007) dismissed *sub nom*. *In re Arab Bank PLC Alien Tort Litigation*, 808 F.3d. 144 (2d Cir. 2015)—each are district court opinions that were reversed on other grounds, and expressed a view that has not been accepted by any other court.

10

"burdened in their efforts" without UNRWA USA's funds, Opp. 35, they prudently stop short of arguing that Hamas would have been unable to launch the October 7 attacks "but for" UNRWA USA's provision of one-third of 1% of UNRWA's operating budget.

## V. Judicial Notice Is Appropriate

While dismissal is clearly warranted without looking past the four corners of the Complaint, the judicially noticeable record confirms that Plaintiffs' claims are utterly baseless. A key purpose of judicial noticeability is to prevent a plaintiff from using "selected and misleading portions" of the public record to pursue harassment litigation and extract "nuisance settlements," *Kramer v. Time Warner, Inc*., 937 F.2d 767, 774 (2d Cir. 1991)—in short, to prevent suits like this one. Plaintiffs' objections to the request for judicial notice are meritless.

Plaintiffs' argument that UNRWA USA was required to file a "separate motion" for judicial notice lacks any support in law. Courts may take judicial notice of a fact "not subject to reasonable dispute" without any application. Fed. R. Evid. 201(b), (c)(1). And while a "request" is required to trigger mandatory judicial notice, the rules only require the requesting party to supply the court with "the necessary information" to determine the absence of a reasonable dispute. Fed. R. Evid. 201(c). Plaintiffs do not identify any "necessary information" missing from the request for judicial notice, nor do they explain why a separate motion is necessary for them to "lodge an appropriate objection." Opp. 3.

Next, Plaintiffs argue that courts are barred as a matter of law from noticing a fact for the truth of the matter asserted. Opp. 4. But where the accuracy of the fact is beyond reasonable dispute, a court will judicially notice the fact for the truth of the matter asserted.[13] *See, e.g., FTC*

---

[13] None of Plaintiffs' cases are to the contrary. In *Victaulic Co. v. Tieman*, the court refused to take judicial notice of a website purporting to be that of a private business because it was unclear who created the website and because its contents were "full of imprecise puffery that no one should take at face value." 499 F.3d 227, 236 (3d Cir. 2007). In *Anspach v. City of Philadelphia*, 503 F.3d

11

*v. Shire ViroPharma, Inc.*, 917 F.3d 147, 151 n.5 (3d Cir. 2019) (noticing truth of uncontested statements in SEC filing); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (noticing contents of government website where "neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein"). In particular, courts routinely credit the truth of facts contained in governmental reports where the opposing party does not dispute the accuracy of those facts. *See* MTD 4.[14] And courts are obligated to take judicial notice of the truth of facts pertaining to "matters of political history," *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997), and "compacts, statutes, and regulations not included in the plaintiff's complaint." *Nation v. DOI*, 876 F.3d 1144, 1153 n.3 (9th Cir. 2017).[15]

Plaintiffs do not contest the authenticity[16] or reliability of the documents containing the facts as to which UNRWA USA seeks judicial notice, nor do they dispute the accuracy of those facts. Instead, they raise a handful of cursory, meritless objections.

---

256, 273 n.11 (3d Cir. 2007), the Third Circuit judicially noticed only the existence of an FDA announcement because its truth was irrelevant, not because of some categorical prohibition against judicially noticeability of facts for the truth of the matter. And in *Collins & Aikman Corp. v. Stockman*, 2009 U.S. Dist. LEXIS 43472, at *69-70 (D. Del. May 20, 2009), and *In re Viropharma, Inc., Sec. Litig.*, 2003 U.S. Dist. LEXIS 5623, at *5-6 (E.D. Pa. Apr. 3, 2003), the courts declined to judicially notice the truth of statements contained in SEC filings because the lawsuits' core theory was that the filings contained misrepresentations.

[14] *See also Reprod. Health Servs. v. Strange*, 3 F.4th 1240, 1268 n.11 (11th Cir. 2021) (state agency statistics showing percentage of abortions obtained by minors); *Williams v. Lew*, 819 F.3d 466, 473 (D.C. Cir. 2016) (facts contained in GAO report); *Dimanche v. Brown*, 783 F.3d 1204, 1213 n.1 (11th Cir. 2015) (number of correctional staff in state DOC report); *Youkhana v. Gonzales*, 460 F.3d 927, 932 (7th Cir. 2006) (uncontested contents of State Department report).

[15] *See also Gross v. German Found. Indus. Initiative*, 549 F.3d 605, 612 (3d Cir. 2008) ("public acts and proclamations of [foreign] governments . . . are historical and notorious facts, of which the court can take regular judicial notice"); *Doe v. Holy See*, 557 F.3d 1066, 1091 (9th Cir. 2009) (taking judicial notice that Holy See has both "ecclesiastical" and "governmental" functions); *Garb v. Republic of Poland*, 440 F.3d 579, 594 n.18 (2d Cir. 2006) (Poland's constitutional structure); *Ivezaj v. INS*, 84 F.3d 215, 219 (6th Cir. 1996) (changed political circumstances in Montenegro).

[16] To the extent that Plaintiffs' fleeting reference to authentication is meant as a challenge, Opp. 3, that challenge is meritless: all UNRWA USA's documents are official records, pulled from governmental or UN websites, and bear official insignia. As such, they are self-authenticating. *See*

UNRWA Student Enrollment Numbers. Plaintiffs do not dispute that UNRWA enrolls 500,000 students per year and, by extension, that millions of students have passed through its schools since Hamas's founding. They do not explain how 118 graduates allegedly joining Hamas, out of millions of UNRWA graduates, supports their proposed inference that UNRWA schools are a seedbed for Hamas militants; instead, they insist that they are entitled to this inference because it is the one most favorable to them. MTD 6. But "determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense" and draw only a "reasonable inference" on a 12(b)(6) motion. *Iqbal*, 556 U.S. at 662, 678-79.

GAO Certifications and US-UNRWA Framework Agreement. Plaintiffs concede the judicially noticeable fact that reauthorizations of US contributions to UNRWA were conditioned on GAO certifications that UNRWA was meeting the benchmarks set forth in the appropriations laws and the US-UNRWA Framework Agreement. MTD 12-15. Their attempts to diminish the legal significance of this auditing regime are wholly unconvincing.

First, they fault UNRWA USA for failing to "provide an affidavit" attesting that it monitored GAO certifications. Opp. 6-7. But Plaintiffs' own allegations obviate the need for an affidavit: the Complaint alleges UNRWA USA's awareness of UN Watch reports, Compl. ¶¶ 112-13, which reference the GAO certification process,[17] and the Press Release cited in the Complaint

---

Fed. R. Evid. 902(5); *Sturgeon v. PharMerica Corp.*, 438 F. Supp. 3d 246, 259 (E.D. Pa. 2020) ("information found on government websites is widely considered both self-authenticating and subject to judicial notice"); *accord Johnson v. Cate*, 2015 U.S. Dist. LEXIS 120839, at *26 (E.D. Cal. Sep. 10, 2015) (citing cases).

[17] The Complaint (nn. 54-57) references UN Watch and IMPACT-se, *UNRWA Education: Reform or Regression?* (2023), which, in turn, references (at pg. 4, nn. 22 & 23) a GAO report outlining the certification process. *See* State Has Taken Actions to Address Potentially Problematic Textbook Content but Should Improve Its Reporting to Congress, GAO (June 2019), at 4-7, https://www.gao.gov/assets/gao-19-448.pdf.

confirms that UNRWA USA was aware that UNRWA was required to vet its staff and share its staff lists with Israel. MTD 6. In short, the Court need look no further than the documents integrated into the Complaint to establish UNRWA USA's awareness of the rigorous scrutiny UNRWA was under.

Plaintiffs then attempt to sow doubt about the soundness of UNRWA USA's reliance on the audit mechanisms. Their assertion that the GAO certifications only monitored the use of US funds is squarely contradicted by the text of the appropriation law, which makes US funding contingent on *all* UNRWA operations complying with auditing benchmarks. MTD 13-14 (requiring, *inter alia*, all UNRWA staff to be vetted and undergo neutrality training, all UNRWA properties to be inspected for misuse, and all credible allegations of wrongdoing to be investigated). And contrary to their argument, UNRWA USA is clearly entitled to rely on the oversight mandated by the US-UNRWA Framework Agreement despite not being a party to the Agreement.

Although Plaintiffs may "challenge the quality of those certifications," Opp. 7, they have failed to do so. At best, the Complaint alleges that a vanishingly small fraction of UNRWA's 13,000 Gazan employees violated UN neutrality rules; otherwise, the Complaint's factual allegations describe a UN agency that has actively hindered rather than enabled Hamas. In any event, the Court need only judicially notice the existence of this audit regime, not its efficacy. To state a claim, Plaintiffs must plausibly allege UNRWA USA's "actual awareness," based on information available prior to October 7, that any support for UNRWA was tantamount to support for Hamas's terrorist operations. MTD 21-22. That total mix of information—which pits tendentious criticisms by partisan voices and disreputable NGOs, *see* MTD 14-15, n.23, against

14

the official determinations of the US Government and the practices of 72 countries—conclusively forecloses that inference.

UNRWA USA'S Press Release and Reports Detailing UN Inspections. The Court may consider these documents in full because they are integrated into the Complaint. *See* MTD 3. The full press release—which condemns the attacks, commends the independent investigation, highlights UNRWA's duty to vet staff and notes Israel's failure to raise objections to the staff lists that UNRWA had previously share—directly contradicts Plaintiffs' theory that UNRWA USA harbored anti-Israel sympathies or was apathetic to the possibility that its aid would benefit Hamas. Opp. 5; Compl. ¶¶ 115-16.

The same applies to the documents showing that UNRWA inspected its installations and their environs for militant activity. Plaintiffs preposterously claim that the Court must credit the fruits of UNRWA's inspections (*i.e.*, that militants hid weapons in schools and dug tunnels near UNRWA facilities) but disregard the role that UNRWA played in those revelations. Opp. 8. Courts are permitted to consider documents integral to the complaint for this very reason—to prevent plaintiffs from maintaining a claim "by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that" no viable cause of action existed. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Plaintiffs' Complaint warrants dismissal on its face, even without reviewing documents incorporated by reference, or judicially noticing undisputed facts; but the full record lays bare just how meritless Plaintiffs' claims are.

## CONCLUSION

For these reasons, and for those set forth in the Motion to Dismiss, Plaintiffs' Complaint fails to state any claim against UNRWA USA and should be dismissed with prejudice.

Dated: August 2, 2024

                                              Respectfully submitted,

| | |
|---|---|
| Maria LaHood (admitted *pro hac vice*) | /s/ Joseph E. Brenner |
| Diala Shamas (admitted *pro hac vice*) | Michael C. Heyden, Jr. (#5616) |
| Judith Brown Chomsky (admitted *pro hac vice*) | Joseph E. Brenner (#6643) |
| Beth Stephens (admitted *pro hac vice*) | GORDON REES SCULLY |
| CENTER FOR CONSTITUTIONAL RIGHTS | MANSUKHANI, LLP |
| 666 Broadway, 7th Floor | 824 N. Market St., Suite 220 |
| New York, NY 10012 | Wilmington, DE 19801 |
| (212) 614-6430 | (302) 992-8955 |
| mlahood@ccrjustice.org | mheyden@grsm.com |
| | jbrenner@grsm.com |
| | |
| Luna Droubi (admitted *pro hac vice*) | Joseph Pace (admitted *pro hac vice*) |
| BELDOCK LEVINE & HOFFMAN LLP | J. PACE LAW PLLC |
| 99 Park Ave., PH/26th Floor | 30 Wall St, 8th Floor |
| New York, NY 10016 | New York, NY 10005 |
| ldroubi@blhny.com | jpace@jpacelaw.com |

*Attorneys for Defendant UNRWA USA National Committee, Inc.*