# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| LISHAY LAVI, AYELET SAMERANO, NOACH NEWMAN, ADIN GESS, MAYA PARIZER, NATALIE SANANDAJI, YONI DILLER, HAGAR ALMOG, DAVID BROMBERG, LIOR BAR OR, and ARIEL EIN-GAL, | ) ) ) ) ) ) ) | |
|  | ) | **JURY TRIAL DEMANDED** |
| *Plaintiffs*, | ) ) | C.A. No. 1:24-cv-00312-RGA |
| v. | ) ) | |
| UNITED NATIONS WORKS AND RELIEF ADMINISTRATION ("UNRWA") and UNRWA USA NATIONAL COMMITTEE, INC. ("UNRWA USA"), | ) ) ) ) ) | |
| *Defendants*. | ) ) | |

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT UNRWA'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Dated: January 13, 2026

**Of Counsel:**

David I. Schoen, Esq.*
DAVID I. SCHOEN, ATTORNEY AT LAW
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106

Mark Goldfeder, Esq.*
Ben Schlager, Esq.*
Erielle Davidson, Esq.*
Anat Alon-Beck, Esq.*
Mark Lebovitch, Esq.*
NATIONAL JEWISH ADVOCACY CENTER, INC.
3 TIMES SQUARE
NEW YORK, NY 10036

*(Additional Counsel on Next Page)*

**HALLORAN FARKAS + KITTILA LLP**

Theodore A. Kittila (Bar No. 3963)
5722 Kennett Pike
Wilmington, Delaware 19807
Email: tk@hfk.law
Phone: (302) 257-2025
Fax: (302) 257-2019

*Counsel for Plaintiffs*

Jason Torchinsky, Esq.*
Elizabeth Price Foley, Esq.**
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2300 N Street, NW, Suite 643A
Washington, DC 20037

John Cycon, Esq.*
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Hwy
Haymarket, VA 20169

Mark Pinkert, Esq.*
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe Street, Suite 500
Tallahassee, FL 32301

Susan L. Greene, Esq.*
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
5360 Genesee Street, Suite 203
Buffalo, NY 14026
Email: sgreene@holtzmanvogel.com
Phone: (716) 647-6103

* Admitted *pro hac vice*
** Motion *pro hac vice* to be filed

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................ii

INTRODUCTION .............................................................................................................. 1

NATURE AND STAGE OF PROCEEDINGS .............................................................. 1

SUMMARY OF ARGUMENT ........................................................................................ 1

CONCISE STATEMENT OF FACTS ........................................................................... 2

ARGUMENT .................................................................................................................... 3

    I.      STANDARD OF REVIEW AND BURDEN OF PROOF .............................. 3

    II.    UNRWA IS NOT ENTITLED TO IMMUNITY UNDER THE IOIA OR CPIUN........ 5

      A.   The Plain Language and History of the IOIA's and CPIUN's Adoption Show that They Do Not Extend Immunity to Subsidiary Organs............................................................5

      B.   Prior Cases Have Not Addressed These Issues and Are Neither Dispositive Nor Persuasive ...........................................................................................................14

      C.   The Executive Branch's Position on UNRWA Immunity is Entitled to Great Weight. ................................................................................................................19

    III.   UNRWA IS AUTONOMOUS FROM THE UN AND NOT A SUBSIDIARY ORGAN ............................................................................................... 22

    IV.  UNRWA IS NOT IMMUNE FOR ACTS UNNECESSARY TO CARRY OUT ITS FUNCTIONS, THAT CONSTITUTE COMMERCIAL ACTIVITY, OR THAT VIOLATE *JUS COGENS* ................................................... 23

CONCLUSION................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Abbott v. Abbott*,
   560 U.S. 1 (2010) ..........................................................................6, 20

*Alaka v. Att'y Gen. of the U.S.*,
   456 F.3d 88 (3d Cir. 2006) ...............................................................8

*Am. Ins. Ass'n v. Garamendi*,
   539 U.S. 396 (2003) ..........................................................................20

*Amiable Isabella*,
   19 U.S. (6 Wheat) 1 (1821) ...............................................................6

*Auguste v. Ridge*,
   395 F.3d 123 (3d Cir. 2005) .............................................................8

*Baldwin Graphic Sys., Inc. v. Siebert*,
   512 F.3d 1338 (Fed. Cir. 2008) ........................................................8

*Ballentine v. United States*,
   486 F.3d 806 (3d Cir. 2007) .............................................................3

*Bisson v. U.N.*,
   2008 WL 375094 (S.D.N.Y. Feb. 11, 2008) ....................................16

*Boimah v. U.N. Gen. Assembly*,
   664 F. Supp. 69 (E.D.N.Y. 1987) ....................................................15-16

*Brock v. Richland Shoe Co.*,
   799 F.2d 80 (3d Cir. 1986) ...............................................................9

*Brzak v. U.N.*,
   597 F.3d 107 (2d Cir. 2010) .............................................................5

*Chan v. Korean Air Lines, Ltd.*,
   490 U.S. 122 (1989) ..........................................................................6

*Christy v. Pa. Tpk. Comm'n*,
   54 F.3d 1140 (3d Cir. 1995) .............................................................3, 4

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   932 F.3d 126 (3d Cir. 2019) .............................................................4

*Dames & Moore v. Regan*,
   453 U.S. 654 (1981) ..........................................................................21

*Dayhoff Inc. v. H.J. Heinz Co.*,
   86 F.3d 1287 (3d Cir. 1996) .............................................................3

*Didon v. Castillo,*
  838 F.3d 313 (3d Cir. 2016) ......................................................................7

*Dist. of Columbia v. Heller,*
  554 U.S. 570 (2008) ...............................................................................22

*Doe v. Princeton Univ.,*
  30 F.4th 335 (3d Cir. 2022) ..................................................................23

*Douglass v. Convergent Outsourcing,*
  765 F.3d 299 (3d Cir. 2014) ....................................................................7

*Estate of Tov v. UNRWA,*
  2025 WL 2793701 (S.D.N.Y. Sept. 30, 2025) ...........................18, 19, 20

*Febres v. Camden Bd. of Educ.,*
  445 F.3d 227 (3d Cir. 2006) ....................................................................4

*Fed. Ins. Co. v. Richard I. Rubin & Co.,*
  12 F.3d 1270 (3d Cir. 1993) ....................................................................4

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,*
  462 U.S. 611 (1983) .................................................................................4

*Flandreau Santee Sioux Tribe v. United States,*
  197 F.3d 949 (8th Cir. 1999) ...................................................................8

*Fuld v. Palestine Liberation Org.,*
  606 U.S. 1 (2025) ...................................................................................21

*Georges v. U.N.,*
  834 F.3d 88 (2d Cir. 2016) .................................................................8, 18

*Georges v. U.N.,*
  84 F. Supp.3d 246 (S.D.N.Y. 2015).................................................. 17-18

*Hunter v. U.N.,*
  800 N.Y.S.2d 347 (N.Y. Sup. Ct. 2004) ................................................16

*Hutto v. S.C. Ret. Sys.,*
  773 F.3d 536 (4th Cir. 2014) ...................................................................3

*Immigr. & Naturalization Serv. v. Cardoza-Fonseca,*
  480 U.S. 421 (1987) ...............................................................................10

*Intel Corp. Inv. Pol'y Comm. v. Sulyma,*
  589 U.S. 178 (2020) .................................................................................9

*Int'l Refugee Org. v. Republic S.S. Corp.,*
  189 F.2d 858 (4th Cir. 1951) .................................................................15

*Jam v. Int'l Fin. Corp.*,
   586 U.S. 199 (2019) ...........................................................4, 24

*Kaplan v. Lebanese Can. Bank, SAL*,
   999 F.3d 842 (2d Cir. 2021) ...................................................25

*Laventure v. U.N.*,
   279 F. Supp. 3d 394 (E.D.N.Y. 2017) ...................................18

*Lempert v. Rice*,
   956 F. Supp. 2d 17 (D.D.C. 2013) .........................................17

*Leveto v. Lapino*,
   258 F.3d 156 (3d Cir. 2001) .....................................................3

*Lightfoot v. United States*,
   564 F.3d 625 (3d Cir. 2009) .....................................................3

*Me. Cmty. Health Options v. United States*,
   590 U.S. 296 (2020) ..............................................................8-9

*Maximov v. United States*,
   373 U.S. 49 (1963) ...................................................................6

*Medellin v. Texas*,
   552 U.S. 491 (2008) ..............................................................5-6

*Menominee Tribal Enters. v. Solis*,
   601 F.3d 669 (7th Cir. 2010) .................................................10

*Mora v. N.Y.*,
   524 F.3d 183 (2d Cir. 2008) .....................................................8

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
   429 U.S. 274 (1977) .................................................................4

*Nicol v. U.N. Missions in Liberia*,
   2009 WL 2370179 (E.D. Pa. July 30, 2009) ..........................16

*Oss Nokalva, Inc. v. European Space Agency*,
   617 F.3d 756 (3rd Cir. 2010) .................................................24

*Pa. Med. Soc'y v. Snider*,
   29 F.3d 886 (3d Cir. 1994) ....................................................22

*Richardson v. Donovan*,
   673 F. App'x 246 (3d Cir. 2016) .............................................4

*Sadikoglu v. U.N. Dev. Programme*,
   2011 WL 4953994 (S.D.N.Y. Oct. 14, 2011) ..................... *passim*

iv

*Sarei v. Rio Tinto, PLC,*
    487 F.3d 1193 (9th Cir. 2007) ...........................................21

*Shamsee v. Shamsee,*
    428 N.Y.S.2d 33 (N.Y. App. Div. 1980) ........................... 14-16

*Sullivan v. Finklestein,*
    496 U.S. 617 (1990) ..................................................22

*Sumisoto Shoji Am., Inc. v. Avagliano,*
    457 U.S. 176 (1982) ....................................................6

*Tonguette v. Sun Life & Health Ins. Co.,*
    595 F. App'x 545 (6th Cir. 2014) .....................................8

*United States v. Alvarez-Machain,*
    504 U.S. 655 (1992) ...................................................9

*United States v. BCCI Holdings (Luxembourg), S.A.,*
    73 F.3d 403 (D.C. Cir. 1996) .........................................15

*United States v. Mobley,*
    956 F.2d 450. (3d Cir. 1992) .........................................8

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 5789 (1952) .................................................20

*Yousuf v. Samantar,*
    699 F.3d 763 (4th Cir. 2012) ........................................24

*Zivotofsky v. Kerry,*
    576 U.S. 1 (2015) ................................................ 20-21

**Statutes**

22 U.S.C. § 288 ........................................................ *passim*

22 U.S.C. § 288a .........................................................15

28 U.S.C. § 1331 ..........................................................4

28 U.S.C. § 1603 ..........................................................4

28 U.S.C. § 1605 ..........................................................5

Further Consol. Approps. Act, Pub. L. 118-47, 138 Stat. 460 (2024).........................21

Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852 (2016)..............25

**Rules**

Fed. R. Civ. P. 12 .......................................................3

Fed. R. Civ. P. 4 ..................................................................................................2, 3

N.Y.C.P.L.R. 2103 ............................................................................................2, 3

**Other**

116 Cong. Rec. 7878 (1970) ................................................................................12

5 WRIGHT & MILLER, FED. PRAC. & PROC. (4th ed. Sept. 2025 update).........................3

Ann. Rep. of the Dir. of UNRWA 1951-52, U.N. Doc. A/2171, Supp. No. 13 (1952)................11

Ann. Rep. of the Dir. of UNRWA 1953-54, U.N. Doc. A/2717, Supp. No. 17 (1954)................11

Ann. Rep. of the Dir. of UNRWA 1955-56, U.N. doc. A/3212 (1956)........................12

Ann. Rep. of the Dir. of UNRWA 1956-67, U.N. Doc. A/3686, Supp. No. 14 (1957)................12

Convention on Privileges & Immunities of the U.N.,
   Feb. 13, 1946, 21 U.S.T. 1422 ........................................................................ *passim*

Exec. Order No. 9698, 11 Fed. Reg. 1809 (Feb. 19, 1946) .........................................5, 6

Exec. Order No. 9863, 12 Fed. Reg. 3559 (May 31, 1947) .........................................7

Exec. Order No. 12628, 53 Fed. Reg. 7725 (Mar. 8, 1988) .........................................7

Exec. Order No. 14199, 90 Fed. Reg. 9275 (Feb. 4, 2025) .........................................21

G.A. Res. 212 (III) (Nov. 19, 1948).......................................................................11

G.A. Res. 302 (IV) (Dec. 8, 1949)................................................................. *passim*

Letter from George C. Marshall, Sec'y, U.S. Dep't of State, to Joseph W. Martin, Jr., Speaker,
U.S. House (May 12, 1947), https://tinyurl.com/mr2ztb6a .........................................14

Letter from Jay Clayton, U.S. Dist. Att'y, S.D.N.Y., to Analisa Torres, U.S. Dist. Judge,
S.D.N.Y. (Apr. 24, 2025).....................................................................................19

Memorandum by Acting Assistant Chief of the Div. of Int'l Org. Affairs (Halderman) (Apr. 9,
1946), https://tinyurl.com/5x3cvv38........................................................................14

Philippe Sands & Pierre Klein, BOWETT'S LAW OF INT'L ORGS. (6th ed. 2009) ...........................11

Pl.'s Mem. of Law in Opp'n,
   *Georges v. United Nati*ons, No. 1:13-cv-07146 (S.D.N.Y.), D.I. 35.........................................17

Pl.'s Mem. Regarding Lack of Immunity, Serv. of Process & Juridical Capacity with Respect to
the UNDP, *Sadikoglu v. UN Dev*. Programme, No. 11 Civ. 0294 (S.D.N.Y.), D.I. 15........... 16-17

Pl.'s Mem. to Respond, *Lempert v. Rice*, No. 1:12-cv-01518 (D.D.C.), D.I. 29.........................17

REST. (THIRD) FOREIGN RELS. LAW (1987) .................................................................23

Rhoda Margesson & Jim Zanotti, Cong. Rsch. Serv., IF12863, UNRWA: Background & U.S. Funding Trends (2025) ..........................................................................................................15, 22

*The*, MERRIAN-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/the ...........8

U.N. Charter..................................................................................................................9, 10

*UN Int'l Justice Sys.*, *Who Can Use the System*, UN.ORG, https://tinyurl.com/yykxx9wp ...........23

UN Secretariat Bulletin, Organization of UNRWA (Feb. 17, 2000), https://docs.un.org/en/st/SGB/2000/6 ............................................................................................22

U.S. Sen. Comm. on Foreign Rels., Convention on Privileges & Immunities of the U.N., Exec. Rep. 91-17 (Mar. 17, 1970) ............................................................................................13

# INTRODUCTION

Plaintiffs respectfully submit this Memorandum of Law in response to a Motion to Dismiss ("MTD") on grounds of immunity filed by Defendant United Nations Relief and Works Agency for Palestine Refugees in the Near East ("UNRWA"). D.I. 83.

# NATURE AND STAGE OF PROCEEDINGS

Plaintiffs assert claims under the Anti-Terrorism Act ("ATA") and Alien Tort Statute ("ATS"). On August 8, 2025, Plaintiffs amended their complaint, adding UNRWA as a defendant. D.I. 52. UNRWA appeared over four months later, D.I. 78, filing a motion to dismiss asserting five bases for dismissal: (1) subject matter jurisdiction; (2) personal jurisdiction; (3) insufficient process[1]; and (4) insufficient service of process. D.I. 83. All five bases hinge upon UNRWA's immunity claim, which consumes all but the last half-page of its MTD. D.I. 83 at 10. Because of this, Plaintiffs here similarly concentrate on UNRWA's immunity claim.

# SUMMARY OF ARGUMENT

UNRWA claims immunity pursuant to a treaty, the Convention on Privileges and Immunities of the United Nations, Feb. 13, 1946, 21 U.S.T. 1422 ("CPIUN"), and a statute, the International Organizations Immunities Act, 22 U.S.C. §§ 288, *et seq.* ("IOIA"). As elaborated below, UNRWA enjoys no immunity for three reasons. First, UNRWA is not "[t]he United Nations" under the plain text or enactment history of either the IOIA or CPIUN. Second, even assuming *arguendo* that the CPIUN or IOIA extend immunity to UN "subsidiary organs," UNRWA's substantial autonomy from the UN shows that it is not a subsidiary organ. Third, UNRWA is not entitled to immunity for the illegal acts alleged, which are unnecessary to carry out its functions, constitute commercial activity, or violate *jus cogens*.

---

[1] UNRWA's insufficient process argument does not appear in its Motion to Dismiss. D.I. 82. It appears only in UNRWA's memorandum in support thereof. D.I. 83 at 10.

## CONCISE STATEMENT OF FACTS

Plaintiff's Amended Complaint alleges that UNRWA violated the ATA and ATS by providing material support to Hamas, resulting in harm to Plaintiffs during and after the October 7, 2023, Hamas attack on Israel, during which over 1,200 innocent people were slaughtered and over 250 taken hostage.

UNRWA engages in continuous, purposeful activities in the U.S. Its largest private donor is co-Defendant UNRWA-USA National Committee, Inc., a Delaware corporation, D.I. 52 ¶¶ 1, 14-15, 18, 31, 55-64, from whom UNRWA continuously and purposefully seeks to raise funds, availing itself of the benefits and protections of Delaware's corporate law. *Id.* at ¶¶ 1, 15, 31, 55-64, 291. The Amended Complaint's facts document a conspiracy between UNRWA and UNRWA-USA to provide material support to terrorists. *See, e.g.*, *id.* at ¶¶ 1, 15, 18, 31, 55-69, 90, 105, 122, 138, 199-200, 217-31, 237-45, 256, 268-72, 278-84, 287, 291. UNRWA has staff based in the U.S., disburses its payroll through a U.S. bank, and its personnel travel frequently to the U.S. to solicit funds. *Id.* at ¶¶ 17, 138, 291.

Because UNRWA's counsel did not make an appearance until December 16, 2024, D.I. 78, Plaintiffs served UNRWA by delivering a copy of the summons and Amended Complaint via certified mail at its office at the United Nations Plaza in New York. D.I. 77. This was permitted by Federal Rule of Civil Procedure Rule 4(h)(1)(A), which authorizes service on a foreign entity in any manner prescribed by Rule 4(e)(1), which allows service by "following state law … where service is made." Fed. R. Civ. P. 4(e)(1). Under Rule 2103(c) of the New York Civil Practice Laws and Rules, service by mail upon UNRWA at its office in New York is permitted: "If a party has not appeared by an attorney … service shall be upon the party by a method specified in paragraph one, two, four, five or six of subdivision (b) of this rule." N.Y.C.P.L.R. 2103(c). Paragraph 2 of Rule 2103(b) states that service may be made by "mailing the paper" to the "last

known address" of the party, and "service by mail shall be complete upon mailing." N.Y.C.P.L.R. 2103(b)(2). Because service was effected pursuant to State law where service was made, UNRWA was validly served. *See* Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A).

## ARGUMENT

## I. STANDARD OF REVIEW AND BURDEN OF PROOF.

UNRWA has not contested the jurisdictional facts, and the Court must accept as true the facts alleged in the complaint, making all reasonable inferences in Plaintiffs' favor. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (subject matter jurisdiction); *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) (personal jurisdiction). When either subject matter or personal jurisdiction is challenged, the plaintiff bears the burden of establishing that jurisdiction exists. *Dayhoff*, 86 F.3d at 1302 (personal jurisdiction); *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009) (subject matter jurisdiction). However, when a defendant raises an *immunity defense* as the basis for challenging subject matter jurisdiction, the Third Circuit holds that it "does not implicate federal subject matter jurisdiction in the ordinary sense." *Christy v. Pa. Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995). This is because unlike subject matter jurisdiction which can never be waived or forfeited, *see* Fed. R. Civ. P. 12(h)(3), immunity can be expressly waived or forfeited through non-assertion. *Christy*, 54 F.3d at 1144.

Accordingly, immunity "should be treated as an affirmative defense[.]" *Id.*; *accord Leveto v. Lapino*, 258 F.3d 156, 161 (3d Cir. 2001) ("immunity is an affirmative defense"); *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014) ("[S]overeign immunity is akin to an affirmative defense, which the defendant bears the burden of so demonstrating. In so concluding, we join every other court of appeals that has addressed the issue."); 5 WRIGHT & MILLER, FED. PRAC. & PROC. § 1271 (4th ed. Sept. 2025 update) ("various forms of immunity" have been held to be affirmative defenses).

Here, the most analogous immunity is sovereign immunity under either the Eleventh Amendment[2] or the Foreign Sovereign Immunities Act ("FSIA")[3]. For Eleventh Amendment immunity, the Third Circuit's *Christy* decision held that it is an affirmative defense that must be proven by the party asserting it. *Christy*, 54 F.3d at 1144. For FSIA immunity—which is the "reference" standard for IOIA-based immunity, *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 207-10 (2019), the Third Circuit likewise imposes upon the *defendant* the initial burden of producing evidence showing a *prima facie* entitlement to immunity. *Richardson v. Donovan*, 673 F. App'x 246, 249 (3d Cir. 2016); *Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1285 (3d Cir. 1993). If the defendant carries this burden, it creates a presumption of immunity that the plaintiff may rebut. *Richardson*, 673 F. App'x at 249. As the Third Circuit has made clear, however, "the ultimate burden of proving immunity from suit" lies with the party asserting it. *Rubin & Co.*, 12 F.3d at 1285; *Richardson*, 673 F. App'x at 249. UNRWA, therefore, bears the burden of production and proof for immunity under both the CPIUN and IOIA.

UNRWA has failed to satisfy its burden and thus, there is subject matter jurisdiction over the Plaintiffs' ATA and ATS claims based on federal question jurisdiction. 28 U.S.C. § 1331.

---

[2] The Eleventh Amendment immunity does not extend to any subdivisions of a States such as counties or municipalities. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 229 (3d Cir. 2006). Given UNRWA's substantial autonomy from the UN (discussed *infra* Section III), it could not reasonably be characterized as an "arm" of the UN. *See Febres*, 445 F.3d at 229.

[3] The FSIA extends immunity to "political subdivision[s]" and "agenc[ies] or instrumentalit[ies] of a foreign state." 28 U.S.C. § 1603(a). Given UNRWA's substantial autonomy from the UN, it is more analogous to an "instrumentality" of the UN to which a "presumption of separateness" applies. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 624, 629 (1983); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 140 (3d Cir. 2019) (*Bancec* created a "strong presumption that … instrumentalities have a separate legal identity").

## II.    UNRWA IS NOT ENTITLED TO IMMUNITY UNDER THE IOIA OR CPIUN.

### A.    The Plain Language and History of the IOIA's and CPIUN's Adoption Show that They Do Not Extend Immunity to Subsidiary Organs.

The IOIA grants the same "restrictive" immunity to "international organizations" that foreign sovereigns enjoy under the FSIA. *Jam*, 586 U.S. at 210.  IOIA immunity is thus not absolute but subject to significant exceptions, such as those for "commercial activity" or tortious conduct. *See* 28 U.S.C. § 1605(a)(2), (a)(5).  To qualify for IOIA immunity, the Act imposes two prerequisites: (1) the entity must be "a public international organization in which the United States participates pursuant to any treaty" or with congressional authorization or appropriation; and (2) that organization "shall have been designated by the President through appropriate Executive Order[.]"  22 U.S.C. § 288.  Neither of these prerequisites is satisfied as to UNRWA.

First, the U.S. does not "participate" in UNRWA pursuant to a treaty, nor has Congress authorized or made appropriations to enable U.S. participation in UNRWA.  Second, the President has not designated UNRWA; he has designated only "the United Nations."  Exec. Order No. 9698, 11 Fed. Reg. 1809 (Feb. 19, 1946).  Despite this clear text, UNRWA asserts that because the "*UN* has been designated under the IOIA," this should be construed to "cover[] *subsidiary organs* of the UN, including UNRWA, rendering a separate designation unnecessary and redundant."  D.I. 83 at 8 (emphasis added).  UNRWA makes the same argument under the CPIUN, claiming that because UNRWA is a "subsidiary organ" of the UN, it is entitled to immunity. *Id*. at 2, 6.

UNRWA's argument that it is entitled to immunity under both the IOIA and CPIUN as a subsidiary organ is contrary to the plain language of both the IOIA and CPIUN, as well as the UN Charter, which grant immunity only to the UN *qua* UN. *Cf. Brzak v. U.N.*, 597 F.3d 107, 112 (2d Cir. 2010) (CPIUN grants the UN absolute immunity unless expressly waived).  The "interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellin v.*

*Texas*, 552 U.S. 491, 506 (2008); *accord Abbott v. Abbott*, 560 U.S. 1, 10 (2010).  Like statutes, treaties must be construed by giving effect to their plain language.  *Sumisoto Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 180-83 (1982); *Maximov v. United States*, 373 U.S. 49, 54 (1963).  "Where the [treaty] text is clear, as it is here, [the courts] have no power to insert an amendment." *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 134 (1989).  As the Supreme Court has long held, "alter[ing] amend[ing], or add[ing] to any treaty, by inserting any clause, whether small or great, important or trivial, would be on [the court's] part an usurpation of power, and not an exercise of judicial functions."  *The Amiable Isabella*, 19 U.S. (6 Wheat) 1, 71 (1821).

In addition to the plain text, several fundamental canons of construction confirm that the neither the IOIA nor CPIUN extend immunity to the UN's subsidiary organs, including *expressio unius est exclusio alterius* (the "negative-implication" canon), *casus omissus pro omisso habendus est* (the "omitted-case" canon), and the absurdity canon.

IOIA immunity is an entity-by-entity determination by the President that attaches only upon an executive order designating a specific "international organization."  22 U.S.C. § 288.  The plain language of President Truman's 1946 designation of "The United Nations" confers IOIA immunity upon the UN *qua* UN, not UNRWA.  Exec. Order No. 9698, 11 Fed. Reg. 1809 (Feb. 19, 1946).  Courts cannot "supply a *casus omissus* in a treaty, any more than in a law."  *Amiable Isabella*, 19 U.S. at 71.  Courts must "find out the intention of the parties by just rules of interpretation" and "follow [them] as far as [they] go, and [] stop where th[ey] stop[]—*whatever may be the imperfections or difficulties* which it leaves behind."  *Id*. (emphasis added); *accord Chan*, 490 U.S. at 135.  Any speculation about "what the drafters might have had in mind" cannot be given credit "where the text is clear[.]"  *Chan*, 490 U.S. at 134.  As the Third Circuit puts it, "where the text of a treaty is unambiguous, we apply the treaty as written and the analysis is

complete." *Didon v. Castillo*, 838 F.3d 313, 321 (3d Cir. 2016). If the UN or UNRWA wishes to enjoy IOIA immunity, Congress has provided a clear legal path to do so: UNRWA can seek an executive order designating UNRWA entitled to IOIA immunity. UNRWA has not done so.

Indeed, in addition to the designation of the United Nations *qua* United Nations, the President has expressly designated two UN agencies: the United Nations Educational, Scientific, and Cultural Organization ("UNESCO"), Exec. Order No. 9863, 12 Fed. Reg. 3559 (May 31, 1947), and the United Nations Industrial Development Organization ("UNIDO"), Exec. Order No. 12628, 53 Fed. Reg. 7725 (Mar. 8, 1988). UNESCO and UNIDO are clearly not "The United Nations" covered by President Truman's 1946 UN designation, and it would be absurd to claim otherwise in the context of a statute that confers immunity on an entity-specific basis. Indeed, the IOIA also grants the President power to "revoke the designation of any international organization" if he finds it has abused its privileges or immunity. 22 U.S.C. § 288. If UNRWA has IOIA immunity based on designation of "The United Nations," abuse *by UNRWA* of its privileges or immunities could not trigger revocation of UNRWA's immunity; the President would have to revoke immunity for "The United Nations" itself. Such absurd results obligate the court to construe the IOIA in such a manner that avoids them. *Chan*, 490 U.S. at 130; *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 302 (3d Cir. 2014).

The same analysis applies to the plain language of the CPIUN and the UN Charter, both of which expressly extend immunity only to "*the* United Nations" itself, not subsidiary organs. Article II, section 2 of the CPIUN provides in pertinent part: "The *United Nations*, its property and assets wherever located and by whomsoever held, shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity shall extend to any particular case it has expressly waived its immunity." CPIUN, art. II, § 2, 21 U.S.T.

at 1422.  The CPIUN's preamble likewise acknowledges that the UN Charter grants immunity to "The Organization" of the United Nations.  *See* CPIUN pmbl., 21 U.S.T. at 1420; *see also Mora v. N.Y.*, 524 F.3d 183, 196 (2d Cir. 2008) (preambles provide "valuable context for understanding the terms of a treaty"); *Auguste v. Ridge*, 395 F.3d 123, 130 (3d Cir. 2005) (using preamble to aid construction of treaty).

"The United Nations" and "The Organization" are not ambiguous, and their plain meaning must be given effect. *Georges v. U.N.*, 834 F.3d 88, 92-83 (2d Cir. 2016) (CPIUN's plain text must be given effect).  The word "the" is a definite article referring to a singular, specific thing. *Flandreau Santee Sioux Tribe v. United States*, 197 F.3d 949, 952 (8th Cir. 1999); *accord Tonguette v. Sun Life & Health Ins. Co*., 595 F. App'x 545, 547 (6th Cir. 2014); *Baldwin Graphic Sys., Inc. v. Siebert*, 512 F.3d 1338, 1342 (Fed. Cir. 2008); *The*, MERRIAN-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/the.

That "The United Nations" does not include entitles like UNRWA is bolstered by CPIUN Article IV, sections 11 and 12, which expressly grant limited immunities to the "representatives of Members to the *principal and subsidiary organs of the United Nations*."  CPIUN art. IV, §§ 11-12, 21 U.S.T. at 1426.  These articles' explicit reference to "the principal and subsidiary organs of the United Nations" shows that those who drafted and ratified the CPIUN understood the difference between the UN *qua* UN and its subsidiary entities.  As the Third Circuit recognizes, a "fundamental canon" of construing legal text is that where sections of that text "do not include a specific term used elsewhere in the [text], the drafters did not wish such [terms] to apply."  *Alaka v. Att'y Gen. of the U.S.*, 456 F.3d 88, 97-98 (3d Cir. 2006) (quoting *United States v. Mobley*, 956 F.2d 450. 452-53 (3d Cir. 1992)).  When particular language is included in one section of a legal text but omitted in another, the court should presume that the omission is intentional.  *Me. Cmty.*

*Health Options v. United States*, 590 U.S. 296, 314 (2020); *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 186 (2020).

Even if "The United Nations" is somehow ambiguous, the UN Charter—the legal genesis of the CPIUN—confirms that "The United Nations" does not include subsidiary entities. The Charter "establish[ed] an international organization to be known as the United Nations." *See* U.N. Charter pmbl. This "international organization" is referred to throughout the Charter as "The United Nations," *see, e.g.*, U.N. Charter art. 2, ¶ 6, art. 8, art. 75, or "The Organization." *See, e.g.*, U.N. Charter art. 2 ¶¶ 1, 6, art. 58, art. 59, art. 104, art. 105. Importantly, Article 105 of the Charter declares that "*The Organization* shall enjoy in the territory of each of its Members such privileges and immunities as are necessary for the fulfillment of its purposes." U.N. Charter art. 105, ¶ 1. It does not mention "subsidiary organs." When a legal text uses the singular, definite article of "the," construing it to mean multiple things is reasonable only if relevant context *clearly contradicts* its plain, singular meaning. *See Brock v. Richland Shoe Co.*, 799 F.2d 80, 83 (3d Cir. 1986) (clear evidence of contrary intent in legislative history can possibly overcome plain meaning); *United States v. Alvarez-Machain*, 504 U.S. 655, 664 (1992) (treaty text is primary but ambiguity may be resolved by context regarding its adoption and practice).

There is no clear evidence in the Charter that "The United Nations" includes subsidiary organs. The Charter establishes six "principal organs of the United Nations[.]" U.N. Charter art. 7, ¶ 1 (emphasis added), but does not establish any "subsidiary organs" at all.[4] Instead, it

---

[4] The UN Charter contains entire chapters elaborating the specific functions and authorities of the six principal organs. *See* U.N. Charter Ch. IV (General Assembly), Ch. V-VIII (Security Council), Ch. IX-X (ECOSOC), Ch. XII-XIII (Trusteeship Council), Ch. XIV (International Court of Justice), Ch. XV (UN Secretariat). Because of this, the immunity of principal organs may warrant a different analysis. The case at bar, however, involves only the potential immunity of subsidiary organs; principal organs' immunity need not be resolved.

authorizes two of the UN's principal organs—the General Assembly and the Security Council—to create "subsidiary organs" if they are deemed "necessary for the performance of [their respective] functions." U.N. Charter art. 22 (General Assembly), art. 29 (Security Council). Thus, the Charter allowed subsidiary organs to be created in the future, but neither named nor defined the authority of any. Construing the CPIUN's grant of immunity to encompass as-yet uncreated "subsidiary" organizations would conflict its plain text and the *exclusio unius* canon.

Moreover, construing the CPIUN's immunity to extend beyond the UN *qua* UN would run directly counter to the U.S.'s reasonable expectations as evinced by the CPIUN's ratification history. The General Assembly's Resolution creating UNRWA, Resolution 302, neither refers to UNRWA as a "subsidiary organ" nor states that it is entitled to the immunity granted to the UN under the Charter. G.A. Res. 302 (IV) (Dec. 8, 1949). Paragraph 17 of that Resolution contains a precatory statement UNRWA immunity as follows:

> The General Assembly … *[c]alls upon* the Governments concerned to accord the United Nations Relief and Works Agency for Palestine Refugees in the Near East the *privileges, immunities*, exemptions and facilities *which have been granted* to the United Nations Relief for Palestinian Refugees, together with all other privileges, immunities, exemptions and facilities necessary for the fulfilment of its functions.

*Id.* at ¶ 17 (emphasis added). This "provision is precatory; it does not require" nations to grant immunity to UNRWA. *See Immigr. & Naturalization Serv. v. Cardoza-Fonseca*, 480 U.S. 421, 441 (1987) (UN convention language was precatory and not binding); *Menominee Tribal Enters. v. Solis*, 601 F.3d 669, 672 (7th Cir. 2010) (treaty language was precatory and thus "permissive rather than directive"). Moreover, Resolution 302 was passed by the General Assembly in 1949—three years *after* the CPIUN's enactment.[5] If the CPIUN was intended to extend immunity to

---

[5] The CPIUN was transmitted to Congress in February 1946 but not ratified until 1970. *See* 21 U.S.T 1418.

subsidiary organs, the General Assembly would not need to "call upon" nations to accord immunity to UNRWA; the CPIUN would have already done so of its own force. Additionally, Resolution 302's plain language calls upon nations to grant UNRWA immunity that already "*ha[d] been granted*" to its temporary predecessor organization, the United Nations Relief for Palestine Refugees ("UNRPR"). G.A. Res. 302 (IV)*, supra*, ¶ 1. The Resolution creating this predecessor organization contains *no mention* of any form of immunity. G.A. Res. 212 (III) (Nov. 19, 1948). In addition, there is no evidence that the Executive Branch ever acknowledged any immunity for the predecessor organization.

This is not surprising, since as a prominent treatise on the subject explains, prior to the CPIUN, "[i]t is difficult to argue that all international organizations are to enjoy privileges and immunities by virtue of customary international law. The customary foundation of immunities seems to be accepted for the *UN only*…. What is clear in any event, is that states are under no duty to grant such … immunities to particular organizations if they have not agreed to do so explicitly, or may not be deemed to have agreed to do so implicitly." Philippe Sands & Pierre Klein, Bowett's Law of Int'l Orgs. 493 (6th ed. 2009). Thus, at both the time the CPIUN was passed by the General Assembly and ratified by the U.S. Senate, customary international law did not consider any entity other than the UN *qua* UN to be entitled to immunity.

Indeed, UNRWA's Annual Reports reveal that, following passage of the CPIUN, UNRWA faced immediate opposition from Member States to its claim that the CPIUN conferred it immunity, based on the nature of UNRWA's operations. Ann. Rep. of the Dir. of UNRWA 1951-52, U.N. Doc. A/2171, Supp. No. 13, at 43 (1952); Ann. Rep. of the Dir. of UNRWA 1953-54, U.N. Doc. A/2717, Supp. No. 17, at 30, ¶ 1 (1954). Indeed, by 1956, UNRWA's annual report made clear, "The legal status of the Agency and its staff is still not fully recognized in some host

countries and the privileges and immunities necessary and custom for an organ of the United Nations are *often disputed*." Ann. Rep. of the Dir. of UNRWA 1955-56, U.N. doc. A/3212, Annex G, ¶ 2 (1956) (emphasis added). UNRWA's 1957 Report likewise admitted that some nations "do not recognize that the agency is a subsidiary organ of the United Nations," and cited "a Gaza court [that] rendered a decision to the effect that the Agency [UNRWA] was not an organ of the United Nations." Ann. Rep. of the Dir. of UNRWA 1956-67, U.N. Doc. A/3686, Supp. No. 14, at Annex H, ¶ 14 n.34 (1957). If the plain language and intended meaning of CPIUN was to extend immunity to UNRWA, these early objections would not have arisen.

The Executive branch's proposal and Senate's ratification of the CPIUN further show that it did not extend immunity to subsidiary organs. When the CPIUN was placed before the Senate for ratification by Senator Mansfield, he informed his colleagues: [T]he convention provides for certain privileges and immunities to the United Nations *as an organization* …. While the convention *largely represents the existing practice with regard to privileges and immunities*, it does enlarge upon them in *three relatively minor respects*," none of which are relevant here.[6] 116 Cong. Rec. 7878 (1970) (emphasis added). As elaborated above, neither the executive or judicial branches had, in 1970, acknowledged that subsidiary organs were entitled to immunity, and unsurprisingly, UNRWA points to none. Sen. Mansfield's declaration that the CPIUN merely restated "existing practice" except in "three relatively minor respects," *id*., thus reflected the Senate's understanding that the CPIUN did not go beyond recognizing immunity for the UN *qua*

---

[6] First, Mansfield explained, "Under present law, only resident representatives to the United Nations enjoy full diplomatic immunities … Under the convention, [nonresident representatives] would now also enjoy full diplomatic privileges and immunities …." 116 Cong. Rec. 7878 (1970). Second, "under the convention, the Secretary General, Under Secretaries and Assistant Secretaries of the United Nations … would be granted full diplomatic privileges and immunities." *Id*. Third, "[e]xperts on United Nations missions are the last group whose position would be improved by the convention." *Id*.

UN, which had already been granted immunity by President Truman's 1946 IOIA designation.

Substantially similar statements were made by Senate and Executive officials in the Senate Foreign Relations Committee's consideration of the CPIUN.  *See* U.S. Sen. Comm. on Foreign Rels., Convention on Privileges & Immunities of the U.N., Exec. Rep. 91-17, at 1-2 (Mar. 17, 1970) (CPIUN changes immunity only in "minor ways" and Article II "do[es] not change the present situation since the [IOIA] already provides for the same legal capacities, privileges, and immunities"); *id*. at 8 (statement of Charles W. Yost, U.S. Permanent Rep. to UN) (describing same three changes identified by Sen. Mansfield); *id*. at 11 (statement of John R. Stevenson, Legal Adviser, Dep't of State) ("With respect to the United Nations itself, there is no significant change" in immunity).  Indeed, the Foreign Relations Committee asked only one question about extending immunity beyond the UN *qua* UN, when Chairman Fulbright asked the State Department Legal Adviser, "Does this convention apply only to *the United Nations*, or does it also cover the OAS, regional organizations or specialized United Nations agencies?," to which Stevenson replied, "There is a separate convention on specialized agencies which is not before the Senate."[7]  *Id*. at 37 (emphasis added).  To this day, the U.S. has not acceded to that separate convention.

The same arguments were made by the Executive branch in 1946 and 1947, immediately after the CPIUN was passed by the General Assembly and President Truman designated the UN. A 1947 State Department letter transmitting the CPIUN to the Senate stated, "Many of the privileges and immunities [in the CPIUN] … have already been conferred upon the United Nations by virtue of the provisions of the International Organizations Immunities Act" and explained how the CPIUN "goes beyond" the IOIA in the same three ways identified by Sen. Mansfield in 1970.

---

[7] Convention on Privileges & Immunities of the Specialized Agencies, Aug. 16, 1949, 33 U.N.T.S. 261.

*See* Letter from George C. Marshall, Sec'y, U.S. Dep't of State, to Joseph W. Martin, Jr., Speaker, U.S. House (May 12, 1947), available at https://tinyurl.com/mr2ztb6a.  Likewise, a 1946 State Department internal memorandum stated that the CPIUN "does not contain measures of a drastic character, and [] it should not necessarily be anticipated that Congress would find it objectionable." Memorandum by Acting Assistant Chief of the Div. of Int'l Org. Affairs (Halderman) (Apr. 9, 1946), available at https://tinyurl.com/5x3cvv38.  These early Executive statements confirm that the CPIUN did not represent a sea-change in immunity.

As this history shows, neither the Senate nor Executive branch thought the CPIUN extended beyond the UN "as an organization," and they both thought that the CPIUN *did not alter existing the UN's existing immunity in any meaningful way*.  Indeed, there is not a single document from the Executive, Congress, or courts (until the 1980 New York state court decision in *Shamsee*, discussed in the next section) that even remotely suggested that an "organ" of the UN was entitled to immunity.  Given the historical views of the Executive, Senate, and customary international law that only the UN *qua* UN enjoyed immunity, UNRWA's immunity assertion is contrary to both the CPIUN's plain text and the history of its ratification.

**B.**     **Prior Cases Have Not Addressed These Issues and Are Neither Dispositive Nor Persuasive.**

UNRWA bases its immunity claim on nonprecedential, nonbinding decisions of other lower courts.  Yet none of these courts ever addressed the textual and contextual arguments presented here; they are issues of first impression. As such, these cases are readily distinguishable in material respect.

The first decision addressing immunity of UN "organs" was *Shamsee v. Shamsee*, 428 N.Y.S.2d 33 (N.Y. App. Div. 1980), which held that UN's Joint Staff Pension Fund, as an "organ of the United Nations, regulated by the General Assembly," was entitled to immunity from

sequestration issued by a trial court awarding Mrs. Shamsee support from her husband, a former UN *qua* UN employee. *Id*. at 34. The court observed that although the Pension's assets were "held separately from other United Nations property, [they] are the property of *that international organization*," i.e., the UN. *Id*. at 36. The Fund's assets were thus "immune from process by virtue of a treaty [CPIUN] and statute [IOIA]." *Id*. at 34. Notably, *Shamsee* did not raise any of the issues raised here; it was undisputed that the Fund's assets were UN property, which CPIUN Article II, section 2 immunizes from legal process "wherever located and *by whomsoever held* …." CPIUN art. II, §2 (emphasis added). The case at bar, by contrast, does not seek to seize any UN assets; it seeks a determination on the *merits* of Plaintiffs' ATA and ATS claims.[8]

Several decisions have mistakenly relied upon *Shamsee*—a case seeking attachment of uncontested *UN qua UN property*—to mean that UN subdivisions enjoy immunity. For example, *Boimah v. United Nations General Assembly*, 664 F. Supp. 69 (E.D.N.Y. 1987) was a *pro se* racial discrimination suit against the UN General Assembly—a *principal* organ[9]—which the court *sua sponte* dismissed based the CPIUN and IOIA immunity, relying on *Shamsee*.[10] *Id*. at 70-71. Its analysis occupied one sentence: "There can be little question that the General Assembly, as one

---

[8] If Plaintiffs prevail on the merits, judgment satisfaction would not involve UN property. UNRWA receives only 5 percent of its annual budget from the UN; the remaining 95 percent comes from voluntary contributions from governments. Rhoda Margesson & Jim Zanotti, Cong. Rsch. Serv., IF12863, UNRWA: Background and U.S. Funding Trends 1 (2025).

[9] *See supra* note 4.

[10] *Boimah* also cited *Int'l Refugee Org. v. Republic S.S. Corp*., 189 F.2d 858 (4th Cir. 1951), a breach of contract action against the IRO, a "specialized agency" of the UN. The only issue in the case was whether IRO had *capacity* to sue. *Id*. at 860. In holding that it did, the court relied on the language of the IOIA which declares, "International organizations shall … possess the capacity … to institute legal proceedings." 22 U.S.C. § 288a(a)(iii). The IRO's capacity to sue under the IOIA, however, says nothing about its entitlement to immunity. *See, e.g*., *United States v. BCCI Holdings (Luxembourg), S.A.*, 73 F.3d 403, 405-06 (D.C. Cir. 1996) (Organization of American States had capacity to sue but lacked IOIA immunity because it *initiated* the legal process from which it later sought immunity).

of the six *principal organs* of the United Nations, enjoys the same immunities" as the UN *qua* UN. *Id*. at 71 (emphasis added) (citation omitted). The same non-analysis occurred in *Hunter v. United Nations*, 800 N.Y.S.2d 347 (N.Y. Sup. Ct. 2004) (TABLE), another race discrimination claim concluding that the United Nations Children's Fund ("UNICEF") was immune. The court did not pause to consider whether principal organs (such as the General Assembly in *Boimah*) may be distinguishable from other UN subsidiaries,[11] but instead reflexively relied on *Shamsee* and *Boima*, copying verbatim *Boimah*'s one sentence analysis, substituting only the phrase "the General Assembly as one of the six principal organs of the United Nations" with "UNICEF, as a United Nations organization." *Id*. Like *Shamsee* and *Boimah*, neither the parties nor court in *Hunter* raised any textual or historical arguments against the CPIUN's extension beyond the UN *qua* UN.

Several other cases cited by UNRWA are distinguishable because the plaintiffs therein *conceded that CPIUN immunity applied*, arguing instead only that such immunity should not attach because it had been waived. *See, e.g.*, *Bisson v. U.N.*, 2008 WL 375094 (S.D.N.Y. 2008) (*pro se* plaintiff "argued that, despite the broad grant of immunity" under the UN Charter and CPIUN, immunity had been waived in several ways); *Nicol v. U.N. Missions in Liberia*, 2009 WL 2370179, at *1 (E.D. Pa. 2009) (plaintiff did not contest entitlement to immunity but "that Defendants waived their immunity" in various ways). Similarly, in *Sadikoglu v. United National Development. Programme*, 2011 WL 4953994 (S.D.N.Y. 2011), the plaintiff did not challenge the CPIUN's applicability; the district court *sua sponte* ordered briefing on the issue. *Id*. at *2. In response, the plaintiff challenged immunity *only* on the basis that the CPIUN conferred a functional (not absolute) immunity, and that no immunity attached because of the commercial activity exception. Pl.'s Mem. Regarding Lack of Immunity, Serv. of Process & Juridical Capacity

---

[11] *See supra* note 4.

with Respect to the UNDP at 5-15, *Sadikoglu v. U.N. Dev.* Programme, No. 11 Civ. 0294 (S.D.N.Y.), D.I. 15.  The *Sadikoglu* court held that "because UNDP—as a subsidiary program of the UN … has not waived its immunity, the CPIUN mandates dismissal of Plaintiff's claims[.]" *Sadikoglu*, 2011 WL 4953994, at *3 (cleaned up).

The *pro se* plaintiff in *Lempert v. Rice*, 956 F. Supp. 2d 17 (D.D.C. 2013), like the plaintiff in *Sadikoglu*, asserted claims against UNDP.  He argued in an improper surreply[12] that UNDP was not entitled to CPIUN immunity due to unspecified due process objections.  *See* Pl.'s Mem. to Respond 21-23, *Lempert v. Rice*, No. 1:12-cv-01518 (D.D.C.), D.I. 29.  The court provided a one-sentence analysis, relying upon *Sadikoglu*: "The Court concludes that as a subsidiary program of the UN that reports directly to the General Assembly, the UNDP also enjoys immunity under the Convention …." *Lempert*, 956 F. Supp. 2d at 24.  Because the plaintiffs in neither *Sadikoglu* nor *Lempert* contested that UNDP was a subsidiary program or that the CPIUN extended immunity thereto, they did not confront the issues raised here.

Likewise, in *Georges v. United Nations*, 84 F. Supp. 3d 246 (S.D.N.Y. 2015), the court held that the United Nations Stabilization Mission in Haiti ("MINUSTAH") was entitled to CPIUN immunity, with its analysis consisting of one sentence that cited only *Sadikoglu:* "MINUSTAH, as a subsidiary body of the UN, is also entitled to immunity from suit." *Id*. at 249.  As with *Sadikoglu*, the plaintiffs in *Georges* did not challenge MINUSTAH's entitlement to CPIUN immunity; indeed, they agreed that "Defendants enjoy broad immunity under the UN Charter and the [CPIUN]."  Pl.'s Mem. of Law in Opp'n 1, *Georges v. U.N.*, No. 1:13-cv-07146 (S.D.N.Y.), D.I. 35.  They argued instead that MINUSTAH's immunity was conditioned "on fulfilment of [its]

---

[12] The *Lempert* court nonetheless considered the improper surreply because it was "useful to its understanding of Plaintiff's theory of this case." *Id*. at 20.

obligations, and under a treaty that [it] ha[s] breached." *Id.* at 2-3; *Georges*, 84 F. Supp. 3d at 249. The district court disagreed, holding that CPIUN immunity can be disregarded only by express waiver. *Georges*, 84 F. Supp.3d at 249. The Second Circuit affirmed, concluding that the CPIUN's express waiver language was plain, and under *expressio unius*, its immunity was not conditioned on the fulfilment of other obligations. *Georges*, 834 F.3d at 93-94, 97. Like *Georges*, *Laventure v. United Nations*, 279 F. Supp. 3d 394 (E.D.N.Y. 2017), was a suit against MINUSTAH in which the plaintiffs did not contest MINUSTAH's immunity under the CPIUN. Instead, they "attempted to distinguish [*Georges*] on the ground that … defendants had 'repeatedly and expressly' waived immunity otherwise available to them." *Id.* at 397. Since no party contested it, the court unsurprisingly provided a one sentence conclusion: "As a UN subsidiary, MINUSTAH enjoys the same privileges and immunities as the UN under the CPIUN" and cited only *Georges* and *Sadikoglu*. *Id.* at 400. Thus, like all the other cases discussed, neither *Georges* nor *Laventure* raised the issues raised here.

Given that all prior cases discussed above are readily distinguishable on grounds that they involved principal organs, other issues, or the plaintiffs did not contest the existence of immunity, UNRWA relies most heavily on *Estate of Tov v. UNRWA*, 2025 WL 2793701 (S.D.N.Y. Sept. 30, 2025), *appeal filed* (2d Cir. Nov. 6, 2025),[13] claiming that it is "indistinguishable from this case." D.I. 83 at 9. Like here, *Tov* involved claims against UNRWA, which asserted immunity. But unlike all the prior cases discussed above, *Tov* was the first case in which plaintiffs contested the notion that CPIUN or IOIA immunity conferred immunity upon any entity other than the UN *qua* UN. *Id.* at *2.

---

[13] The Second Circuit opening brief in *Tov* is due January 22, 2026. *Estate of Tov v. UNRWA*, No. 25-2837 (2d Cir.), D.I. 23.

Despite this, the *Tov* court evaded this issue altogether, focusing instead on a debate among the parties as to whether UNRWA was a "subsidiary organ" versus a "specialized agency." *Id*. at *4-6. Because it concluded that UNRWA was a subsidiary organ, the *Tov* court relied on *Sadikoglu*: "[T]he Court finds that UNRWA is a subsidiary organ of the U.N. and concludes, based on the 'plain and unambiguous text of the CPIUN,' that URWA enjoys absolute immunity." *Id*. at *6 (quoting *Sadikoglu*, 2011 WL 4953994, at *3). Thus, *Tov*, like all the other cases, did not address fundamental issue raised by plaintiffs there and here, namely: Does the text or historical context of the CPIUN extend immunity to subsidiary organs? *Tov* concluded that *because* it believed UNRWA was a subsidiary organ, it *necessarily* followed that it was entitled to CPIUN immunity, citing *Sadikoglu*—a case in which the plaintiff did not challenge the applicability of CPIUN immunity at all. *Id*. at *6. Plaintiffs here ask this Court to finally address the plain meaning of the UN Charter, CPIUN, and Resolution 302 (creating UNRWA), using well established canons of construction as its guide. Even if the court finds these legal texts ambiguous, however, the CPIUN's ratification history shows that when it was ratified in 1970, both the Executive and Congress believed the CPIUN would not alter *pre-existing immunity* law except in three narrow circumstances (not applicable here). That pre-existing immunity law, at the time of CPIUN ratification, did not extend immunity beyond the UN *qua* UN.

## C.    The Executive Branch's Position on UNRWA Immunity is Entitled to Great Weight.

The Government's most recent position regarding UNRWA's immunity was issued on April 24, 2025, as a Statement of Interest in the *Tov* litigation. Letter from Jay Clayton, U.S. Dist. Att'y, S.D.N.Y., to Analisa Torres, U.S. Dist. Judge, S.D.N.Y. (Apr. 24, 2025), Am. Compl. Ex. A, D.I. 52-2. That statement concludes that UNRWA is not entitled to immunity under either the IOIA or CPIUN. *Id*. UNRWA argues that the Government's position is not entitled to deference

because prior statements reached a different conclusion. D.I. 83 at 9.

*Tov* was careful to note, however, that because the Government had filed statements reflecting opposite positions in that case, "[b]oth parties" had "ask[ed] the Court to accord no deference to the Government's statements." *Tov*, 2025 WL 2793701, at *7. *Tov* concluded that it "need not assign *controlling weight* to the Government's letters of interest." *Id*. (emphasis added).

*Tov* was correct that it need not assign "controlling weight" to the Government's Statement of Interest. But UNRWA's suggestion here that the Government's position is not entitled to *any weight* is incorrect. "It is well settled that the Executive Branch's interpretation of a treaty 'is entitled to *great weight*.'" *Abbott*, 560 U.S. at 15 (quoting *Sumitomo Shoji Am.*, 457 U.S. at 185) (emphasis added). That the Executive's position may have changed over time is of no legal consequence. Indeed, in *Sumitomo*, the Supreme Court observed that the appellate court disregarded a 1979 Executive branch treaty position in favor of one issued the year before. *Sumitomo*, 457 U.S. at 184 n.10. Neither position was "indicative of the state of mind of the [1953] Treaty negotiators," reasoned the Court, so whatever "the State Department position may have been previously, it is certainly beyond dispute that the *Department now interprets the Treaty in conformity with its plain langua*ge …. That interpretation … is entitled to great weight." *Id*. The same is true here. The DOJ's current position regarding UNRWA's entitlement to immunity under the CPIUN is entitled to great weight because it is presently "charged with interpreting and enforcing [that] Treaty." *Id*.

Article II grants the Executive a "vast share of responsibility for the conduct of our foreign relations." *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 5789, 610-11 (1952) (Frankfurter, J., concurring)). His authority is most robust when he acts with implicit or explicit congressional approval. *See Zivotofsky v. Kerry*,

576 U.S. 1, 20-21 (2015); *Dames & Moore v. Regan*, 453 U.S. 654, 680, 686 (1981). The courts should not "cavalierly interfere with the political branches' delicate judgments on matters of foreign affairs." *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 19 (2025) (internal quotation marks omitted).

Here, both the IOIA and CPIUN have received the necessary congressional approval—grounded in an understanding, evinced by their plain text and adoption history, that they extended immunity only to the UN *qua* UN. Moreover, the extant position of both Congress and the Executive regarding UNRWA evinces serious concerns about UNRWA's links to terrorism. Congress paused UNRWA's funding through March 25, 2025, Further Consol. Approps. Act, div. G, tit. III, § 301, Pub. L. 118-47, 138 Stat. 460, 858 (2024), and in February 2025, an Executive Order continued the pause on grounds that UNRWA has "been infiltrated by members of groups long designated … as foreign terrorist organizations, and UNRWA employees were involved in the October 7, 2023, Hamas attack on Israel." Exec. Order No. 14199, 90 Fed. Reg. 9275 (Feb. 4, 2025). Deference to the Executive's current position is warranted because it is charged with executing both the IOIA and CPIUN, and it reflects evolving facts. "[F]oreign relations is a notoriously fluid matter, subject to subtle changes in personnel, events, and perceptions on either side …. Conduct of foreign relations requires constant monitoring and adjustment." *Sarei v. Rio Tinto, PLC*, 487 F.3d 1193, 1244 (9th Cir. 2007) (Bybee, J., dissenting), *rev'd in part on other grounds*, *Sarei v. Rio Tinto, PLC*, 550 F.3d 822 (9th Cir. 2008) (en banc). Fluid world events on issues of foreign policy—particularly the issue of immunity which has vast diplomatic and policy implications—strongly counsel judicial deference to the Executive's current position.

**III.   UNRWA IS AUTONOMOUS FROM THE UN AND NOT A SUBSIDIARY ORGAN.**

Even if the CPUIN extended blanket immunity to subsidiary organs, UNRWA cannot qualify as one.  It is more analogous to a specialized agency, with its own legal personality, that functions with substantial autonomy from the UN. Resolution 302 creating UNRWA does not refer to UNRWA as a UN "subsidiary organ."  G.A. Res. 302 (IV), *supra*, ¶ 17.  UNRWA argues that because *post*-CPIUN resolutions, a UN Office of Legal affairs opinion, and an ICJ opinion declare UNRWA a subsidiary organ, this court should, too. D.I. 83 at 6-7.  But all these sources are post-enactment history with little to no relevance.  *Dist. of Columbia v. Heller*, 554 U.S. 570, 605 (2008); *Pa. Med. Soc'y v. Snider*, 29 F.3d 886, 898 (3d Cir. 1994); *see also Sullivan v. Finklestein*, 496 U.S. 617, 632 (1990) (Scalia, J., concurring) ("Arguments based on subsequent legislative history … should not be taken seriously, not even in a footnote.").

UNRWA was given broad powers to "carry out in collaboration with local governments []
direct relief and works programmes" and "consult with the interested Near Eastern Governments" to help prepare them for "the time when international assistance for relief … is no longer available."  G.A. Res. 302 (IV), *supra*, ¶ 7.  Today, UNRWA's power includes "educational services," a "wide range of health services," "social services," "skills training, income generation projects and other community services" and "economic development" in the West Bank and Gaza. UN Secretariat Bulletin, Organization of UNRWA ¶ 2.1(b) (Feb. 17, 2000) ("Secretariat Bulletin"), available at https://docs.un.org/en/st/SGB/2000/6.  Importantly, "UNRWA is governed by its own financial regulations," not those of the UN. *Id*. at ¶ 2.4.  It receives only 5 percent of its annual budget from the UN; the remaining 95 percent comes from voluntary contributions from various governments. Rhoda Margesson & Jim Zanotti, Cong. Rsch. Serv., IF12863, UNRWA: Background & U.S. Funding Trends 1 (2025).  In addition, although Resolution 302 states that

UNRWA's personnel are subject to UN staff rules "as the Director and the Secretary-General shall agree are applicable," no such agreement has ever been reached. Secretariat Bulletin at ¶ 9(b). The Secretariat bulletin expressly states that UNRWA "is governed by its own staff regulations and rules" that apply to "both international and locally recruited staff." *Id*. at ¶ 2.4, n.4. UNRWA's personnel are likewise not subject to the UN's internal justice system; they do not go to the United Nations Dispute Tribunal ("UNDT") or the Office of Staff Legal Assistance ("OSLA"). *UN International Justice System*, *Who Can Use the System*, UN.ORG (last visited Jan. 13, 2026), https://tinyurl.com/yykxx9wp.

UNRWA thus has its own staff rules, internal personnel adjudication mechanism, financial regulations, and receives a very little of its budget from the UN. Such autonomy is a hallmark of specialized agencies, not subsidiary organs. REST. (THIRD) FOREIGN RELS. LAW, Part 2, Ch. 2, Introductory Note (1987) (describing specialized agencies as "autonomous organizations"). I t would be bizarre to allow UNRWA to hide behind the UN's immunity while being substantially autonomous therefrom.

At the very least, there is a factual dispute about UNRWA's status and the UN's control over it that cannot be resolved at the dismissal stage. *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (factual disputes should not be resolved not on a motion to dismiss but on summary judgment).

## IV. UNRWA IS NOT IMMUNE FOR ACTS UNNECESSARY TO CARRY OUT ITS FUNCTIONS, THAT CONSTITUTE COMMERCIAL ACTIVITY, OR THAT VIOLATE *JUS COGENS*.

Even assuming *arguendo* that UNRWA is entitled to immunity, it would not apply here for three additional reasons. First, aiding and abetting an FTO in torture, rape, kidnap, and murder is not part of UNRWA's official functions for which it can claim immunity, as Resolution makes clear: "The General Assembly … [c]alls upon Governments concerned to accord [UNRWA] …

privileges, immunities . . . necessary for the fulfilment of its functions." G.A. Res. 302 (IV), *supra*, ¶ 17. Aiding and abetting FTOs in their crimes against humanity cannot and should not be considered acts "necessary for the fulfilment of [UNRWA's] functions." *Id*.

Second, as *Jam* made clear, the IOIA grants international organizations the same restrictive immunity as foreign states enjoy under the FSIA, which includes an exception for commercial activity. *Jam*, 586 U.S. at 210; *accord Oss Nokalva, Inc. v. European Space Agency*, 617 F.3d 756, 762-63 (3rd Cir. 2010). Here, UNRWA has engaged in commercial activity in the US in support of an FTO, which removes any colorable protection. It operates private schools that regularly employ Hamas teachers and administrators who indoctrinate students. Amd. Compl., D.I. 52, ¶¶ 90-122. It operates as a storage facility that hides Hamas weapons and tunnels. *Id*. at ¶¶ 123-30. It operates as a bank to launder U.S. dollars for Hamas. *Id*. at ¶¶ 131-42.

Finally, there can be no immunity for *jus cogens* violations, which are "norm[s] accepted and recognized by the international community of States … from which no derogation is permitted[.]" *Yousuf v. Samantar*, 699 F.3d 763, 775 (4th Cir. 2012) (citation omitted). "There has been an increasing trend in international law to abrogate foreign official immunity for individuals who commit acts … that violate *jus cogens* norms—i.e., they commit international crimes or human rights violations." *Id*. at 777. Thus, "*jus cogens* violations are not legitimate official acts and therefore do not merit foreign official immunity[.]" *Id*. As a matter of customary international law, there can be no condoning of torture or extrajudicial killings, and Defendant UNRWA cannot hide behind the veil of the UN's immunity to avoid legal accountability for its material support of terrorism.

Allowing UNRWA to claim immunity for aiding and abetting offenses against humanity and war crimes committed by Hamas on October 7 would offend justice and undermine the express

goal of the ATA's aiding-and-abetting provision "to provide civil litigants with the *broadest possible basis … to seek relief*" against persons, entities, and foreign countries … that have provided material support, directly or indirectly, to foreign organizations or persons that engage in terrorist activities[.]"  Justice Against Sponsors of Terrorism Act ("JASTA") § 2(b), Pub. L. No. 114-222, 130 Stat. 852, 853 (2016) (emphasis added); *accord Kaplan v. Lebanese Can. Bank, SAL*, 999 F.3d 842, 855 (2d Cir. 2021).  To hold that Defendant's acts are immunized here would undermine the legislative purpose animating the ATA.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny UNRWA's motion to dismiss.

Dated:  January 13, 2026

**Of Counsel:**

David I. Schoen, Esq.*
DAVID I. SCHOEN, ATTORNEY AT LAW
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106
Email: schoenlawfirm@gmail.com
Phone: (334) 395-6611

Mark Goldfeder, Esq.*
Ben Schlager, Esq.*
Anat Alon-Beck, Esq.*
Mark Lebovitch, Esq.*
NATIONAL JEWISH ADVOCACY CENTER, INC.
3 Times Square, Suite 512
New York, NY 10036
Email: Mark@njaclaw.org |
Ben@njaclaw.org | MLebovitch@njaclaw.org
| Anat@njaclaw.org
Phone: (332) 278-1100

*Additional Counsel on Next Page*

Respectfully submitted,

*/s/ Theodore A. Kittila*
Theodore A. Kittila (Bar No. 3963)
**HALLORAN FARKAS + KITTILA LLP**
5722 Kennett Pike
Wilmington, Delaware 19807
Email:  tk@hfk.law
Phone: (302) 257-2025
Fax: (302) 257-2019

*Counsel for Plaintiffs*

Jason Torchinsky, Esq.*
Elizabeth Price Foley, Esq.**
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2300 N Street, NW, Suite 643A
Washington, DC 20037
Email: jtorchinsky@holtzmanvogel.com |
efoley@holtzmanvogel.com
Phone: (202) 737-8808
Fax: (540) 341-8809

John Cycon, Esq.*
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Hwy
Haymarket, VA 20169
Email:  jcycon@holtzmanvogel.com
Phone: (540) 341-8808
Fax: (540) 341-8809

Mark Pinkert, Esq.*
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe Street, Suite 500
Tallahassee, FL 32301
Email: mpinkert@holtzmanvogel.com
Phone: (203) 415-6665

Susan L. Greene, Esq.*
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
5360 Genesee Street, Suite 203
Buffalo, NY 14026
Email: sgreene@holtzmanvogel.com
Phone: (716) 647-6103

* Admitted *pro hac vice*
**Motion *pro hac vice* to be filed