**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

LISHAY LAVI, AYELET SAMERANO, NOACH NEWMAN, ADIN GESS, MAYA PARIZER, NATALIE SANANDAJI, YONI DILLER, HAGAR ALMOG, DAVID BROMBERG, LIOR BAR OR, and ARIEL EIN-GAL,

Plaintiffs,

v.

UNRWA USA NATIONAL COMMITTEE, INC. and UNITED NATIONS RELIEF AND WORKS AGENCY FOR PALESTINE REFUGEES IN THE NEAR EAST,

Defendants.

Civil Action No. 24-312-RGA

MEMORANDUM OPINION

Theodore Allan Kittila, HALLORAN FARKAS AND KITTILA LLP, Wilmington, DE; David I. Schoen, THE LAW OFFICE OF DAVID I. SCHOEN, Montgomery, AL; Mark Goldfeder, Ben Schlager, Erielle Davidson, Anat Alon-Beck, Mark Lebovitch, NATIONAL JEWISH ADVOCACY CENTER, INC., New York, NY; Jason B. Torchinsky, Elizabeth Price Foley, HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC, Washington, D.C.; John Cycon, HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC, Haymarket, VA; Mark Pinkert, HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC, Tallahassee, FL; Susan L. Greene (argued), HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC, Buffalo, NY,

Attorneys for Plaintiffs.

Thomas A. Uebler, Terisa Shoremount, MCCOLLOM D'EMILIO SMITH UEBLER LLC, Wilmington, DE; Kevin A. Meehan (argued), Marwa Farag, Robert Groot, Olivia J. Wang, CURTIS, MALLET-PREVOST, COLT & MOSLE LLP, New York, NY,

Attorneys for Defendant United Nations Relief and Works Agency for Palestine Refugees in the Near East.

November 24, 2026

**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendant United Nations Relief and Works Agency for Palestine Refugees in the Near East's ("UNRWA") Motion to Dismiss. (D.I. 82). I have considered the parties' briefing. (D.I. 83, 93, 95). On October 8, 2026, I held oral argument. For the following reasons, Defendant UNRWA's motion is GRANTED.

## I. BACKGROUND

Plaintiffs are seven individuals who are each a citizen of the United States or a dual citizen of the United States and Israel.[1] (D.I. 52 at ¶¶ 19–29). Plaintiffs' First Amended Complaint alleges that Defendants UNRWA USA National Committee ("UNRWA USA") and UNRWA violated 18 U.S.C. § 2333 by providing "the funding, logistical infrastructure, and human support staff" to enable the terrorist organization Hamas to commit the October 7, 2023, attacks in Israel. (*Id.* at ¶¶ 3, 246–307). Only UNRWA USA was named as a Defendant in the initial Complaint; Plaintiffs added UNRWA as a Defendant in the First Amended Complaint. (*See* D.I. 1). UNRWA now moves to dismiss the Complaint against it for lack of subject matter jurisdiction and lack of personal jurisdiction. (D.I. 82). Both of UNRWA's grounds for dismissal are rooted in claims of immunity. (*Id.*).

## II. LEGAL STANDARD

A party may bring a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(b)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

[1] There were four additional Israeli citizen plaintiffs, but the only count they asserted has since been dismissed. (D.I. 112).

"A district court has to first determine, however, whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Constitution Party v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (internal citation omitted). "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Id.* at 358. Complete jurisdictional immunity from a lawsuit deprives a court of subject matter jurisdiction. *Samantar v. Yousuf*, 560 U.S. 305, 325–26 (2010); *Smith v. United States*, 507 U.S. 197 (1993). Therefore, an assertion of complete immunity is a facial attack. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."[2] *Constitution Party*, 757 F.3d at 358 (internal quotation omitted). "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Id.*

**A. Convention on Privileges and Immunities of the United Nations**

The Convention on Privileges and Immunities of the United Nations ("CPIUN") is an international treaty that extends to the United Nations absolute immunity "from every form of legal process except insofar as in any particular case it has expressly waived its immunity." Convention on Privileges and Immunities of the United Nations, art. II, § 2, Feb. 13, 1946, 21 U.S.T. 1418

[2] After a party makes a motion to dismiss based on immunity, it may be appropriate for the parties to partake in limited jurisdictional discovery. Plaintiffs have not requested discovery, nor do I believe discovery could change the outcome of this motion. Thus, my review is limited to Plaintiffs' First Amended Complaint, the documents referenced and attached therein, and the parties' briefing on this motion to dismiss.

(entered into force with respect to the United States Apr. 29, 1970) [hereinafter CPIUN]; *see Brzak v. United Nations*, 597 F.3d 107, 111 (2d Cir. 2010). "The United Nations must *expressly* state its intention to waive its absolute immunity in order to do so." *Nicol v. United Nations Missions in Liberia*, 2009 WL 2370179, at *2 (E.D. Pa. July 30, 2009) (citing *Emmanuel v. United States*, 253 F.3d 755, 756 (2d Cir. 2001). As a signatory to the treaty, there is no question that the CPIUN is binding on the United States as a matter of international law. *See Medellin v. Texas*, 552 U.S. 491, 504 (2008). I agree with the Second Circuit's analysis holding that the CPIUN is self-executing and, therefore, binding on the United States as a matter of domestic law.[3] *See Brzak*, 597 F.3d at 111–12.

**B. International Organizations Immunities Act**

"The International Organizations Immunities Act [("IOIA")] grants international organizations the 'same immunity' from suit 'as is enjoyed by foreign governments" at any given time.'" *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 215 (2019) (quoting 22 U.S.C. § 288a(b)). To be classified as an international organization under the IOIA, an organization must (1) be a "public international organization in which the United States participates" either (a) "pursuant to any treaty" or (b) "under the authority of any Act of Congress authorizing such participation or making an appropriation for such participation," and (2) "have been designated by the President through appropriate Executive order as being entitled to enjoy the privileges, exemptions, and immunities" provided by the Act. 22 U.S.C. § 288. By Executive Order in 1946, the United Nations was designated as an international organization entitled to the immunities provided by the IOIA. Exec. Order No. 9698, 11 Fed. Reg. 1809 (Feb. 19, 1946).

[3] No party argues against the proposition that the CPIUN is binding as a matter of domestic law.

The IOIA "continuously link[s] the immunity of international organizations to that of foreign governments, so as to ensure ongoing parity between the two." *Jam*, 586 U.S. at 207. Accordingly, immunity for international organizations follows the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–11, which outlines the immunities of foreign governments from suits in United States courts. *Jam*, 586 U.S. at 212–13. "Under the FSIA, foreign governments are presumptively immune from suit. §1604. But a foreign government may be subject to suit under one of several statutory exceptions." *Jam*, 586 U.S. at 204. As the Third Circuit has explained, "we construe the IOIA to incorporate the exceptions to immunity set forth in the FSIA." *OSS Nokalva, Inc. v. European Space Agency*, 617 F.3d 756, 765 (3d Cir. 2010).

## III. DISCUSSION

### A. Convention on Privileges and Immunities of the United Nations

There is no dispute that the UN has absolute immunity pursuant to the CPIUN. UNRWA argues that, as a subsidiary organ of the UN, it too has absolute immunity under the CPIUN. (D.I. 83 at 5–9). Plaintiffs respond with four arguments for why the CPIUN does not provide UNRWA immunity. (D.I. 93). First, Plaintiffs argue that UNRWA has not met its burden of proving that the CPIUN applies. (*Id.* at 3–4). Second, the plain language of the CPIUN and UN Charter only provide immunity to the UN itself, not to any of its subsidiary organs. (*Id.* at 5, 7–10). Third, even if the CPIUN provides immunity for subsidiary organs of the UN, Plaintiffs argue that UNRWA functions as an independent legal entity, not a subsidiary organ. (*Id.* at 22–23). Fourth, Plaintiffs argue that immunity does not apply to this case because the underlying acts fall outside of the UNRWA's purpose and violate *jus cogens*. (*Id.* at 23–25).

**1. Burden of Proof**

UNRWA argues that Plaintiffs have the burden of proving that the Court has subject matter jurisdiction (D.I. 83 at 4), including the burden of abrogating immunity under the CPIUN (D.I. 95 at 1). Plaintiffs argue that immunity is treated like an affirmative defense when evaluating a motion to dismiss; therefore, it is UNRWA's burden to prove that immunity applies. (D.I. 93 at 3–4).

The Third Circuit has not explained who has the burden of proof when subject matter jurisdiction is challenged based on immunity under the CPIUN. Traditionally, "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). However, for some other forms of immunity, the Third Circuit has held, "The party asserting . . . immunity (and standing to benefit from its acceptance) bears the burden of proving its applicability." *Christy v. Pa. Turnpike Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995) (Eleventh Amendment immunity context); *see Fed. Ins. Co. v. Richard I. Rubin & Co., Inc.*, 12 F.3d 1270, 1285 (3d Cir. 1993) (FSIA immunity).

Like immunity under the Eleventh Amendment, immunity under the CPIUN "does not implicate federal subject matter jurisdiction in the ordinary sense" because it "can be expressly waived by a party." *Christy*, 54 F.3d at 1144; *see Emmanuel*, 253 F.3d at 756 (immunity under the CPIUN can be waived). A defendant asserting immunity under the CPIUN, therefore, bears some burden in arguing immunity. However, immunity under the CPIUN differs from other sources of immunity that require higher burdens of proof or unique burden shifting frameworks. For example, the UN's immunity cannot be "forfeited through non-assertion" like Eleventh Amendment immunity. *Christy*, 54 F.3d at 1144. Nor does the CPIUN "share the unique

legislative history that has been used to justify the burden-shifting approach as applied to the FSIA." *Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 444 (2d Cir. 2019). Once a defendant makes an initial assertion of immunity under the CPIUN, i.e., stating it is the UN and that it has complete immunity under the CPIUN, the defendant is presumed to be immune under the CPIUN. The plaintiffs then have the burden to show that the defendant either is not the UN or that the UN defendant had expressly waived its immunity. *See Estate of Tov v. United Nations Relief & Works Agency*, 807 F. Supp. 3d 208, 220 (S.D.N.Y. 2025), No. 25-2837 (2d Cir. argued Sept. 15, 2026) ("Plaintiffs bear the burden of proving that [subject matter jurisdiction] exists."). Since UNRWA has asserted that it has absolute immunity, Plaintiff has the burden of proof to show otherwise.

**2. CPIUN's Applicability to UN Subsidiary Organs**

UNRWA cites a number of cases from other districts and circuits in which immunity under the CPIUN was extended to UN subsidiary organs. (D.I. 83 at 6). Plaintiffs respond by arguing that the cases UNRWA relies on did not properly interpret the CPIUN. (D.I. 93 at 14–19). Instead, Plaintiffs argue that the plain language of the treaty does not provide immunity for subsidiary organs. (*Id.* at 7–10). To support their treaty interpretation, Plaintiffs identify legislative history from Congress and the UN to argue that the CPIUN was ratified based on the belief that immunity was not extended to UNRWA. (*Id.* at 10–14).

"[I]mmunity for the UN and its subsidiary [organs] derives primarily from two multilateral agreements to which the United States is a party: the Charter of the United Nations . . . and the Convention on Privileges and Immunities of the United Nations . . . ." *Sadikoglu v. United Nations*

*Dev. Programme*, 2011 WL 4953994, at *43 (S.D.N.Y. Oct. 14, 2011).[4] Thus, determining whether UNRWA is immune requires interpreting two treaties, the UN Charter and the CPIUN.

"The interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellin*, 552 U.S. at 506 (citing *Air France v. Saks*, 470 U.S. 392, 396–97 (1985)). "The clear import of treaty language controls unless 'application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories.'" *Sumitomo Shoji Am. v. Avagliano*, 457 U.S. 176, 180 (1982) (quoting *Maximov* v. *United States*, 373 U.S. 49, 54 (1963)). The Supreme Court has explained that "the negotiation and drafting history of the treaty as well as 'the postratification understanding' of signatory nations" may be "considered as 'aids to its interpretation.'" *Medellin*, 552 U.S. at 507 (citing *Zicherman* v. *Korean Air Lines Co.*, 516 U.S. 217, 226 (1996); *see United States* v. *Stuart*, 489 U.S. 353, 365–66 (1989); *Choctaw Nation* v. *United States*, 318 U.S. 423, 431–32 (1943)).

The preamble of the CPIUN explains that the purpose of the treaty is to fulfill Member States' obligations under Articles 104 and 105 of the UN Charter.[5] CPIUN, preamble. These two

---

[4] Some courts use slightly different terms such as "subsidiary," "subsidiary body," or "subsidiary program" when they are discussing what I call a "subsidiary organ." When cases that use one of these slightly different terms are cited in this opinion, I am confident that they are using it to refer to what I refer to as a "subsidiary organ."

[5] Article 104 states "The Organization shall enjoy in the territory of each of its Members such legal capacity as may be necessary for the exercise of its functions and the fulfilment of its purposes." U.N. Charter art. 104. Article 105 provides:

1. The Organization shall enjoy in the territory of each of its Members such privileges and immunities as are necessary for the fulfilment of its purposes.
2. Representatives of the Members of the United Nations and officials of the Organization shall similarly enjoy such privileges and immunities as are necessary for the independent exercise of their functions in connection with the Organization.
3. The General Assembly may make recommendations with a view to determining the details of the application of paragraphs 1 and 2 of this Article or may propose conventions to the Members of the United Nations for this purpose.

U.N. Charter art. 105.

articles of the UN Charter and the preamble of the CPIUN both discuss the privileges and immunities of the "Organization." As used in the Charter, "Organization" refers to the "international organization to be known as the United Nations." U.N. Charter, preamble. Chapter three of the Charter outlines the organs that compose the United Nations.[6] These organs include six principal organs and "[s]uch subsidiary organs as may be . . . established in accordance with the present Charter." *Id.* art. 7, ¶ 2. It does not matter that the CPIUN refers to protections for the "United Nations" in some parts but in other parts to protections for the representatives of "principal and subsidiary organs."[7] (*See* D.I. 93 at 8 (quoting CPIUN art. IV, §§ 11–13)). The "United Nations" is the principal and subsidiary organs; without these organs, the United Nations lacks the mechanisms to do anything. Thus, the United Nations, interchangeably referred to as "the

---

[6] The UN Charter established the roles and duties of two different groups, the Organization and its Members. After describing how States become Members of the United Nations in Chapter Two of the Charter, Chapter Three of the Charter turns to explaining the organs that compose the United Nations. While States are the Members that direct the United Nations, the Organization itself is made up of the organs.

[7] During oral argument, Plaintiffs argued that the CPIUN does not extend immunity to UN subsidiary organs because the text of the treaty explicitly mentions subsidiary organs in article four of the CPIUN, which provides immunity to individual representatives, but not in article two of the CPIUN, which provides immunity to the United Nations itself. (D.I. 113 22:24–24:5). I do not believe this argument has any merit. Principal organs are similarly explicitly mentioned in article 4, but not in article 2. However, Plaintiffs argued that principal organs are granted immunity under article 2. (*Id.* at 23:15–20, 24:22–25:15). Thus, the only way for Plaintiffs' argument to work is to ignore the plain text of the UN Charter and redefine the "United Nations" as the principal, but not subsidiary, organs. The specific reference in article four to the principal and subsidiary organs clearly explains why the CPIUN used the different terminology. Article four extends immunity to the "Representatives of Members to the principal and subsidiary organs of the United Nations. . . while exercising their functions and during the journey to and from the place of meeting." CPIUN art. IV. Notably, article four only provides immunity to representatives when acting in the role as a representative. By specifying that article four applies to the representatives of "Members to the principal and subsidiary organs," the treaty indicates that immunity is connected to the representative's State being a member of the particular principal or subsidiary organ as opposed to a UN member generally. Thus, the use of different terminology in articles two and four does not indicate that the CPIUN intended for the "United Nations" to mean something other than its traditional definition of principal and subsidiary organs.

Organization," refers to the six principal organs and any subsidiary organs created by the General Assembly or Security Council.

Contrary to Plaintiffs' argument (D.I. 93 at 8–9), the inclusion of the word "the" before "United Nations" and "Organization" does not preclude the Organization from containing multiple organs. For example, just as "the 119th Congress" includes 535 elected officials and numerous committees, "the United Nations" is a single entity composed of multiple organs. The protections granted to "Congress" or the "United Nations" extends to the parts that compose them. For example, the Speech and Debate Clause of the U.S. Constitution protects an individual Senator or Representative's "Speech or Debate in either House," U.S. CONST. art. I, § 6, cl. 1,[8] including speech "that occurred at [a] subcommittee meeting," *Gravel v. United States*, 408 U.S. 606, 616 (1972). Likewise, a protection created for the "United Nations" is a protection for the entities that comprise it, i.e., the principal organs and subsidiary organs.

The relevant portion of the CPIUN states, "The United Nations . . . shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity." CPIUN art. II, § 2. As discussed above, the principal and subsidiary organs are "The United Nations." Thus, "a UN subsidiary [organ] enjoys the same privileges and immunities as the UN under the CPIUN," *Laventure v. United Nations*, 279 F. Supp. 3d 394, 400 (E.D.N.Y. 2017), such that a "subsidiary [organ] of the UN[] is also immune from suit," *Georges v. United Nations*, 84 F. Supp. 3d 246, 249 (S.D.N.Y. 2015), *aff'd* 834 F.3d 88 (2d Cir. 2016). *See Tov*, 807

[8] The Speech and Debate clause provides:

> The Senators and Representatives . . . shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.

U.S. CONST. art. I, § 6, cl. 1.

F. Supp. 3d at 219 ("The CPIUN extends its grant of absolute immunity to subsidiary organs of the U.N." (cleaned up)); *Lempert v. Rice*, 956 F. Supp. 2d 17, 24 (D.D.C. 2013) ("as a subsidiary [organ] of the UN that reports directly to the General Assembly, the UNDP [UN Development Programme] also enjoys immunity under the Convention"); *Sadikoglu*, 2011 WL 4953994, at *3 ("Accordingly, because UNDP—as a subsidiary [organ] of the UN that reports directly to the General Assembly—has not waived its immunity, the CPIUN mandates dismissal of Plaintiff's claims against the United Nations for lack of subject matter jurisdiction." (cleaned up)); *Shamsee v. Shamsee*, 74 A.D. 2d 357, 361 (N.Y. App. Div. 1980) ("The record demonstrates with convincing clarity that the [United Nations Joint Staff] pension fund is [a subsidiary] organ of the United Nations . . . . The funds which Mrs. Shamsee seeks to sequester, therefore, are impervious to legal process under . . . section 2 of the convention.").[9]

Despite Plaintiffs' argument that the prior case law is inapplicable to this dispute (D.I. 93 at 14–19), because my conclusion is based on my independent legal analysis, I do not need to analyze the exact legal or factual differences between the present dispute and the non-binding conclusions in the cases cited by UNRWA.

**3. Subsidiary Organ Status of UNRWA**

UNRWA argues that it is a subsidiary organ of the UN. (D.I. 83 at 6). To support its argument, UNRWA identifies a number of UN documents, published before and after the US

[9] Courts have determined that some UN entities have immunity under the CPIUN without first determining that the entity is a principal or subsidiary organ. *See Nicol*, 2009 WL 2370179, at *3 (E.D. Pa. July 30, 2009) ("UNMIL [the United Nations Missions in Liberia] enjoys the same immunity as the [United] Nations [because] UNMIL is an extension program of the United Nations"); *D'Cruz v. Annan*, 2005 WL 3527153, at *2 (S.D.N.Y. Dec. 22, 2005) ("Thus, as 'The United Nations Organization' and 'United Nations Insurance Services (UNIS)' both appear to be entities and/or subdivisions of the United Nations . . . plaintiff's claims against these defendants are dismissed as they are immune from suit.").

ratified the CPIUN, that classify it as a subsidiary organ. (*Id.* at 6–7). Rather than labeling UNRWA as a subsidiary organ, Plaintiffs argue that it should be classified as "a specialized agency, with its own legal personality, that functions with substantial autonomy from the UN." (D.I. 93 at 22). Plaintiffs identify UN documents that grant UNRWA broad powers over its programs, finances, and staffing. (*Id.* at 22–23). Plaintiffs also argue that UNRWA was not classified by the UN as a subsidiary organ until after the US ratified the CPIUN. (*Id.*). In response to Plaintiffs' arguments that the autonomy UNRWA was granted should result in its classification as a specialized agency,[10] UNRWA argues that the UN Charter requires that "specialized agencies" are created by a specific process, different from the process for creating subsidiary organs. (D.I. 95 at 6). UNRWA also argues that the UN Charter does not require any set amount of control over subsidiary organs. (*Id.* at 7).

The UN Charter refers to "subsidiary organs" and "specialized agencies" as two separate types of entity.

Subsidiary organs are one of the two types of organs, alongside principal organs, that make up the UN. UN Charter art. 7. The General Assembly and Security Council are granted the power to "establish such subsidiary organs as it deems necessary for the performance of its functions." *Id.* art. 22, 29. The Charter does not grant any other organ the power to establish subsidiary organs. Nor does the Charter create specific requirements for the oversight, responsibilities, funding, or naming of subsidiary organs.

The Charter uses the term "specialized agencies" to refer to entities "established by intergovernmental agreement and having wide international responsibilities, as defined in their

[10] Plaintiffs presented the autonomy-classification argument for the first time in their answering brief. (*See* D.I. 93). As such, UNRWA's first opportunity to respond was in its reply.

basic instruments, in economic, social, cultural, educational, health, and related fields." *Id.* art. 57. The creation of specialized agencies is outlined in article 63 of the Charter, providing that "[t]he Economic and Social Council may enter into agreements" with agencies desiring to "be brought into relationship with the United Nations," and that the Economic and Social Council's "agreements shall be subject to approval by the General Assembly." *Id.* art. 63, ¶ 1. Aside from the power to approve the initial agreements with specialized agencies, the only role the General Assembly has in overseeing specialized agencies is "consider[ing] and approv[ing] any financial and budgetary arrangements with specialized agencies . . . and examin[ing] the administrative budgets of such specialized agencies with a view to making recommendations to the agencies concerned." *Id.* at art. 17. Unlike with subsidiary organs, the Charter does not grant the Security Council any role in the creation or oversight of specialized agencies.

UNRWA was created by UN General Assembly Resolution 302,[11] which "[e]stablishe[d] the United Nations Relief and Work Agency for Palestinian Refugees in the Near East." G.A. Res. 4/302 (IV), at ¶ 7 (Dec. 8, 1949). Under the UN Charter, the General Assembly has the power to establish subsidiary organs; it does not have the power to establish specialized agencies. The General Assembly has the power to approve contracts the Economic and Social Council enters with entities seeking to form a relationship with the UN as a specialized agency. There is no evidence, however, that there was any contract between the Economic and Social Council and UNRWA or that General Assembly Resolution 302 approved such a contract. To summarize, "UNRWA was established by the General Assembly under G.A. Res. 4/302 (IV) (Dec. 8, 1949) pursuant to the General Assembly's powers under Article 22 of the U.N. Charter; it was not created

[11] The establishment of UNRWA by Resolution 302(IV) is undisputed by the parties. (*See* D.I. 83 at 3; D.I. 93 at 22).

by 'inter-governmental agreement' and 'brought into relationship with the United Nations in accordance with the provisions of Article 63'—the process that creates specialized agencies." *Tov*, 807 F. Supp. 3d at 222. Thus, the creation of UNRWA indicates it must be a subsidiary organ, not a specialized agency.

Nothing about the responsibilities, funding, or naming of UNRWA changes its status as a subsidiary organ. There is nothing in the Charter that requires a subsidiary organ to have the word "subsidiary" in its name. Neither is there anything that requires a certain percentage of a subsidiary organ's funding come from other UN organs. Nor does the Charter require another UN organ to oversee the governance of a subsidiary organ, and nothing in the Charter limits the types of activities a subsidiary organ can undertake. Instead, the oversight and limitations of a subsidiary organ are defined in the General Assembly or Security Council resolution creating it and any subsequent mandates issued by the principal organ that created the subsidiary organ (i.e., the General Assembly or Security Council). Thus, any factual disputes regarding UN's control over UNRWA (D.I. 93 at 23) are irrelevant.

Plaintiffs' argument that the U.S. ratified the CPIUN before any indication that the treaty would provide immunity to UNRWA is similarly unconvincing. (D.I. 93 at 12–14, 22). From the time the General Assembly established the UNRWA in 1949, significantly before the Senate ratified the CPIUN in 1970, the history of UNRWA clearly demonstrates that it was established by the General Assembly through the process of creating subsidiary organs. Prior to the ratification of the CPIUN, the General Assembly issued Resolution 513 in 1952 stating that UNRWA was a subsidiary organ. *See* G.A. Res. 513 (VI), at ¶ 3 (Jan. 26, 1952). Again, before 1970, the General Assembly issued another Resolution explicitly stating "that the [United Nations Relief and Works] Agency [for Palestine Refugees in the Near East], as a subsidiary organ of the United Nations,

enjoys the benefits of the Convention on the Privileges and Immunities of the United Nations." G.A. Res. 1456 (XIV), at 8 (Dec. 9, 1959). At least three other General Assembly Resolutions published before 1970 explained that the UNRWA operates "in accordance with the provisions of Articles 104 and 105 of the Charter of the United Nations, [and] the terms of the Convention on the Privileges and Immunities of the United Nations." G.A. Res. 1018 (XI), at 6–7 (Feb. 28, 1957); G.A. Res. 1191 (XII), at 8–9 (Dec. 12, 1957) (same); G.A. Res. 1315 (XIII), at 9 (Dec. 12, 1958) (same).

Ultimately, the CPIUN provides immunity to the principal and subsidiary organs that comprise the UN. UNRWA can only be a subsidiary organ based on its establishment by the General Assembly. The status as a subsidiary organ has been known since UNWRA's establishment and has been reiterated by UN bodies ever since. Thus, the CPIUN provides immunity to UNRWA.

**4. Application of the CPIUN to Claims of Terrorism**

Even if the CPIUN applies to UNRWA, Plaintiffs argue that it does not provide immunity for the types of acts alleged in their Complaint. (D.I. 93 at 23–25). Plaintiffs argue that there is no immunity for violations of *jus cogens*,[12] and that the October 7th attacks involved torture, rape, kidnap, and murder, which are violations of *jus cogens*. (*Id.* at 23–24). UNRWA responds by arguing that courts have consistently rejected *jus cogens* exceptions to immunity. (D.I. 95 at 9–10).

[12] "As defined in the Vienna Convention on the Law of Treaties, a *jus cogens* norm, also known as a 'peremptory norm' of international law, 'is a norm accepted and recognized by the international community of states as a whole as a norm from which no derogation is permitted and which can be modified only by a subsequent norm of general international law having the same character.'" *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 715 (9th Cir. 1992) (citing Vienna Convention on the Law of Treaties, art. 53, May 23, 1969, 1155 U.N.T.S. 332).

Plaintiffs cite a single case, *Yousuf v. Samantar*, 699 F.3d 763 (4th Cir. 2012), as evidence of a *jus cogens* exception to immunity. (D.I. 93 at 24). In *Yousuf*, the Fourth Circuit held that common law foreign sovereign immunity applied to states and individual officials acting on behalf of the state. *Yousuf*, 699 F.3d at 774. The Fourth Circuit further determined that foreign sovereign immunity did not extend to individuals violating *jus cogens* because, "as a matter of international and domestic law, *jus cogens* violations are, by definition, acts that are not officially authorized by the Sovereign." *Id.* at 776. However, *Yousuf* is not applicable to the current dispute. The *jus cogens* exception in *Yousuf* was an exception to common law immunity that extends to individuals; UNWRA is a UN subsidiary organ, not an individual, asserting immunity under a treaty, not under common law.[13]

In one the few cases analyzing the relationship between a *jus cogens* violation and immunity under the CPIUN, the Southern District of New York found that a "plaintiff's allegations of malfeasance do not serve to strip the United Nations or [a UN employee] of their immunities afforded under the U.N. Convention [i.e., the CPIUN]." *Askir v. Boutros-Ghali*, 933 F. Supp. 368, 373 (S.D.N.Y. 1996)). Similarly, as explained in two other Southern District of New York cases, "We need not consider the application of these exceptions [to FSIA immunity] to the instant case, for the U.N. Convention, which contains no such exceptions, provides sufficient ground for finding the U.N. immune from plaintiff's claims." *De Luca v. United Nations Org.*, 841 F. Supp. 531, 533 n.1 (S.D.N.Y. 1994); *see Askir*, 933 F. Supp. at 372–73 (relying on *De Luca* for the same conclusion).

---

[13] Before and after *Yousef*, various courts have held that alleged violations of *jus cogens* do not abrogate foreign sovereign immunity. *See Doğan v. Barak*, 932 F.3d 888, 897 (9th Cir. 2019); *Doe 1 v. Buratai*, 318 F. Supp. 3d 218, 234–36 (D.D.C. 2018); *Matar v. Dichter*, 563 F.3d 9, 14–15 (2d Cir. 2009).

The only exception to the CPIUN's immunity is for an express waiver of the right. *See Tov*, 807 F. Supp. 3d at 224. As a violation of *jus cogens* does not constitute a waiver of immunity, the CPIUN provides immunity even when there is an alleged violation of *jus cogens*.[14] *See id.*; *see also Saudi Arabia v. Nelson*, 507 U.S. 349, 361 (1993) (explaining that "however monstrous such abuse undoubtedly may be," immunity under the FSIA will continue to apply unless there is a specific, applicable exception to the immunity). Thus, UNRWA's immunity under the CPIUN remains despite the well-pled violations of *jus cogens*.

UNRWA has met its burden of asserting immunity under the CPIUN; Plaintiffs have not presented any legally sound arguments for why immunity does not apply. This Court, therefore, lacks subject matter jurisdiction over the dispute between Plaintiffs and UNRWA.

**B. International Organizations Immunities Act**

Plaintiffs argue that UNRWA does not have immunity because it has not been designated by an executive order as an international organization under IOIA. (D.I. 93 at 6–7). Even if IOIA applied to UNRWA, Plaintiffs argue that the actions alleged in the Complaint fall under IOIA's exception for commercial activity and should be exempted generally as *jus cogens* violations. (*Id.* at 24). UNRWA argues that since the CPIUN provides immunity, it is irrelevant whether IOIA applies. (D.I. 83 at 8). Alternatively, UNRWA argues that IOIA is applicable because the UN

---

[14] In the similar FSIA context, courts across the country have consistently determined that (1) a violation of *jus cogens* does not serve as a waiver to immunity, and (2) that there is no exception to immunity for violations of *jus cogens* because the statute does not explicitly provide one. *See Carpenter v. Republic of Chile*, 610 F.3d 776, 779 (2d Cir. 2010); *Matar*, 563 F.3d at 14–15; *Belhas v. Ya'alon*, 515 F.3d 1279, 1287 (D.C. Cir. 2008); *Ye v. Zemin*, 383 F.3d 620, 627 (7th Cir. 2004); *Sampson v. Fed. Republic of Germany*, 250 F.3d 1145, 1155–56 (7th Cir. 2001); *Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239, 245 (2d. Cir. 1996); *Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1174 (D.C. Cir. 1994); *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 719 (9th Cir. 1992).

was designated as an international organization under the act and no exceptions apply. (*Id.* at 8; D.I. 95 at 9–10).

I do not need to address these disputes because UNRWA has complete immunity under the CPIUN. *Tov*, 807 F. Supp. 3d at 225. "[T]o the extent there exists any conflict between the CPIUN and the FSIA as it relates to UNDP's immunity, the CPIUN would control." *Sadikoglu*, 2011 WL 4953994, at *5; *see Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 252 (1984) ("A treaty will not be deemed to have been abrogated or modified by a later statute unless such purpose on the part of Congress has been clearly expressed." (internal quotation omitted)).

**C. Executive Branch's Position on Immunity**

In the *Tov* litigation, Damian Williams, then the U.S. Attorney for the Southern District of New York, submitted two letters arguing that UNRWA is a UN subsidiary organ entitled to immunity under the UN Charter and IOIA. (*Tov*, No. 24-cv-4756, at D.I. 17 (S.D.N.Y. July 30, 2024); *Tov*, No. 24-cv-4756, at D.I. 38 (S.D.N.Y. Oct. 18, 2024)). After the change in Administration, Yaakov Roth, then the Acting Assistant Attorney General for the Civil Division of the Department of Justice submitted a third letter arguing that UNRWA is not entitled to immunity. (D.I. 52-2, Ex. A). Ultimately, the court decided it "need not assign controlling weight to the Government's letters of interest" because "the text of the CPIUN unambiguously grants immunity to UNRWA as a subsidiary organ of the U.N." *Tov*, 807 F. Supp. 3d at 224.

The Executive Branch has not submitted any letter or argument in this case. Instead, Plaintiffs attached the Roth letter to their First Amended Complaint. (D.I. 52-2, Ex. A).[15]

---

[15] *Estate of Siman Tov v. United Nations Relief & Works Agency*, No. 24-cv-4756, at D.I. 59 (S.D.N.Y. Apr. 24, 2025).

UNRWA argues that the Executive Branch's position on UNRWA immunity, as expressed in the *Tov* case by AAAG Roth, should not be afforded substantial weight because it contradicted the Government's earlier positions and the court eventually ruled against its final arguments. (D.I. 83 at 9). Instead, UNRWA argues that treaty interpretation is a question of law that is ultimately the responsibility of the courts. (*Id.*). Plaintiffs respond by arguing that the Court should give "great weight" to the Executive Branch's position, as the Branch expressed in the *Tov* case, on UNRWA immunity. (D.I. 93 at 19–20).

Plaintiffs in this case are correct that there is a delicate balance of power between the three branches of government when handling matters of foreign affairs. *See Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 19 (2025); *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 272–73 (2018); *Bank Markazi v. Peterson*, 578 U.S. 212, 225–26, 234–36 (2016); *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 19–32 (2015); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010); *Medellin*, 552 U.S. at 523–31; *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 346–47 (2006); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610–611 (1952). However, this case involves the interpretation of a treaty signed by the President and ratified by the Senate. "If treaties are to be given effect as federal law under our legal system, determining their meaning as a matter of federal law 'is emphatically the province and duty of the judicial department.'" *Sanchez-Llamas*, 548 U.S. at 353–54 (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)). Thus, it is the role of the courts to interpret the plain language of a treaty. *See id.*; *Medellin*, 552 U.S. at 506–19; *Zicherman*, 516 U.S. at 221–28; *Stuart*, 489 U.S. at 365–66; *Air France*, 470 U.S. at 396–97; *Sumitomo*, 457 U.S. at 180; *Maximov*, 373 U.S. at 52–56; *Choctaw Nation*, 318 U.S. at 431–32.

In interpreting a treaty, the judiciary's "role is limited to giving effect to the intent of the Treaty parties." *Sumitomo*, 457 U.S. at 185. "The literal meaning of a treaty's language should

control unless 'application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories.'" *MacNamara v. Korean Air Lines*, 863 F.2d 1135, 1143 (3d Cir. 1988) (quoting *Sumitomo*, 457 U.S. at 180). In addition to using the negotiation, drafting, and post-ratification understanding of a treaty as "aids to its interpretation," *Medellin*, 552 U.S. at 507 (internal quotations and citations omitted), "Respect is ordinarily due [to] the reasonable views of the Executive Branch concerning the meaning of an international treaty," *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 168 (1999). As explained in the similar statutory interpretation context, "[s]uch respect was thought especially warranted when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024). The Executive Branch's treaty interpretations, however, are "not conclusive." *Sumitomo*, 457 U.S. at 184. "Otherwise, judicial judgment would not be independent at all." *Loper Bright*, 603 U.S. at 386 (internal quotation omitted).

Unlike other cases in which the Executive Branch offered evidence demonstrating the intent of the signatories to a treaty, *see Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961), the three letters in the *Tov* case do not. They simply look like three advocacy pieces. There is nothing in them that is helpful, as the parties have made the same arguments. While the Executive Branch's interpretation may have changed as an attempt to address a tragic event or to serve as a tool for foreign relations, "treaties cannot be re-written or expanded beyond their clear terms to remedy a claimed injustice or to achieve the asserted understanding of the parties." *Choctaw*, 318 U.S. at 432. Without evidence that the parties "intended to agree on something different from that appearing on the face of the [CPIUN], the agreement must be interpreted according to its

unambiguous language." *Id.* As addressed above, "the text of the CPIUN unambiguously grants immunity to UNRWA as a subsidiary organ of the U.N." *Tov*, 807 F. Supp. at 224.

UNRWA's motion to dismiss is granted. As the Court lacks subject matter jurisdiction to hear the action against UNRWA, I do not address UNRWA's arguments for dismissal based on lack of personal jurisdiction.

## IV. CONCLUSION

An appropriate order will issue.